**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DONNA DEITRICK,** | : | **No. 4:06-cv-1556** |
| **Plaintiff** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| **MARK A. COSTA, et al.,** | : | |
| **Defendants** | : | |

## MEMORANDUM

The above-captioned case is based on a series of unfortunate events Plaintiff Donna Deitrick alleges she experienced at the hands of her estranged husband and his cohorts in August 2004. First, while Deitrick was detained through the efforts of police officers Mark Costa and William Zelinski, a one-ton safe holding four million dollars worth of valuables was stolen from Deitrick's home. Three days later, when Deitrick went to the police station to retrieve her van which had been taken by police, she was physically assaulted by Defendants Vanessa Long and Richard Nichols and then thrown into a prison cell by Defendants Costa and William Miner.

Pending before the Court is a motion to dismiss certain claims pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants City of Shamokin, Shamokin Police Department, Costa, Zelinski, Miner, Nichols, and Robert Searls. (Doc. No. 93.) In their motion, Defendants contend that certain claims levied against them by Deitrick are not legally cognizable and must be dismissed. The Court agrees that several of Deitrick's claims fail as a matter of law; however, several of the challenged claims do not. Therefore, the Court must grant Defendants' motion in part and deny it in part.

## I.    BACKGROUND

1

The Court begins its analysis with a brief recounting of the allegations in the complaint. (See Doc. No. 1.)

**A.      August 13, 2004**

On Friday, August 13, 2004, Plaintiff Donna Deitrick left home to check on antiques and collectibles she stored at two separate properties in Shamokin, Pennsylvania.  Deitrick feared the items may have been stolen or damaged by her husband Robert Yoncuski, whom she was divorcing.  When Deitrick arrived at the properties, her fears proved to be well-founded:  her antiques and collectibles had been taken.  Deitrick drove to another property at Carbon Street, Shamokin, to see if Yoncuski had taken the items there.  Deitrick did not find the items; however, she did find other marital property which belonged to her.

Deitrick loaded the items she found into her van, but before she left the Carbon Street property she was approached by Defendants Mark Costa and William Zelinski.  Both Costa and Zelinski were employed as police officers with the Shamokin Police Department.  Deitrick identified herself to the officers, and Costa and Zelinski recognized Deitrick as Yoncuski's wife. The officers remarked that they would not get involved in this "civil matter," walked to a carwash across the street, and began talking to Defendant Dennis Moore who was standing there.

Deitrick's estranged husband, Yoncuski, arrived at the Carbon Street property in a pickup truck which he pulled in front of Deitrick's van to block her from leaving.  As he exited the truck, Yoncuski yelled obscenities at Deitrick and threatened to kill her.  Officers Costa and Zelinski heard the threats but did nothing.  Yoncuski walked to the carwash and used Moore's cellphone.

Deitrick yelled to Costa and Zelinski that she had a protective order against her husband

and she requested they make Yoncuski move his truck so that she could avoid contact with him. Costa and Zelinski did not respond, so Deitrick moved Yoncuski's truck out of the way herself. Deitrick then started to drive her van away from the Carbon Street property.  Costa began hitting the window of Deitrick's van, yelling for her to stop.  Deitrick again informed Costa of her protective order against Yoncuski.  She also told Costa that she was in fear of her estranged husband because he had guns in his possession and he had made threats on her life.

Deitrick left the Carbon Street property in her van, and Costa and Zelinski pursued Deitrick's van in separate police vehicles.  After stopping Deitrick on Spruce Street in Shamokin, the officers informed Deitrick that her van had been reported stolen by Yoncuski. Deitrick disputed this charge and requested that the officers contact Defendant William Miner, also an officer with the Shamokin Police Department, to determine whether the van was stolen. When the officers did so, they learned that Deitrick was telling the truth.

Yoncuski arrived at the Spruce Street stop in his pickup truck.  Unable to leave the area because her van was blocked in by the officers, Deitrick tried to show her protective order papers to the officers.  The officers refused to accept the papers.  Instead, they walked across the street and began talking to Yoncuski in a friendly manner.  The officers then fabricated a claim that Deitrick did not have valid insurance.  When Deitrick attempted to show Costa her valid insurance card and asked that he check on it, Costa refused and stated that her husband probably cancelled the insurance.

