# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONNA DEITRICK, | : | Civil No. 4:06-CV-1556 |
| | : | |
| Plaintiff, | : | (Judge Brann) |
| | : | (Magistrate Judge Arbuckle) |
| v. | : | |
| | : | |
| MARK A. COSTA, *et al.*, | : | |
| | : | |
| Defendants, | : | |

## REPORT AND RECOMMENDATION

(Motion for Summary Judgment – Doc. 175)

# TABLE OF CONTENTS

**INTRODUCTION** ........................................................................................................... **3**

**PROCEDURAL HISTORY** ............................................................................................. **4**

**STATEMENT OF MATERIAL FACTS** ....................................................................... **5**

**SUMMARY JUDGMENT STANDARD** ...................................................................... **10**

**DISCUSSION** ................................................................................................................ **12**

    **I. INTENTIONAL INFLICATION OF EMOTIONAL DISTRESS (COUNT VI)** ............................. **12**

        A. Parties' Contentions ............................................................................. 12

        B. Legal Framework ................................................................................. 13

        C. Plaintiff Cannot Recover for Intentional Infliction of Emotional Distress ..................... 16

    **II. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (COUNT VII)** ............................. **19**

        A. Parties' Contentions ............................................................................. 19

        B. Legal Framework ................................................................................. 19

        C. Plaintiff Cannot Recover for Negligent Infliction of Emotional Distress ...................... 21

    **III. NEGLIGENCE (COUNT VIII)** ................................................................................. **22**

        A. Parties' Contentions ............................................................................. 22

        B. Legal Framework ................................................................................. 23

        C. Plaintiff Cannot Recover for Negligence ...................................................... 26

    **IV. NEGLIGENCE PER SE (COUNT IX)** ......................................................................... **28**

    **V. CIVIL CONSPIRACY (COUNT XII)** ........................................................................... **30**

        A. Parties' Contentions ............................................................................. 30

        B. Elements and Proof of Civil Conspiracy ...................................................... 30

        C. Admissibility of the Police Report and Other Evidence ..................................... 32

        D. Plaintiff Cannot Carry Its Burden at Trial .................................................... 40

    **VI. CONVERSION (COUNT XIII)** ................................................................................. **41**

    **VII. TRESPASS TO CHATTELS (COUNT XIV)** ................................................................. **42**

**RECOMMENDATION** ................................................................................................. **44**

**NOTICE OF REPORT & RECOMMENDATION** ....................................................... **45**

[]

## INTRODUCTION

In 1989, 20th Century Fox released "The War of the Roses" a cautionary tale told by Hollywood divorce lawyer Gavin D'Amato (Danny Divito) to a potential young client considering divorce.  The film, based upon the 1981 novel by Warren Adler, follows a wealthy couple with a seemingly perfect marriage. When their marriage begins to fall apart, material possessions become the center of an outrageous and bitter divorce battle.  In both the novel and the film, the married couple's family name is Rose, and the title is an allusion to the battles between the Houses of York and Lancaster at the end of the Middle Ages.  Finishing his story, Gavin presents his client with two options: either proceed with the divorce and face a horrific bloodbath in court, or go home to his wife to settle their differences properly. In the movie the client chooses to settle.  In the case now before the Court the parties chose the other option.

No fewer than seven judges have been called upon to decide some portion of this war.  From minor skirmishes to pitched battles this marriage breakup and the conduct of the parties has been examined by: the minor judiciary of Northumberland County; the Court of Common Pleas of Northumberland County (criminal, civil, and family divisions); the Middle District Bankruptcy Court; this Court; the Third Circuit Court of Appeals; and, now back to this Court.  Donna Deitrick, the former wife in this saga, seeks a measure of justice here by accusing a

long list of characters with various forms of misconduct, cast in the legal language of violation of her civil rights, infliction of emotional distress, conspiracy, trespass to chattels, conversion, and negligence.  In this Motion for Summary Judgment we are called upon to decide if Jane Acri, Esq., divorce lawyer for the husband, has been shown to be a willing participant in the admitted misconduct of her client.

Defendant Acri's motion for summary judgment seeking dismissal of all counts against her is presently pending before the Court. The complaint alleges causes of action against attorney Acri for intentional infliction of emotional distress (Count VI), negligent infliction of emotional distress (Count VII), negligence and negligence per se (Counts VIII & IX), civil conspiracy (Count XII), conversion (Count XIII), and trespass to chattels (Count XIV).  For reasons set forth below, it is recommended that the motion for summary judgment be granted and all claims against Defendant Acri be dismissed.

## PROCEDURAL HISTORY

Plaintiff Donna Deitrick commenced the above-captioned case on August 11, 2006 by filing a complaint alleging various federal and state causes of action against numerous defendants. (Doc. 1).  Defendant Jane Acri is named in Counts VI-IX and XII-XIV. Specifically, Plaintiff alleges state-law claims against Defendant Acri for intentional infliction of emotional distress (Count VI),

negligent infliction of emotional distress (Count VII), negligence (Count VIII), negligence per se (Count IX), civil conspiracy (Count XII), conversion (Count XIII), and trespass to chattels (Count XIV).

Defendant filed an answer on February 22, 2007. (Doc. 62). An amended answer was filed on February 28, 2007. (Doc. 65). Defendant Acri filed the instant motion for summary judgment on September 27, 2012. (Doc. 175). Plaintiff submitted opposition materials on December 2, 2012. (Doc. 222). Exhibits B (Doc. 225-2) and F (Doc. 225-6) to those materials were ordered sealed because they contained sensitive or confidential information. (Doc. 245). Defendant filed a reply brief and a supplemental statement of facts on December 14, 2012. (Docs. 242, 243). Litigation on other aspects of this case proceeded and the motion for summary judgment is ripe for decision.

## STATEMENT OF MATERIAL FACTS

The following is a statement of material facts drawn from Defendant's Statement of Facts, (Doc. 176), Plaintiff's counterstatement of facts, (Doc. 222-1), and the underlying documents and briefs.  Other materials in the record that are not cited by either party are used to provide essential background information.  The facts are set forth in the light most favorable to Plaintiff, the non-moving party.

On August 13, 2004, Robert Yoncuski, Jeffrey Adams, Marianne Adams, and two other individuals removed a large safe containing money and jewelry from the residence of Yoncuski's then-wife, Plaintiff Donna Deitrick. (Doc. 176, ¶¶ 1-2).  On August 15, 2004, Robert Yoncuski transferred some or all of the safe contents to Keri Balascik and buried the safe on or near the Adams property. (Doc. 196-15, pp. 61, 71; Doc. 196-7, p. 28; Doc. 196-8, pp. 39-40).  At that time, attorney Jane Acri represented Yoncuski in divorce proceedings against Plaintiff. (Doc. 176, ¶ 3).  On August 23 and 25 of 2004, Defendant Acri presented testimony[1] in those proceedings where Robert Yoncuski denied involvement in the removal of the safe and disclaimed knowledge of the whereabouts of its contents. (*Id.* ¶ 4).  At the conclusion of the hearing on August 25, 2004, the Court of Common Pleas for Northumberland County entered an order requiring Robert Yoncuski to return the safe and identify the individuals who participated in its removal. (*See* Doc. 225-2, p. 92). On August 27, 2004, Robert Yoncuski was incarcerated for civil contempt for failure to comply with that order. (*Id.*).