Costa then instructed Deitrick to exit her van and told her that he would be taking it to the police station.  Deitrick and a passenger exited from the van and called for a friend to pick them up.  Costa told Deitrick that she could retrieve the keys to the van from him the following

Monday.  Costa then instructed Defendant Robert Searls, a City of Shamokin "meter maid," to drive Costa's police vehicle to the police station, and Searls complied.

Fifteen minutes after Costa, Zelinski, and Searls left the area, Deitrick's friend arrived to take her home.  Another fifteen minutes passed and Deitrick arrived home.  Once there, Deitrick learned that she had been robbed:  A one-ton safe containing four million dollars worth of jewelry and cash had been taken from her home.  Deitrick avers that it was removed by Defendants Robert Yoncuski, Jeff Adams, Marianne Adams, Thomas Yoncuski, Kevin Balascik, Vanessa Long, Linda Long, James Brown, Moore, and Searls.  Deitrick alleges that these Defendants conspired and came to an agreement with Defendants Jane Acri, Costa, Zelinski, Miner, and Shamokin Police Chief Richard Nichols to create a distraction and then physically remove the safe.

### B.    August 16, 2004

Three days later, Deitrick's situation worsened.  On Monday, August 16, 2004, Deitrick went with her brother, Ken Deitrick, and a friend to retrieve her van and keys from the Shamokin Police Station.  When Deitrick arrived at the police station, Yoncuski was already there with Defendants Vanessa Long, Nichols, Miner, and Costa.  Without provocation, Vanessa Long attacked Deitrick, knocking Deitrick backward against a window and a water cooler and then to the floor.  When Deitrick's brother attempted to separate the two women, Yoncuski grabbed him and threw him to the ground.  Nichols grabbed Deitrick around the throat and began to strangle her.

Yoncuski and Vanessa Long were then allowed to leave the police station.  After receiving the keys to Deitrick's van from Nichols, Miner, and Costa, Yoncuski left in the van.

4

Vanessa Long drove separately in Yoncuski's pickup truck.

As a result of the attack against her, Deitrick was experiencing pain in her neck and throat, so she asked her brother to call an ambulance. Ken Deitrick called 911 from his mobile phone. In response, Nichols yelled out that Donna Deitrick was under arrest and told Costa and Miner to take her to a jail cell. Costa and Miner complied, grabbing Deitrick's arms and dragging her to a cell despite her assertions that she could walk on her own. Costa and Miner threw Deitrick on the concrete floor of a cell.

## II.      STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint, Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). The motion will only be properly granted when, taking all factual allegations and inferences drawn therefrom as true, the moving party is entitled to judgment as a matter of law. Markowitz v. Ne. Land Co., 906 F.2d 100, 103 (3d Cir. 1990). The burden is on the moving party to show that no claim has been stated. Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980). Thus, the moving party must show that Plaintiff has failed to "'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that [those] elements exist.'" Kost, 1 F.3d at 183 (citation omitted).

The 12(b)(6) standard does not require "detailed factual allegations"; however, "[factual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Put otherwise, a civil complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)).

## III.     DISCUSSION

Deitrick's complaint includes fourteen separate causes of action. Count I is brought pursuant to 42 U.S.C. § 1983 and is directed at Costa, Miner, Nichols, Zelinski, and Searls, for unlawfully detaining and arresting Deitrick in violation of her First, Fourth, Fifth, and Fourteenth Amendment rights. Counts II and III are a <u>Monell</u> claim and a failure to train or supervise claim lodged against the Shamokin Police Department and the City of Shamokin. Count IV is a false imprisonment claim against Costa, Miner, Nichols, Zelinski, Robert Yoncuski, Vanessa Long, Moore, and Searls. Count V is an assault and battery claim against Costa, Miner, Nichols, Robert Yoncuski, and Vanessa Long. Counts VI through IX and Counts XII through XIV are claims for intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, negligence <u>per se</u>, civil conspiracy, conversion, and trespass to chattel against Costa, Miner, Nichols, Zelinski, Jeff Adams, Marianne Adams, Thomas Yoncuski, Robert Yoncuski, Vanessa Long, Linda Long, Balascik, Brown, Moore, Searls, and Acri. Counts X and XI are claims against the Shamokin Police Department and the City of Shamokin for negligent hiring, supervision, and retention and <u>respondeat</u> <u>superior</u> liability.