On September 16, 2004, the Pennsylvania State Police interviewed Jeffrey and Marianne Adams regarding the theft of the safe. (Doc. 225-2, pp. 20-21). Both denied being involved in or having knowledge of the incident. (*Id.*).  After those interviews, the Adams contacted Defendant Acri for the purpose of seeking legal

---

[1] This testimony turned out to be false resulting in Robert Yoncuski's conviction in state court for perjury. (Doc. 176, ¶ 5; Doc. 197-3, p. 72).

advice regarding the police questioning. (Doc. 222-1, ¶ 6; Doc. 222-2, pp. 34-35; Doc. 196-8,. p. 60).  Defendant Acri informed Ms. Adams that as Robert Yoncuski's attorney she could not represent the Adams and suggested that they retain other counsel. (Doc. 196-8, pp. 60, 67).  Defendant Acri further advised Ms. Adams not to say anything to the police, that the police do not know where the safe is buried, and that the police cannot prove that Robert Yoncuski took the safe. (Doc. 222-1, ¶ 6; Doc. 225-2, p. 35).

On or after January 28, 2005, the Pennsylvania State Police (PSP) contacted the Adams regarding an offer of immunity. (Doc. 222-2, p. 34).  At some point thereafter, Attorney Joel Wiest, one of Robert Yoncuski's attorneys, called the PSP and informed them he represented the Adams.  (*Id.*).  The PSP informed Wiest that the Adams would be offered immunity in exchange for their cooperation regarding the theft of the safe. (*Id.*).  Wiest acknowledged that he was potentially conflicted due to his concurrent representation of Robert Yoncuski. (*Id.*).  On February 7, 2005, Attorney Dave Noon contacted the PSP to inform them the Adams wanted to cooperate in exchange for immunity. (*Id.*).

On February 8, 2005, Attorney Wiest visited his client Robert Yoncuski in jail and informed him that the Adams were offered immunity and had implicated Yoncuski in the theft of the safe. (Doc. 196-15, pp. 64-65; Doc. 187, Ex. JMA-6, Wiest Aff.). Yoncuski admitted his complicity in the incident. (*Id.*). Wiest and

Yoncuski informed Defendant Acri of Yoncuski's admissions later that evening. (*Id.*). On February 9, 2005, Defendant Acri and Attorney Wiest informed the Court of Common Pleas for Northumberland County of Yoncuski's admissions. (Doc. 176, ¶ 6). Yoncuski then purged himself of civil contempt by acknowledging his involvement in the removal of the safe and naming other persons who were involved. (Doc. 225-2, pp. 93-97). The safe and some of its contents were subsequently recovered. (Doc. 176, ¶ 6).

On February 15, 2005, the Adams gave statements to the PSP as part of their immunity agreement. (Doc. 225-2, pp. 34-35).  In the police report (dated February 25, 2005) describing Jeffrey Adam's interview, Officer Foura stated:

> [After the police came to their house in September of 2004, the Adams] contacted [Defendant Acri who] told them not to say anything to the police and that the police can not prove that Robert [Yoncuski] has the safe. [Jeffrey Adams] advised that [Defendant Acri] knew that Robert [Yoncuski] stole the safe and where it was buried.

(*Id.* at 34). Similarly, in the portion of the report describing Marianne Adam's interview, Officer Foura stated:

> [Marianne Adams] advised that after [Officer Foura] came to [the Adams] residence [in September], that they contacted [Defendant Acri] to ask for advice. [Defendant Acri] told them not to say anything, that the Police don't know where the safe is buried and can't prove that Robert took it. [Marianne Adams] advised that [Defendant Acri] knew that Robert [Yoncuski] took the safe and of its whereabouts.

(*Id.* at 35).

In deposition testimony, Marianne Adams later stated that Defendant Acri never told her that she knew prior to February 8, 2005, that Robert Yoncuski had taken the safe. (Doc. 196-8, pp. 60-61). Ms. Adams further testified that she had no information suggesting that Defendant Acri had anything to do with or knew about the theft of the safe. (*Id.* at 48). Interrogatory responses of Ms. Adams are to the same effect. (*See* Doc. 242-2). Jeffrey Adams, for his part, did not personally speak with Defendant Acri but rather overheard part of Marianne Adam's conversation. (Doc. 196-7, pp. 43-44). Defendant Acri avers that she had no information before the August 13, 2004 theft that Plaintiff's safe would be stolen. (Doc. 179, Ex. JMA-2, ¶ 4). She further asserts that she did not learn her client Robert Yoncuski was involved in the theft until February 8, 2005. (*Id.* ¶¶ 5-6).

With these facts in mind, we review the well known standard against which we must apply them.

## SUMMARY JUDGMENT STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides as follows:

A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense - on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.  Fed. R. Civ. P. 56(a).

For purposes of Rule 56, a fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law.  *Haybarger v. Laurence Cnty. Adult Prob. & Parole*, 667 F.3d 408, 412 (3d Cir. 2012) (*quoting Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). For an issue to be genuine, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* (*quoting Anderson*, 477 U.S. at 248-49).

Accordingly, in support of a motion for summary judgment, the moving party must show that if the evidence of record were reduced to admissible evidence in court, it would be insufficient to allow the non-moving party to carry its burden of proof.  *See Celotex v. Catrett*, 477 U.S. 317, 323 ( 1986).  Provided the moving party has satisfied this burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  *Scott v. Harris*, 550

U.S. 372, 380 (2007).  Instead, if the moving party has carried its burden, the non-moving party must then respond by identifying specific facts, supported by evidence, which show a genuine issue for trial, and may not rely upon the allegations or denials of its pleadings. *See Martin v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007); see also Fed. R. Civ. P. 56(c).

In adjudicating the motion, the court must view the evidence presented in the light most favorable to the opposing party, *Anderson*, 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party, *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). Where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true. *Id.* Additionally, the court is not to decide whether the evidence unquestionably favors one side or the other, or to make credibility determinations, but instead must decide whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. *Id. at 252; see also Big Apple BMW*, 974 F.2d at 1363. In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. It thus remains the

province of the factfinder to ascertain the believability and weight of the evidence. *Id.* In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted); *NAACP v. North Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 476 (3d Cir. 2011).

Often described as a legal test that is easy to state but hard to apply, we now turn to the facts of this case to determine if there is a genuine dispute of material fact requiring a trial on Deitrick's claims against attorney Acri.

## DISCUSSION

## I. INTENTIONAL INFLICATION OF EMOTIONAL DISTRESS (COUNT VI)

### A. Parties' Contentions

Noting that the Pennsylvania Supreme Court has yet to formally recognize the tort of intentional infliction of emotional distress, Defendant first urges this Court to consider dismissing the cause of action. (Doc. 189, p. 7).  Defendant Acri then argues that even if a cause of action exists, Plaintiff has produced no admissible evidence that Acri acted with the requisite intent or recklessness. (*Id.* at 8).  Defendant also argues that her conduct was not "extreme and outrageous" as a matter of law.  (*Id.* at 12-14). Finally, Defendant contends that Plaintiff has failed to produce any competent medical evidence of harm suffered as a result of the alleged extreme and outrageous conduct. (*Id.* at 15).