Defendants argue that a number of the claims levied by Plaintiff fail as a matter of law. The Court will address the arguments raised in the motion to dismiss in turn.

### A.    Claims Against Shamokin Police Department

First, Defendant Shamokin Police Department claims that it is not a "person" capable of being sued under 42 U.S.C. § 1983, and therefore Counts II and III and any related cross-claims should be dismissed. (Doc. No. 93 ¶ 9.) Recognizing that the Shamokin Police Department is a subdivision of the City of Shamokin, Plaintiff concedes that the dismissal of all claims against the Shamokin Police Department is proper. (Doc. No. 95 at 9.) Accordingly, the Court will

grant Defendants' motion to dismiss the claims against Shamokin Police Department, which include Counts II, III, X, and XI.

## B.     State Law Claims Against Defendant City of Shamokin

Defendant City of Shamokin argues that the state law claims and cross-claims asserted against the City in Counts X and XI are barred by the Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. Cons. Stat. Ann. § 8541.  (Doc. No. 93 ¶ 11.)  Local governmental units are given broad tort immunity under the PSTCA.  Sanford v. Stiles, 456 F.3d 298, 315 (3d Cir. 2006).  The Act provides that, "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. Cons. Stat. Ann. § 8541; see also id. § 8501 (defining a "local agency" as a "government unit other than the Commonwealth government").  Although there are eight "acts" excepted from the immunity granted under § 8541, Deitrick has not alleged that any of those exceptions apply here.[1]

Instead Deitrick seeks to avoid the immunity afforded the City by the PSTCA by pointing

---

[1] The Third Circuit has summarized the exceptions as follows:

> Liability can be imposed for (1) the operation of a motor vehicle in the possession or control of a local agency; (2) the care, custody or control of personal property in the possession or control of a local agency; (3) the care, custody or control of real property; (4) a dangerous condition created by trees, traffic controls, or street lights; (5) a dangerous condition of utility service facilities; (6) a dangerous condition of streets; (7) a dangerous condition of sidewalks; (8) the care, custody or control of animals in the possession or control of a local agency.

Sanford, 456 F.3d at 315 n.18 (citing 42 Pa. Cons. Stat. § 8542).

to <u>Weihagen v. Borough of N. Braddock</u>, 559 A.2d 991 (Pa. Commw. Ct. 1989), <u>aff'd</u>, 594 A.2d

303 (Pa. 1991).  In <u>Weihagen</u>, the Pennsylvania Commonwealth Court found that a municipality

must indemnify a municipal employee found liable under 42 U.S.C. § 1983 where the employee

was acting within the scope of his or her duties.  <u>See id.</u> at 993.  The PSTCA was inapplicable to

a § 1983 claim, because "the Act cannot immunize a municipality against a federal cause of

action."  <u>Id.</u>  Deitrick's reliance on <u>Weihagen</u> is misplaced as to her state law claims, however,

because the City is still immune from those non-federal claims which are not excepted from the

PSTCA.  Therefore, the Court must grant Defendants' motion to dismiss the state law claims

against the City of Shamokin in Counts X and XI.

### C.   Claims Against Defendants Costa, Miner, Nichols, and Zelinski Based on Negligence

Under the PSTCA, local government employees are entitled to the same immunity as

their employing local agency.  42 Pa. Cons. Stat. Ann. § 8545.  Defendants Costa, Miner,

Nichols, and Zelinski were officers with the Shamokin Police Department during the time of the

alleged incidents.  Therefore, they argue that the claims against them based on negligence

(Counts VII, VIII, and IX) are barred by the PSTCA.  (Doc. No. 93 ¶ 12.)