Plaintiff responds by pointing out that not only have lower Pennsylvania courts recognized the tort, but the Third Circuit has predicted that the Pennsylvania Supreme Court would recognize the tort. (Doc. 222, p. 3). Plaintiff next asserts that the extreme and outrageous character of Defendant Acri's conduct arises from her knowledge of Plaintiff's particular susceptibility to emotional distress. (*Id.* at 3-4). According to Plaintiff, Defendant's alleged involvement in the theft of the safe caused Plaintiff's emotional distress. (*See id.* at 6). Finally, Plaintiff argues certain medical records in the record constitute competent medical evidence. (*Id.*).

## B. Legal Framework

A cause of action for intentional infliction of emotional distress is a state law claim; consequently, Pennsylvania substantive law controls. 28 U.S.C. § 1652; *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966); *Erie R.R. Co. v. Tompkins* (1938). The Pennsylvania Supreme Court has yet to formally recognize a cause of action for intentional infliction of emotional distress. *Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000). The Pennsylvania appellate courts, however, have recognized the tort. *Field v. Philadelphia Elec. Co.*, 565 A.2d 1170, 1183-84 (Pa. Super. 1989). And the Third Circuit, predicting that the Pennsylvania Supreme Court will ultimately recognize the tort, has allowed recovery for intentional infliction of emotional distress. *Williams v. Guzzardi*, 875

F.2d 46 (3d Cir. 1989).  Therefore, this Court is bound to conclude that Pennsylvania permits recovery for intentional infliction of emotional distress.

In Pennsylvania, The Restatement (Second) of Torts sets forth the minimum elements necessary to sustain a cause of action for intentional infliction of emotional distress. *Taylor*, 754 A.2d at 652.  In order to recover, a plaintiff must plead and prove that (1) by extreme and outrageous conduct (2) defendant intentionally or recklessly (3) caused (4) severe emotional distress. *Id.* (citing Restatement (Second) of Torts § 46). Pennsylvania courts further require that the existence of emotional distress be supported by competent medical evidence. *Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d 988, 995 (Pa. 1987).

"It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Hunger v. Grand Cent. Sanitation*, 670 A.2d 173, 177 (Pa. Super. 1996) (quoting Restatement (Second) of Torts § 46 cmt. d).  The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*  The defendant's knowledge that the plaintiff, due to some physical or mental peculiarity, is particularly susceptible to emotional distress may

give rise to requisite extreme and outrageous conduct. *See Dawson v. Zayre Dep't Stores*, 499 A.2d 648, 650 (Pa. Super. 1985); Restatement (Second) of Torts § 46 cmt. f ("The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge. . . ."). It is for the court to determine in the first instance whether the conduct can reasonably be regarded as sufficiently extreme and outrageous to allow recovery. 499 A.2d at 649 (citing Restatement (Second) of Torts § 46 cmt. h).

The defendant must intentionally or recklessly cause the emotional distress. The requisite intent arises where the defendant knows that emotional distress is substantially certain to result from his or her conduct. *Hoffman v. Memorial Osteopathic Hospital*, 492 A.2d 1382, 1386 (Pa. Super. 1985). A defendant acts recklessly if he or she proceeds in deliberate disregard of a high degree of probability that emotional distress will follow. Restatement (Second) of Torts § 46 cmt. i.

The emotional distress must be sufficiently severe that no reasonable person could be expected to endure it. *See Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1276 (3d. Cir. 1979) (citing Restatement (Second) of Torts § 46 cmt. j). Additionally, the resulting distress must be reasonable, justified, and not exaggerated under the circumstances. *Id.* Competent expert medical evidence

confirming the existence, cause, and severity of the distress is required in order for a plaintiff to recover. *See Williams*, 875 F.2d at 51-52.

## C. Plaintiff Cannot Recover for Intentional Infliction of Emotional Distress

The intentional infliction of emotional distress claim can be dismissed on two independent grounds. First, Defendant Acri's conduct fails to rise to the level of extreme and outrageous behavior that would permit recovery. Second, irrespective of Defendant's conduct, Plaintiff has failed to provide the requisite competent medical evidence.

### 1. Conduct Not Extreme and Outrageous

It is for this Court to determine, in the first instance, whether Defendant's conduct can reasonably be regarded as so extreme and outrageous as to permit recovery. It cannot be. As set forth in the complaint, the extreme and outrageous conduct consists of the alleged tortious acts committed by Defendant Acri. (Doc. 1, ¶¶ 155-161). It is unnecessary to determine whether there are factual issues for trial because those acts, even if true, do not constitute extreme and outrageous behavior.[2]

---

[2] To be clear, we do not join Ms. Deitrick in her allegations against attorney Acri—allegations which Acri vigorously denies.  We merely opine that, even *if* true, they would be insufficient as a matter of law.

The complaint alleges that Defendant Acri knew or should have known the safe would be stolen and should have known its location after it was stolen. (*Id.*, ¶ 119). The complaint further avers that Defendant Acri could have revealed the safe's whereabouts and implies that she knowingly presented Robert Yoncuski's false testimony.  (*Id.*).  Finally, Plaintiff alleges that Defendant Acri received compensation derived from proceeds from the safe. (*Id.*). It is irrelevant whether Defendant allegedly "acted with an intent which is tortious or even criminal, or that [s]he has intended to inflict emotional distress" because the forgoing conduct is not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46 cmt. d.  At worst, the allegations would support civil liability for conversion and criminal charges for suborning perjury. But receiving stolen property is not regarded as atrocious and utterly intolerable in a civilized community. And the law does not consider dishonest, malicious conduct by an attorney as sufficiently extreme and outrageous to warrant liability. *See  Motheral v. Burkhart*, 583 A.2d 1180, 1189 (Pa. Super. 1990) (holding that defendant-attorney's allegedly false accusations resulting in criminal complaint that plaintiff had sexually assaulted his daughter, for purpose of benefitting attorney's client in pending custody proceedings, was not actionably outrageous).

Plaintiff, apparently relying on comment f to section 46 of the Restatement (Second) of Torts, asserts that the extreme and outrageous character of Defendant Acri's conduct arises from her knowledge of Plaintiff's particular susceptibility to emotional distress. (Doc. 222, pp. 3-4). Plaintiff neither identifies the nature of her particular susceptibility nor provides any evidence that Defendant Acri knew that Plaintiff was susceptible to emotional distress by reason of any peculiarity or condition. (*See id.*). Without any evidence of Plaintiff's supposed susceptibility to emotional distress or Defendant Acri's knowledge of the same, this Court's conclusion that Defendant's conduct was not outrageous remains unchanged.

### 2. Failure to Produce Competent Medical Evidence

Pennsylvania courts require the existence of emotional distress to be supported by competent medical evidence. The only medical evidence offered by plaintiff is an assortment of doctor notes, reports, and letters that plainly constitute expert evidence. (*See* Doc. 225-6, Ex. F).[3]  None of these materials have been sworn to by either the declarant-doctors or any other expert.  As discussed in a prior order in this case, (Docs. 333, 353), there is a line of Third Circuit precedent excluding unsworn expert materials as incompetent evidence on summary judgment. *See, e.g.*, *Fowle v. C&C Cola*, 868 F.2d 59, 67 (3d Cir. 1989). Since Plaintiff has not offered competent evidence of emotional distress that would allow

---

[3] This exhibit was ordered sealed for confidentiality reasons. *See* Doc. 245.

her to carry her burden at trial, Defendant is entitled to summary judgment on the intentional infliction of emotional distress claim.