In response, Deitrick argues that PSTCA immunity should not extend to the individual

Defendants in this case because "[t]he claims of negligence . . . in Counts VII through IX are

based upon willful misconduct."  (Doc. No. 95 at 9.)  Deitrick is right that the immunity granted

by the Act is not available if it is judicially determined that an employee's act causing an injury

constituted willful misconduct.  <u>See</u> 42 Pa. Cons. Stat. Ann. § 8550.  However, willful

misconduct "means that the actor desired to bring about the result that followed, or at least that

he was aware that it was substantially certain to ensue."  <u>Evans v. Phila. Transp. Co.</u>, 212 A.2d

440, 443 (Pa. 1965).  To the extent that Deitrick alleges that Defendants' misconduct was willful means that Defendants actions were not merely negligent.  Therefore, Deitrick's claims based on negligence against the City employees are barred by the PSTCA.  The Court must grant the motion to dismiss on Counts VII, VIII, and IX as to Defendants Costa, Miner, Nichols, and Zelinski.

> **D.      Constitutional Claims Against Defendants Costa, Miner, Nichols, and Zelinski**

Defendants Costa, Miner, Nichols, and Zelinski also move to dismiss the portion of Count I against them which alleges any violation of Deitrick's First, Fifth, or Fourteenth Amendment rights.  Defendants generally aver that such dismissal is proper because Deitrick's challenges to her detention and arrest are properly analyzed under the Fourth Amendment.  (Doc. No. 93 ¶ 13.)

Specifically, as to the First Amendment claim, Defendants challenge that "there are no allegations implicating [Deitrick's] free speech rights, expressive and/or intimate association rights, or right to free exercise of her religion."  (Doc. No. 94 at 11.)  Deitrick provides no argument in her brief in opposition to show that she participated in First Amendment protected activity.  Therefore, the Court must grant Defendants' motion as to the First Amendment claim.

Regarding the Fifth Amendment, Defendants point to Third Circuit precedent that "[t]he limitations of the [F]ifth [A]mendment restrict only federal governmental action."  Nguyen v. U.S. Catholic Conference, 719 F.2d 52, 54 (3d Cir. 1983).  Because no defendants were federal officials, the Fifth Amendment is not implicated here.  Again, Deitrick provides no argument to the contrary, and the Court must grant Defendants' motion as to the Fifth Amendment claim.

As to the Fourteenth Amendment claim, Defendants point to the "more-specific-

9

provision rule," which was recently adopted by the Third Circuit.  See Betts v. New Castle

Youth Dev. Ctr., 621 F.3d 249, 260-61 (3d Cir. 2010).  "Under this rule, 'if a constitutional

claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment,

the claim must be analyzed under the standard appropriate to that specific provision, not under

the rubric of substantive due process.'"  Id. at 260 (quoting United States v. Lanier, 520 U.S. 259,

272 n.7 (1997)).  Deitrick's allegations concern the seizure of her van by police and the

excessive force used in arresting her at the Shamokin Police Department.  Because these

allegations fit squarely within the Fourth Amendment's prohibition of unlawful search and

seizure, the Court finds that the more-specific-provision rule forecloses Deitrick's substantive

due process claims.[2]  Therefore, the Court must grant Defendants' motion to dismiss Deitrick's

Fourteenth Amendment claim.

### E.    Claims Against Defendant Searls

The Counts in the complaint which specifically name Defendant Searls are Count I

(Section 1983 claim), Count IV (false imprisonment), Count VI (intentional infliction of

---

[2] The Court notes that its finding may have been different if Deitrick had presented evidence that her claims relating to her detention and arrest were not "covered by" the Fourth Amendment.  See Cnty. of Sacramento v. Lewis, 523 U.S. 833, 843 (1998).  As the Supreme Court has explained, a seizure occurs "when there is a governmental termination of freedom of movement through means intentionally applied."  Id. (citation omitted) (emphasis omitted).  A seizure does not occur "whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally desired termination of an individual's freedom of movement (the fleeing felon)."  Id. (citation omitted) (emphasis omitted).  Deitrick has accused the officers of intentionally taking action to detain her and her vehicle on August 13, 2004, and then to arrest her on August 16, 2004.  Therefore, without any cogent argument to the contrary from Deitrick, the Court must conclude that the officer's conduct was "covered by" the Fourth Amendment.

emotional distress), Count VII (negligent infliction of emotional distress), Count VIII (negligence), Count IX (negligence per se), Count XII (civil conspiracy), Count XIII (conversion), and Count XIV (trespass to chattel).