## II. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (COUNT VII)

### A. Parties' Contentions

Defendant Acri argues that the negligent infliction of emotional distress claim cannot survive because she owed no duty to Plaintiff. (Doc. 189, p. 17). Further, Defendant contends that Plaintiff has offered no evidence that any negligence on the part of Defendant resulted in any physical impact or caused physical harm. (*Id.* at 19-21). In opposition, Plaintiff asserts that "[i]n violating her Attorney's Code of Conduct and Rules of Ethics, [Defendant] has been intentionally negligent in the performance of duty owed to the court which in turn has caused substantial [physical and emotional] injury . . . to the Plaintiff." (Doc. 222, pp. 6-7).

### B. Legal Framework

Under Pennsylvania law, there are four theories of liability under which an action for negligent infliction of emotional distress will lie: (1) impact liability where emotional distress is accompanied by physical injury or impact; (2) zone of danger liability where emotional distress is inflicted on a plaintiff who was in close proximity of physical impact and thereby reasonably experienced a fear of physical

injury; (3) bystander liability for emotional distress experienced by a plaintiff who personally witnessed an impact upon a close relative; and, (4) special relationship liability premised on the breach of a preexisting contractual or fiduciary relationship that foreseeably resulted in emotional harm so extreme that a reasonable person should not be expected to endure the resulting distress. *Doe v. Philadelphia Cmty. Health Alternatives AIDS Task Force*, 745 A.2d 25, 27 (Pa. Super. 2000). *See generally* 1 Summ. Pa. Jur. 2d Torts § 10:1 *et seq.*  In all cases, plaintiff must establish a prima facie case of negligence: duty, breach, causation, and damages. *Brown v. Philadelphia Coll. of Osteopathic Med.*, 760 A.2d 863, 868 (Pa. Super. 2000); *see also Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 45 (Pa. Super. 2000) ("[A]bsent a finding of negligence, the negligent infliction of emotional distress claim cannot survive.").

Under the impact liability theory, a plaintiff may recover emotional distress damages that are accompanied by and consequentially flow from a direct physical injury caused by a defendant's negligence. *Shumosky v. Lutheran Welfare Servs. of Ne. PA, Inc.*, 784 A.2d 196, 200-201 (Pa. Super. 2001).  The injury can be trivial or minor, but the mental suffering must be directly traceable to the peril in which defendant's negligence placed the plaintiff. *Id.* at 201.  The requisite physical impact, however, need not be directly with the defendant nor occur simultaneously with the negligent act. *Stoddard v. Davidson*, 513 A.2d 419, 422 (Pa. Super. 1986).

## C. Plaintiff Cannot Recover for Negligent Infliction of Emotional Distress

Plaintiff has not alleged that she personally witnessed a negligently inflicted physical injury to a close relative. (Doc. 1). Nor has Plaintiff alleged a fear of physical injury resulting from being in close proximity to a physical impact. (*Id.*). Finally, Plaintiff has not alleged any contractual or fiduciary relationship with Defendant Acri. (*Id.*). It follows that Plaintiff can only recover for negligent infliction of emotional distress under an impact liability theory.

Plaintiff alleges that she was involved in a physical altercation at the Shamokin Police Station on August 16, 2004. (Doc. 1, ¶¶ 94-111).  These are the only allegations involving a physical impact or injury found in the complaint. There is nothing in the complaint to suggest that Defendant Acri was involved in this incident. (*Id.*).  Nor has Plaintiff produced any evidence of negligent conduct by Defendant Acri that is causally related to the incident or injuries resulting therefrom. (*See* Docs. 222, 225 Exs. A-F). In fact, the complaint avers that Plaintiff's physical injuries "are a direct and proximate result of the efforts of the Defendant [police officers] in detaining and/or assaulting the Plaintiff as set forth above."[4] (*Id.* ¶ 111).  Thus, even if some as yet unknown act of negligence by Defendant Acri is casually related to the police station incident, the intentional

---

[4] Plaintiff also alleges she was physically attacked by Vanessa Long during the incident. Doc. 1, ¶ 97.

conduct of third persons is a superseding cause of the requisite physical impact.

*See Sovereign Bank v. BJ's Wholesale Club, Inc.*, 395 F. Supp. 2d 183, 196 (M.D.

Pa. 2005). Accordingly, the negligent infliction of emotional distress claim should

be dismissed.

## III. NEGLIGENCE (COUNT VIII)

### A. Parties' Contentions

Defendant argues that as attorney for the husband in a divorce case she owed

no professional duty to the wife. (Doc. 189, p. 17). Defendant further argues that

Plaintiff has failed to offer any admissible evidence of negligence or causation. (*Id.*

at 18). In opposition, Plaintiff asserts that "[i]n violating her Attorney's Code of

Conduct and Rules of Ethics, [Defendant] has been intentionally negligent in the

performance of duty owed to the court which in turn has caused substantial

[physical and emotional] injury . . . to the Plaintiff." (Doc. 222, pp. 6-7).  In the

complaint, Plaintiff avers that Defendant Acri knew or should have known that the

safe was going to be stolen before it was stolen and its location after it was stolen.

(Doc. 1, ¶ 119). According to Plaintiff, the Rules of Professional Conduct imposed

duty upon Acri to third persons such as Plaintiff and Acri was obligated not to

assist Robert Yoncuski in the perpetration of a crime or fraud. (*Id.*). Finally,

Plaintiff alleges Defendant failed to reveal the whereabouts of the safe, despite

being legally obligated to do so, and thereby caused Plaintiff to incur damages.

(*Id.*).

### B. Legal Framework

#### 1. Ordinary Negligence

To establish a prima facie case of negligence, a plaintiff must plead and prove that (1) defendant owed a duty of care to plaintiff (2) the breach of which (3) caused (4) damages. *See Martin v. Evans,* 711 A.2d 458, 461 (Pa. 1998). Under Pennsylvania law, whether a defendant owes a duty of care to a plaintiff is a question of law for the court to decide.[5] *Kleinknecht v. Gettysburg College,* 989 F.2d 1360, 1366 (3d Cir.1993).  Duty is predicated on the relationship between the parties and arises only when one engages in conduct that foreseeably creates an unreasonable risk of harm to others. *R.W. v. Manzek*, 888 A.2d 740, 747 (Pa. 2005). Mere knowledge of a harmful situation by one having the ability to intervene is insufficient to create a duty. *Wenrick v. Schloemann-Siemag Aktiengesellschaft*, 564 A.2d 1244, 1248 (Pa. 1989) ("Before a person may be subject to liability for failing to act in a given situation, it must be established that the person has a duty to act.").  Absent a special relationship with either an injured

---

[5] The duty of care inquiry is a policy decision which requires the trial court to apply the *Althaus* test" which requires consideration of: (1) the relationship between the parties; (2) the social utility of defendant's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the defendant; and, (5) the overall public interest in the proposed solution." *Althaus v. Cohen,* 756 A.2d 1166, 1169 (Pa. 2000)

party[6] or a third person,[7] a defendant is under no duty to control the conduct of third persons to prevent harm to others. *Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 40-41 (Pa. Super. 2000) (citing Restatement (Second) of Torts §§ 314-320).

A defendant acts negligently and breaches an applicable duty by failing to exercise the ordinary care that a reasonably prudent person would exercise under like circumstances. *Merlini ex rel. Merlini v. Gallitzin Water Auth.*, 980 A.2d 502 (Pa. 2009). There must be a causal connection between defendant's breach of duty and plaintiff's injury. *Hamil v. Bashline*, 392 A.2d 1280, 1284 (Pa. 1978). A defendant's negligence is the proximate cause of plaintiff's injury if the negligent conduct is a substantial factor in bringing about the harm inflicted upon the plaintiff. *Jones v. Montefiore Hosp.,* 431 A.2d 920, 923 (Pa. 1981). By contrast, causation is lacking where the plaintiff's injury would have been sustained even in the absence of the defendant's negligence. *Hamil*, 392 A.2d at 1284.

The chain of causation may be broken, and a defendant will not be subject to liability for negligent conduct, if the intervening act of a third party constitutes a

---

[6] A special relationship that gives rise to a duty to aid or protect exists between common carriers and passengers, innkeepers and their guests, a possessor of land who holds it open to the public and the public, and one who takes custody of another and the other. Restatement (Second) of Torts § 314A; *see also id.* § 320 (duty of a person having custody of another to control the conduct of a third person).

[7] A special relationship that gives rise to a duty to control another exists between parent and child, master and servant, possessors of land or chattel and licensees, and one taking charge of a person having dangerous propensities. Restatement (Second) of Torts §§ 316-319.

superseding cause. *Mahan v. Am-Gard, Inc.*, 841 A.2d 1052, 1060 (Pa. Super. 2003).  The commission of a crime or intentional tort by a third person is a superseding cause. *Id.* (citing *Ford v. Jeffries,* 379 A.2d 111 (Pa. 1977)). This is so even though the defendant's negligent conduct created a situation that afforded an opportunity to the third person to commit the tort or crime. *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 395 F. Supp. 2d 183, 196 (M.D. Pa. 2005) (citing Restatement (Second) of Torts § 448). A defendant may still be liable, however, if at the time of the negligent conduct he or she should have realized the likelihood such a situation might be created and that a third person might avail himself of the opportunity to commit the tort or crime. *Id.* (rejecting lack of causation argument where plaintiff alleged that defendant should have realized its negligence in retaining customer information created situation where third parties might avail themselves of opportunity to steal cardholder information).

### 2. Professional Negligence and Legal Malpractice

In Pennsylvania, a tort action premised on legal malpractice requires the same elements as ordinary negligence. *Knopick v. Connelly*, 639 F.3d 600, 605 n. 7 (3d Cir. 2011) (citing 621 A.2d 108 (Pa. 1993)). Additionally, the plaintiff must demonstrate the existence of an attorney-client relationship. *Lefta Associates v. Hurley*, 902 F. Supp. 2d 559, 581 (M.D. Pa. 2012). Absent special circumstances involving a third-party beneficiary, an attorney is subject to liability for

professional negligence only to his or her client. *Smith v. Griffiths*, 476 A.2d 22, 26 (Pa. Super. 1984) (citing *Guy v. Liederbach*, 459 A.2d 744, 750 (Pa. 1983)). Thus, an attorney involved in litigation owes no duty of care to the adverse party. 476 A.2d at 26-27 (explaining conflict of interests between attorney and client would result if attorney were subject to liability to an adverse party). To be sure, an attorney remains liable to third persons, including adverse parties, for intentional torts. *Id.*

Violation of the Rules of Professional conduct does not, without more, mean the conduct is actionable or otherwise give rise to a cause of action against a lawyer. *Maritrans GP Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277, 1284 (Pa. 1992); Pa. Rules of Prof. Conduct, Preamble and Scope cmt. 19 ("[The Rules] are not designed to be a basis for civil liability."). The Rules do not impose substantive legal obligations. *See Com. v. Turrell*, 584 A.2d 882, 885-86 (Pa. 1990). Nor do the Rules augment any substantive legal duty of lawyers. *Id.*

### C. Plaintiff Cannot Recover for Negligence

The only duty that Defendant Acri owed Plaintiff was the general duty of all persons not to engage in conduct that places others at an unreasonable risk of harm. There are no allegations that Defendant was negligent in this regard.  Even if Acri "knew or should have known" the location of the safe and thereby "negligently"

failed to reveal its whereabouts, she was under no legally cognizable duty to do so.

At common law, mere knowledge of a harmful situation coupled with an ability to

render assistance does not impose an affirmative duty to do so. Attorney Acri was

therefore under no duty to reveal the safe's whereabouts and thereby prevent harm

to Plaintiff's property.  Nor was Acri under a duty to control the conduct of the

third persons who stole Plaintiff's safe. Although Robert Yoncuski perpetrated the

theft, an attorney-client relationship is not among any of the recognized special

relationships that impose a duty to control the conduct of another. Attorney Acri

certainly owed no duty of care to Plaintiff in her capacity as an adverse party in

litigation. Finally, Plaintiff does not have standing to bring a negligence action

against Defendant based on an alleged breach of professional duty: Plaintiff is

neither a client of Defendant nor a third-party beneficiary of a client.

The forgoing is unchanged by allegations that Defendant Acri violated

ethical obligations imposed by the Professional Rules of Conduct. The

Pennsylvania Supreme Court has unequivocally ruled that the Rules do not impose

substantive legal duties and do not, without more, give rise to civil liability. In any

event, to the extent attorney Acri knowingly presented false testimony to a

tribunal, intentionally conspired to conceal the whereabouts of the safe, and

actively assisted her client in perpetrating a crime or fraud, these allegations do not

sound in negligence.[8] It follows that the negligence claim against Defendant Acri should be dismissed.

## IV. NEGLIGENCE PER SE (COUNT IX)

In her moving papers, Defendant does not expressly address the negligence per se count.  In opposition, Plaintiff merely asserts that "[i]n violating her Attorney's Code of Conduct and Rules of Ethics, [Defendant] has been intentionally negligent in the performance of duty owed to the court which in turn has caused substantial [physical and emotional] injury . . . to the Plaintiff." (Doc. 222, pp. 6-7).

Negligence per se is not a distinct cause of action but rather an evidentiary presumption that a defendant's violation of a legislative or regulatory enactment constitutes proof of a breach of duty. *See Daniel Boone Area Sch. Dist. v. Lehman Bros.*, 187 F. Supp. 2d 400, 407 (W.D. Pa. 2002) ("The effect of such a rule is to stamp the defendants conduct as negligence, with all the effects of common law negligence, but with no greater effect."). In Pennsylvania, the violation of a statute or ordinance may serve as the basis for negligence per se. *Wagner v. Anzon, Inc.*, 684 A.2d 570, 574 (Pa. Super. 1996). To establish the evidentiary presumption of

---

[8] Again, To be clear, we do not join Ms. Deitrick in her allegations against attorney Acri— allegations which Acri vigorously denies.  We merely opine that, even *if* true, they would be insufficient as a matter of law.

negligence per se, four requirements must be met: (1) the purpose of the statute must be, at least in part, to protect the interest of a group of individuals, as opposed to the public generally;[9] (2) the statute or regulation must clearly apply to the conduct of the defendant; (3) the defendant must violate the statute or regulation; and, (4) the violation of the statute or regulation must be the proximate cause of the plaintiff's injuries. *Cecile Indus., Inc. v. United States*, 793 F.2d 97, 99 (3d Cir. 1986).  The concept of negligence per se establishes both duty and the required breach of duty.  It does not end the inquiry. The plaintiff still bears the burden of establishing causation. *Cabiroy v. Scipione*, 767 A.2d 1078, 1079 (Pa. Super. 2001).

Other than a general reference to the Rules of Professional Conduct, Plaintiff does not identify what enactment Defendant Acri allegedly violated.  As discussed in the preceding section, the Rules govern the ethical obligations of the legal profession and do not constitute substantive law. *Com. v. Chmiel*, 738 A.2d 406, 415 (Pa. 1999).  The preamble to the Rules themselves expressly state that "[v]iolation of a Rule should not itself . . . create any presumption . . . that a legal duty has been breached." Pa. Rules of Prof. Conduct, Preamble and Scope cmt. 19.

---

[9] Stated differently, statute's purpose must be found to be exclusively or in part (a) to protect a class of persons which includes the one whose interest is invaded, and (b) to protect the particular interest which is invaded, and (c) to protect that interest against the kind of harm which has resulted, and (d) to protect that interest against the particular hazard from which the harm results. *Congini by Congini v. Portersville Valve Co.*, 470 A.2d 515, 517-18 (Pa. 1983) (citing Restatement (Second) of Torts § 286).

Since Plaintiff cannot establish negligence per se under the Rules and no other statutory violation has been identified, this count should be dismissed.

## V. CIVIL CONSPIRACY (COUNT XII)

### A. Parties' Contentions

Defendant Acri argues that while there may have been a civil conspiracy by other parties, Plaintiff has not produced any admissible evidence that Acri was a part of any such conspiracy. (Doc. 189, p. 8).  Specifically, Defendant argues that "[p]laintiff has produced no admissible evidence that Defendant Acri either had the requisite state of mind or made an overt act in intentional furtherance of a conspiracy." (Doc. 189, p. 10).  Plaintiff responds by arguing that a police report summarizing statements given by Jeffrey and Marianne Adams regarding a conversation with Defendant Acri evidences the existence of a conspiracy between Acri and the Adams.  (Doc. 222, pp. 2-4).  Defendant contests the admissibility of this evidence in ruling on the motion for summary judgment.

### B. Elements and Proof of Civil Conspiracy

Under Pennsylvania law, to establish a prima facie case of civil conspiracy, a plaintiff must plead and prove: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act in furtherance of the conspiracy;

and (3) actual legal damages.  *Goldstein v. Phillip Morris, Inc.*, 854 A.2d 585, 590 (Pa. Super. 2004).   Proof of malice, defined as an intent to injure, is required. *Reading Radio, Inc. v. Fink*, 833 A.2d 199, 212 (Pa. Super. 2003).  The unlawful intent must be without justification.  *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979).  In the case of an attorney acting for a client, the attorney is not subject to liability unless she acts solely to injure the plaintiff rather than in the capacity of legal counsel seeking to advance the legitimate interests of the client.  *See Denenberg v. Am. Family Corp. of Columbus, Ga.*, 556 F. Supp. 1242, 1253 (E.D. Pa. 1983).

Absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act. *Goldstein*, 854 A.2d at 590. Instead, conspiracy liability must be based on an existing independent wrong or tort that would constitute a valid cause of action if committed by one actor.  *In re Orthopedic Bone Screw Products Liab. Litig.*, 193 F.3d 781, 789 (3d Cir. 1999). Civil conspiracy is not independently actionable but rather is a means for establishing vicarious liability for an underlying intentional tort.  *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 407 (3d Cir. 2000); *see also Goldstein*, 854 A.2d at 591 (rejecting civil conspiracy claims premised on negligence and strict liability).  Civil conspiracy cannot be predicated upon criminal acts that do not otherwise give rise to a cognizable private right of action.

*See, e.g.*, *Pelagatti v. Cohen*, 536 A.2d 1337, 1342 (Pa. Super. 1987) (no cause of action for civil conspiracy predicated on obstruction of justice); *Homer v. Ciamacco*, 2 Pa. D. & C.3d 755, 757 (Pa. Com. Pl. 1977) (no cause of action for civil conspiracy predicated on perjury).

Conspiracy may be proved by circumstantial evidence provided the evidence is "full, clear and satisfactory." *Blank & Gottschall Co. v. First Nat. Bank of Sunbury*, 50 A.2d 218, 220 (Pa. 1947); *see also Fife v. Great Atl. & Pac. Tea Co.*, 52 A.2d 24, 27 (Pa. 1947) ("A conspiracy may be proved by acts and circumstances sufficient to warrant an inference that the unlawful combination had been in point of fact formed for the purpose charged."). The mere fact that several parties happened to exercise independent rights around the same time, however, does not constitute actionable civil conspiracy. *Id.* "Mere suspicion or the possibility of guilty connection is not sufficient, nor proof of acts which are equally consistent with innocence." *Id.*

## C. Admissibility of the Police Report and Other Evidence

On summary judgment, a party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record; or, (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

evidence to support the fact. Fed. R. Civ. Pro. 26(c)(1).  Citing material that cannot be presented in a form that would be admissible in evidence constitutes grounds for objection. Fed. R. Civ. Pro. 26(c)(2).  If the admissibility of evidence is challenged, the proponent must demonstrate that the content of the evidence is capable of admission at trial.  *Bender v. Norfolk Southern Corp.*, 994 F. Supp. 2d 593, 599 (M.D. Pa. 2014).[10]

Accordingly, hearsay statements that would be inadmissible at trial cannot be considered for purposes of summary judgment. *Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009); *see also* Fed. R. Evid. 802 ("Unless a federal statute, the Federal Rules of Evidence, or a rule prescribed by the Supreme Court prescribes otherwise, hearsay is not admissible.").  Conversely, hearsay statements that are capable of admission at trial may be considered on a motion for summary judgment. *Shelton v. Univ. of Med. & Dentistry of New Jersey*, 223 F.3d 220, 223 (3d Cir. 2000).  Upon objection, the proponent must demonstrate that there is more than a mere possibility that the evidence will be admissible at trial.  *Bender*, 994 F. Supp. 2d at 600.  For instance, the proponent may show there is some likelihood that the hearsay declarant will appear and testify at trial. *Id.*  On the other hand, if the declarant has given sworn testimony during discovery that contradicts the

---

[10] "The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56, Advisory Committee Notes (2010 Amendments).

hearsay statement, that statement may not be considered on a motion for summary judgment. *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1246 (3d Cir. 1993) (concluding non-movant's hearsay memorandum was not capable of admission and could not be considered on summary judgment where declarant gave subsequent contradictory deposition testimony); *see also Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) ("The possibility that the declarant might change his sworn deposition testimony and admit to the truth of the hearsay statement amounts only to a suggestion that admissible evidence might be found in the future, which is not enough to defeat a motion for summary judgment."); *McMillian v. Johnson*, 88 F.3d 1573, 1583-84 (11th Cir. 1996) (holding that hearsay statements that were subsequently contradicted by declarants' affidavits could not be considered in opposition to summary judgment).

### 1. The Police Report Contains Inadmissible Hearsay

In opposing summary judgment, Plaintiff primarily relies upon a police report describing statements made by Marianne Adams pursuant to an immunity agreement.  The report states, in pertinent part, that:

> [Marianne Adams] advised that after [Officer Foura] came to [the Adams] residence [in September], that they contacted [Defendant Acri] to ask for advice. [Defendant Acri] told them not to say anything, that the Police don't know where the safe is buried and can't prove that Robert took it. *[Marianne*

*Adams] advised that [Defendant Acri] knew that Robert [Yoncuski] took the safe and of its whereabouts.*

(Doc. 225-2, pp. 34-35) (emphasis added).  The emphasized portion is relevant because Defendant Acri's knowledge of the location of the safe and Yoncuski's role in the theft is probative of involvement in an ongoing conspiracy to convert and conceal the safe and its contents. Further, if Defendant Acri had such knowledge, then her preceding advice not only goes to intent but would constitute an overt act in furtherance of the alleged illegal agreement. By contrast, absent such knowledge, her advice is entirely consistent with the professional and ethical obligations owed to her client (Robert Yoncuski) and unrepresented persons (the Adams).[11] The emphasized portion, however, cannot be considered on summary judgment because it is inadmissible hearsay that is not capable of being presented in admissible form at trial.

Hearsay is an out of court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801(a)-(c). Here, the police report is an out of court statement that is offered to prove the truth of the matter asserted—that Defendant Acri knew that Yoncuski took the safe. Since the statement sets out a matter observed by Officer Foura who was under a legal duty to report that matter, it falls

---

[11] Omitted from the police report was attorney Acri's advice that the Adams retain counsel and not respond to police questioning without counsel. (Doc. 197-8, pp. 60, 67). Acri's statements are consistent with the provisions of Rule 4.3 regarding an attorney's dealings with unrepresented persons. *See* Pa. Rules of Prof'l Conduct R. 4.3(b)-(c).

within the public records exception to the rule against hearsay. *See* Fed. R. Evid.

803(8). But that exception only extends to the truth of the matter observed—that

Ms. Adams in fact so advised Officer Foura. Ms. Adams statement to the officer

about Defendant Acri's knowledge is itself hearsay that is inadmissible absent an

applicable exception. *See* Fed. R. Evid. 805; *see also United States v. Sallins*, 993

F.2d 344, 347 (3d Cir. 1993) (explaining that even if record of 911 call was

admissible under Rule 803(8), the out-of-court statements by the caller were

inadmissible hearsay unless covered by another exception); *United States v. De

Peri*, 778 F.2d 963, 976-77 (3d Cir. 1985) (upholding exclusion of FBI reports,

which themselves fall within public record exception, detailing interviews with

third parties where proponent provided no applicable hearsay exception with

respect to the out-of-court statements contained in those reports).

There is no applicable exemption in Rule 801. Rule 801(d)(2)(A) does not

apply because Ms. Adams' statement is offered against Defendant Acri. Fed. R.

Evid. 801(d)(2)(A) (exempting statements by a party opponent that is offered

against that party). Rule 801(d)(2)(E) does not apply because the statement was

made pursuant to an immunity agreement after Ms. Adams had withdrawn and

ended her participation in the alleged conspiracy. Fed. R. Evid. 801(d)(2)(E)

(exempting statements offered against an opposing party that were made by that

party's coconspirator *during and in furtherance of the conspiracy*) (emphasis added). None of the exceptions set forth in Rule 803 are applicable.

Since there is no applicable hearsay exception for Ms. Adams' statement within the police report, the report can be considered on summary judgment only if the hearsay statement contained therein is capable of being presented in a form that would be admissible at trial. It is not; Ms. Adams has given sworn discovery responses contradicting the report. First, Ms. Adams denies that Defendant Acri ever informed her that Acri had knowledge of the safe incident. Therefore the statement is not capable of admission as a statement by a party opponent.  Second, Ms. Adams denies ever having information suggesting that Defendant Acri had anything to do with or knew about the theft of the safe. Therefore the statement is not capable of admission as testimony based on personal knowledge.

Finally, the statement is not capable of admission at trial under Rule 801(d)(1)(A). That rule provides that a prior statement of a declarant who testifies and is subject to cross-examination is not hearsay if the statement is inconsistent with the declarant's testimony and was given under penalty of perjury at a trial, hearing, deposition, or other proceeding. Fed. R. Evid. 801(d)(1)(A).  Although the police report is admissible to prove that Ms. Adams in fact made a statement about Defendant Acri's knowledge, and Ms. Adam's testimony at trial would presumably be inconsistent, the prior statement was not "given under penalty of perjury at a

trial, hearing, deposition, or other proceeding." Even assuming Ms. Adams gave

the statements under penalty of perjury, an interview with a police officer pursuant

to an immunity agreement does not constitute a "proceeding" within the meaning

of Rule 801(d)(1)(A).  *See, e.g.*, *United States v. Dietrich*, 854 F.2d 1056, 1061-62

(7th Cir. 1988) (holding that prior inconsistent statement given to Secret Service

Agents failed to satisfy "other proceeding" requirement even though declarant

signed the written statement and verified its truth); *United States v. Livingston*, 661

F.2d 239, 242 (D.C. Cir. 1981) (same). Accordingly, the statements in the police

report regarding Acri's knowledge will not be considered on summary judgment.

### 2. The Rovito Conversation Is Inadmissible

Plaintiff testified that she was informed by her then-attorney Vince Rovito

that attorney Acri told attorneys Rovito and Joel Wiest of an earlier conversation

where Vanessa Long asked Acri what to do with the jewelry and Acri responded

by telling her to keep her mouth shut and that nobody knows she has the jewelry.

(Doc. 196-1, pp. 121:14-122:10, 220:11-19, 225:22-25).  Acri's response is

relevant because it is probative of involvement in the alleged conspiracy. But that

is only so if the conversation between Acri and Vanessa Long occurred prior to

February 8, 2005.[12] Plaintiff was present for neither the conversation between Acri

---

[12] On or after February 8, 2005, Acri and Wiest began making arrangements for the return of the
safe and the jewelry after Robert Yoncuski admitted his complicity in the incident.

and Vanessa Long nor the conversation between Acri and attorneys Rovito and Wiest. (Doc. 196-1, p. 226:18-24). Plaintiff does not know when her conversation with attorney Rovito occurred, when the conversation between Acri and Rovito occurred, or when the conversation between Acri and Vanessa Long occurred. (*Id.* at 220:16-221:12, 224:23-225:9, 225:19-226:17).  Hence, absent any proof of when these conversations occurred, this testimony is likely inadmissible at trial. *See* Fed. R. Evid. 104(b) ("When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist. The court may admit the proposed evidence on the condition that the proof be introduced later.").

Even if the conversation between attorney Acri and Vanessa Long occurred while the alleged conspiracy was ongoing, however, it is hearsay not subject to an exception and is incapable of being presented in admissible form at trial. Defendant Acri's statements to Rovito are not hearsay. *See* Fed. R. Evid. 801(d)(2) (excluding statements by a party opponent from definition of hearsay) . But Rovito's statement to Plaintiff was made out of court and is offered for its truth. There is no applicable exception in Rule 803. Further, Rovito, the hearsay declarant, submitted a sworn affidavit directly contradicting the statement. (Doc.

187, Ex. JMA-5, Rovito Aff.).[13]  Therefore the statement is not capable of admission at trial and will not be considered on summary judgment.

### 3. Robert Yoncuski's Statements to His Attorney Are Inadmissible

In deposition testimony, Plaintiff testified that Robert Yoncuski asked one of his attorney's for permission to take the safe. (Doc. 196-1, pp. 119:9-122:14). From this prior act, Plaintiff infers that Yoncuski also asked attorney Acri for permission. (*Id.*). This is inadmissible propensity evidence and will not be considered on summary judgment. *See* Fed. R. Evid. 404(b)(1).

## D. Plaintiff Cannot Carry Its Burden at Trial

Conspiracy liability requires an existing intentional tort that would constitute a valid cause of action if committed by one actor.  Intentional infliction of emotional distress cannot serve as the predicate tort because that claim is recommended for dismissal.  The negligence claims are not intentional torts and therefore cannot support an action for civil conspiracy. In any event, those claims were also recommended for dismissal.  Finally, perjury does not give rise to a cognizable private right of action and thus cannot serve as a predicate offense. It

---

[13] Joel Wiest also denies that Defendant ever made any statements suggesting she had prior knowledge of Robert Yoncuski's role in the safe incident. (Doc. 187, JMA-6, Wiest Aff. 1). Wiest believes that Defendant Acri only learned the true facts after speaking with Wiest on February 8, 2005. (*Id.*).

follows that the cause of action for civil conspiracy against Defendant Acri must be premised upon conversion or trespass to chattels.

Defendant asserts there is no admissible evidence that she was part of any conspiracy. The burden thus shifts to Plaintiff to identify evidence that raises a genuine dispute of material fact requiring resolution at trial.  Defendant is entitled to summary judgment because Plaintiff failed to produce anything more than a scintilla of admissible evidence that Defendant conspired to steal the safe or convert its contents.  Plaintiff relies entirely upon circumstantial evidence of Defendant Acri's knowledge of the safe's whereabouts and her client's wrongdoing. But that evidence is not admissible. Plaintiff has not produced any evidence of an agreement between Acri and her client Robert Yoncuski. Nor is there evidence that Acri acted solely with the purpose of injuring Plaintiff rather than in her capacity as Yoncuski's counsel.  Finally, the September 2004 conversation between attorney Acri and Ms. Adams is only minimally probative of an unlawful agreement between the two and is insufficient to defeat summary judgment.

## VI. CONVERSION (COUNT XIII)

Under Pennsylvania law, conversion is the deprivation of or interference with another's right of property in, use of, or possession of a chattel without the

owner's consent and without lawful justification.  *PTSI, Inc. v. Haley*, 71 A.3d 304, 314 (Pa. Super. 2013).  Here, Defendant Acri argues she is entitled to summary judgment on the conversion claim because Plaintiff has produced no admissible evidence that Defendant received property from the safe or conspired to do the same. (Doc. 189, p. 11).  In opposition, Plaintiff relies upon Defendant Acri's involvement in the alleged conspiracy to steal Plaintiff's safe and convert its contents. (Doc. 222, p. 5).  Plaintiff also asserts that Defendant Acri received property from the safe as compensation for the legal services she provided Robert Yoncuski. (Doc. 1, ¶ 119; Doc. 222-1, ¶ 15). In the complaint, Plaintiff alleges that Robert Yoncuski paid attorney Acri between $50,000 and $70,000, some or all of which Plaintiff alleges were proceeds from the stolen safe. (Doc. 1, ¶ 119).

As discussed in the preceding section, there is no evidence that Defendant Acri participated in the alleged conspiracy to steal the safe and its contents. Further, Plaintiff has produced no evidence that Defendant Acri accepted contents from the safe as compensation for legal services.  The conversion claim against Defendant Acri should therefore be dismissed.

## VII. TRESPASS TO CHATTELS (COUNT XIV)

The tort of trespass to chattels is defined as intentionally dispossessing another of a chattel or using or intermeddling with a chattel in the possession of

another. *Pestco, Inc. v. Associated Products, Inc.*, 880 A.2d 700, 708 (Pa. Super. 2005) (citing Restatement (Second) of Torts § 217).  Here, Defendant Acri argues she is entitled to summary judgment on the trespass to chattels claim because Plaintiff has produced no admissible evidence that Defendant ever possessed property from the safe or conspired to do the same. (Doc. 189, p. 11).  In response, Plaintiff relies upon a theory of conspiratorial liability in order to defeat summary judgment. (Doc. 222, pp. 5-6).  Plaintiff also asserts that attorney Acri received property from the safe as compensation for the legal services she provided Robert Yoncuski. (Doc. 1, ¶ 119; Doc. 222-1, ¶ 15).

As discussed in the preceding section, there is no evidence that Defendant Acri participated in the alleged conspiracy to steal the safe and its contents. Further, Plaintiff has produced no evidence that Defendant Acri accepted contents from the safe as compensation for legal services.  The trespass to chattels claim against Defendant Acri should therefore be dismissed.

## <u>RECOMMENDATION</u>

For the forgoing reasons, it is recommended that Defendant Jane Acri's motion for summary judgment be granted.

With respect to Count VI (intentional infliction of emotional distress) against Defendant Acri, it is recommended that summary judgment be **GRANTED.**

With respect to Count VII (negligent infliction of emotional distress) against Defendant Acri, it is recommended that summary judgment be **GRANTED.**

With respect to Count VIII (negligence) against Defendant Acri, it is recommended that summary judgment be **GRANTED.**

With respect to Count IX (negligence per se) against Defendant Acri, it is recommended that summary judgment be **GRANTED.**

With respect to Count XII (civil conspiracy) against Defendant Acri, it is recommended that summary judgment be **GRANTED.**

With respect to Count XIII (conversion) against Defendant Acri, it is recommended that summary judgment be **GRANTED.**

With respect to Count XIV (trespass to chattels) against Defendant Acri, it is recommended that summary judgment be **GRANTED.**

## <u>NOTICE OF REPORT & RECOMMENDATION</u>

NOTICE IS HEREBY GIVEN that the Magistrate Judge has entered the foregoing Report and Recommendation.

Any party may obtain a review of the Report and Recommendation pursuant to Local Rule 72.3, which provides:

> **Any party may object** to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition **within fourteen (14) days after being served** with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. **The briefing requirements set forth in Local Rule 72.2 shall apply**. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses, or recommit the matter to the magistrate judge with instructions. M.D.Pa. LR 72.3 (2010). (emphasis added).

Signed on <u>10/02/2014</u>.      *s/ William I. Arbuckle III*
                                   WILLIAM I. ARBUCKLE III
                                   UNITED STATES MAGISTRATE JUDGE