Searls claims that he lacks any personal involvement in the alleged wrongdoing, and therefore the only claims against him which should survive are Dietrick's conspiracy claim and related cross-claims.  (Doc. No. 93 ¶ 10.)  Otherwise, Searls asserts that there are no allegations in the complaint which would implicate him:

> The Complaint does not and cannot allege that . . . Defendant Searls either detained Plaintiff on August 13, 2004, filed any criminal charges against Plaintiff, and/or employed any force against Plaintiff to effectuate her arrest.  The Complaint merely alleges that . . . Defendant Searls was asked to drive Officer Costa's police vehicle to the police station and that Defendant[] Searls complied.

(Doc. No. 94 at 12-13.)  The Court agrees that the complaint does not allege that Defendant Searls detained Deitrick, filed any criminal charges against her, or employed any force against her.  Therefore, the Fourth Amendment and false imprisonment claims against Searls must be dismissed.[3]

On the other hand, Deitrick's complaint alleges that on August 13, 2004, Searls took part in a concerted effort to distract Deitrick and then steal a safe holding four million dollars worth of valuables and cash from Deitrick's home.  The complaint alleges that Searls may have physically helped in the removal of the safe from Deitrick's home.  Therefore, Searls's alleged involvement provides a basis for the claims which have been lodged against him for intentional

---

[3] Additionally, the Court finds that the same logic ordering the dismissal of Deitrick's claims under the First, Fifth, and Fourteenth Amendments brought pursuant to Section 1983 in Count I applies to Defendant Searls as it does to the other individual defendants.  See Part III.D supra.  Therefore, those constitutional claims against Searls will also be dismissed.

infliction of emotional distress, negligent infliction of emotional distress, negligence, civil conspiracy, conversion, and trespass to chattel.  Therefore, the Court will decline to dismiss the remainder of the state law claims against Searls.[4]

## IV.     CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion to dismiss certain claims in part.  An order consistent with this memorandum follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

**DONNA DEITRICK,**                                    :     **No. 4:06-cv-1556**

---

[4] The Court notes that it is unclear whether Searls is considered an employee covered by the PSTCA.  To the extent that Searls is covered by the PSTCA, the negligence claims against him should be dismissed.  See Part III.C supra.  However, Defendants do not claim that Searls is entitled to such immunity in the motion to dismiss.

|                        |   |                      |
|------------------------|---|----------------------|
| **Plaintiff**          | : |                      |
|                        | : | **(Chief Judge Kane)** |
| **v.**                 | : |                      |
|                        | : |                      |
| **MARK A. COSTA, <u>et</u> <u>al.</u>,** | : |  |
| **Defendants**         | : |                      |

AND NOW, on this 29th day of April 2011, it is **HEREBY ORDERED THAT**

Defendants' motion to dismiss certain claims (Doc. No. 93) is **GRANTED IN PART** in

accordance with the following:

1. All claims and cross-claims against Defendant Shamokin Police Department (Counts II, III, X, and XI) are **DISMISSED**.

2. All state law claims and cross-claims against Defendant City of Shamokin (Counts X and XI) are **DISMISSED**.

3. All state law negligence claims and cross-claims against Defendants Costa, Miner, Nichols, and Zelinski (Counts VII, VIII, and IX) are **DISMISSED**.

4. All claims and cross-claims based on the First, Fifth, or Fourteenth Amendments against Defendants Costa, Miner, Nichols, Zelinski, and Searls are **DISMISSED**.

5. The Fourth Amendment and false imprisonment claims and any related cross-claims against Defendant Searls are **DISMISSED**.

6. The Clerk of Court shall defer entering judgment until all claims have been adjudicated.

S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania
