**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DONNA DEITRICK, | : | Civil No. 4:06-CV-01556 |
| | : | |
| Plaintiff, | : | (Judge Brann) |
| | : | (Magistrate Judge Arbuckle) |
| v. | : | |
| | : | |
| MARK A. COSTA, *et al.*, | : | |
| | : | |
| Defendants, | : | |

## REPORT AND RECOMMENDATION

(Motion for Summary Judgment – Doc. 197)

# TABLE OF CONTENTS

**INTRODUCTION**......................................................................................................... **3**

**PROCEDURAL HISTORY** ........................................................................................... **3**

**STATEMENT OF MATERIAL FACTS** ...................................................................... **4**

**SUMMARY JUDGMENT STANDARD** ...................................................................... **9**

**DISCUSSION** ............................................................................................................... **12**

  **I. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS** ............................ **14**

    A. IIED Under Pennsylvania Law ........................................................................ 14

    B. Plaintiff Cannot Recover for Intentional Infliction of Emotional Distress ...... 17

  **II. NEGLIGENT INFLICTION OF EMTIONAL DISTRESS** ................................ **19**

    A. NIED Under Pennsylvania Law ....................................................................... 19

    B. Plaintiff Cannot Recover for Negligent Infliction of Emotional Distress ....... 21

  **III. NEGLIGENCE** ................................................................................................... **22**

    A. Elements of Negligence .................................................................................... 22

    B. Triable Issues of Fact Regarding Negligence .................................................. 24

  **IV. NEGLIGENCE PER SE** ..................................................................................... **27**

    A. Presumption of Negligence Per Se .................................................................. 27

    B. Dismissal of Negligence Per Se Claim ............................................................ 28

  **V. CIVIL CONSPIRACY** .......................................................................................... **30**

    A. Defendant's Contentions .................................................................................. 30

    B. Elements and Proof of Civil Conspiracy .......................................................... 30

    C. Factual Issues Regarding Defendant's Involvement in Conspiracy ................. 32

  **VI. CONVERSION AND TRESPASS TO CHATTELS** .......................................... **36**

    A. Elements of Conversion and Trespass to Chattels ........................................... 36

    B. Factual Issues Regarding Conversion and Trespass to Chattels ...................... 38

  **VI. VALUE OF THE SAFE CONTENTS** ............................................................... **41**

    A. Legal Framework .............................................................................................. 42

    B. Jury Question as to Damages ............................................................................ 44

**RECOMMENDATION**................................................................................................. **47**

**NOTICE OF REPORT & RECOMMENDATION**....................................................... **48**

# INTRODUCTION

Pending before the Court is Defendant Thomas Yoncuski's motion for summary judgment seeking dismissal of all counts (VI-IX, XII-XIV) against him. (Doc. 197).  The Complaint alleges causes of action against Defendant Yoncuski for intentional infliction of emotional distress (Count VI), negligent infliction of emotional distress (Count VII), negligence and negligence per se (Counts VIII & IX), civil conspiracy (Count XII), conversion (Count XIII), and trespass to chattels (Count XIV). Defendant's motion should be granted with respect to the counts based on emotional distress and negligence per se (Counts VI, VII, IX).  For reasons set forth below, however, it is recommended that summary judgment be denied with respect to the remaining counts (Counts VIII, XII-XIV).

# PROCEDURAL HISTORY

Plaintiff Donna Deitrick commenced the above-captioned case on August 11, 2006 by filing a complaint alleging various federal and state causes of action against numerous defendants. (Doc. 1).  Defendant Thomas Yoncuski is named in Counts VI-IX and XII-XIV. Specifically, Plaintiff alleges state-law claims against Defendant Yoncuski for intentional infliction of emotional distress (Count VI), negligent infliction of emotional distress (Count VII), negligence (Count VIII),

negligence per se (Count IX), civil conspiracy (Count XII), conversion (Count XIII), and trespass to chattels (Count XIV).

Defendant filed an answer on December 18, 2006. (Doc. 39). An amended answer was filed on March 3, 2011 (Doc. 98). Defendant subsequently moved for summary judgment and partial summary judgment by filing the instant motion on October 9, 2012. (Doc. 197). Plaintiff filed an opposition brief on May 3, 2013. (Doc. 297). Defendant moved to strike that brief as untimely, requested the summary judgment motion be deemed unopposed, and sought dismissal of all claims based on Plaintiff's failure to comply with court orders. (Doc. 317). That motion was denied.[1] (Doc. 366). The summary judgment motion is presently pending before this Court.

## STATEMENT OF MATERIAL FACTS

The following is a statement of material facts drawn from Defendant's supporting materials, (Docs. 197-99), the underlying documents, and evidence in the record known to this Court. Plaintiff did not submit a statement of facts for the purpose of establishing a factual dispute. However, where Defendant's factual assertions are contradicted by his own supporting materials or other evidence of

---

[1] As discussed below, deeming the instant motion unopposed would not have changed the Court's recommendation.

record known to this Court, the facts will be set forth in the light most favorable to Plaintiff, the nonmoving party.

On August 13, 2004, Plaintiff Donna Deitrick went to a warehouse owned by her then husband Robert Yoncuski in order to retrieve personal property. (Doc. 198, ¶ 1).  At the time, Plaintiff and Yoncuski were separated and in the midst of divorce proceedings. (Doc. 197, ¶ 3). At the warehouse, a confrontation ensued between Plaintiff, Robert Yoncuski, and several other parties including the police. (Doc. 198, ¶¶ 2-5). Defendant Thomas Yoncuski was neither present nor involved in these events. (*Id.*).

Later that evening, Robert Yoncuski, aided by Jeffrey Adams, Marianne Adams, Troy Latsha, and Kyle Schreffler, broke and entered Plaintiff's residence and removed a safe containing money and jewelry. (Doc. 198, ¶¶ 6-11; Doc. 199, p. 3). Two days later, on August 15, Robert Yoncuski cut open the safe and emptied some of its contents[2] into several bags and a blue container. (*Id.*).  The safe was ultimately buried at or near the Adams' property. (*Id.*). During a February 9, 2005, state court civil contempt hearing, Robert Yoncuski identified Defendant

---

[2] Robert Yoncuski testified that he kept $50,000 in cash that was found in the safe. (Doc. 197-3, p. 61)

Thomas Yoncuski as one of the individuals who participated in the removal of the safe.[3] (Doc. 225-2, pp. 92, 95).

On Sunday August 15, 2004, Robert Yoncuski asked his niece Keri Balascik to come to his house and take custody of the bags and container containing the contents of the safe. (Doc. 197-3, pp. 61, 71: 14-23). Robert Yoncuski then placed three or four black garbage bags and a container measuring at least two cubic feet into the trunk of Ms. Balascik's Pontiac Sunfire. (*Id.*; Doc. 197-5, pp. 10:2-11:8). Mr. Yoncuski did not inform Ms. Balascik of the bags' contents and instructed her not to look inside. (Doc. 197-3, p. 61).  Mr. Yoncuski testified that he had no knowledge of and never inquired about what Ms. Balascik subsequently did with items placed in her trunk. (Doc. 197-3, pp. 71:18-23, 78:16-23).

That same day, after leaving Robert Yoncuski's residence, Ms. Balascik looked inside the bags in her trunk, recognized the items as jewelry, and decided she wanted nothing to do with the matter. (Doc. 197-5, pp. 13:1-14:13). "Within a short period of time . . . [n]ot long after [Robert Yoncuski] put [the bags] in [her] car," Ms. Balascik took the items to Defendant Thomas Yoncuski's house. (*Id.*). She left the items by Defendant Yoncuski's garage or front porch. (*Id.* at 15:15-19).  Ms. Balascik does not recall whether Defendant Yoncuski was home at the

---

[3] In a deposition conducted July 13, 2012, Robert Yoncuski testified that Defendant Thomas Yoncuski was not involved in these events. (*Id.*; Doc. 197-3, pp. 73:4-74:9).

time. (*Id.*).  Nor does she have any recollection of ever discussing the bags with Defendant Thomas Yoncuski or Robert Yoncuski. (Doc. 197-5, pp. 15:4-16:6, 17:3-9).  Although Ms. Balascik never called Defendant Yoncuski to tell him she was leaving bags full of jewelry on his property, she testified that she was not worried the bags would get thrown away or lost.[4] (Doc. 197-5, pp. 26:4-27:7).

On August 16, 2004, Plaintiff was involved in a physical altercation at the Shamokin police station. (Doc. 198, ¶ 18). Defendant Thomas Yoncuski was not present at the police station or otherwise involved in the incident. (*Id.* ¶ 19).

In September of 2005, the Pennsylvania State Police (PSP) came to the residence of Jeffrey and Marianne Adams to question them about the safe incident. (Doc. 197-8, pp. 42:17-44:23).  Defendant Thomas Yoncuski was present at the time. (*Id.*).  In response to questioning, Defendant Yoncuski denied any involvement in the safe incident. (Doc. 225-2, p. 20).

On or about January 28, 2005, the Pennsylvania State Police (PSP) again contacted the Adams regarding the safe. (Doc. 222-2, p. 34).  At some point thereafter, Joel Wiest, Robert Yoncuski's attorney, called the PSP and informed them he represented the Adams.  (*Id.*).  The PSP informed Wiest that the Adams would be offered immunity in exchange for their cooperation regarding the theft of

---

[4] Ms. Balascik explained it was marital property and she did not care what happened to it. (Doc. 197-5, pp. 26:24-27:13.

the safe. (*Id.*).  Wiest acknowledged that he was potentially conflicted due to his concurrent representation of Robert Yoncuski. (*Id.*).  On February 7, 2005, Attorney Dave Noon contacted the PSP to inform them the Adams wanted to cooperate in exchange for immunity. (*Id.*).

On February 8, 2005, Attorney Wiest visited his client Robert Yoncuski in jail and informed him that Jeffrey and Marianne Adams were offered immunity and had implicated Yoncuski in the theft of the safe. (Doc. 197-3, pp. 64:19-65:20; J. Wiest Aff., p. 1). Yoncuski admitted his complicity in the incident. (*Id.*).  At approximately 8:00 am the next morning, Defendant Thomas Yoncuski delivered black trash bags and a blue tub containing the contents of the safe to Vanessa Long. (Doc. 197-4, pp. 20:6-22:21). One or two hours later, Ms. Long delivered those items to Michael Rudinski, an attorney who also represented Robert Yoncuski. (*Id.*).  The jewelry was eventually returned to Plaintiff but much of it was missing or damaged. (Doc. 197-2, pp. 184, 192:18-24,  228:24-229:1).

Approximately a week prior to the return of the safe contents, Carol Ann Whary, Defendant Thomas Yoncuski's neighbor, overheard Defendant Yoncuski inform Ms. Whary's husband: "We screwed up the jewelry real good. She will never get it back." (Doc. 196-4, pp. 35:9-12, 44:14-24).  On or before the day that the safe contents were returned, Defendant Thomas Yoncuski borrowed a backhoe and front-end loader from the Whary's that he used to dig up ground in his

backyard. (Doc. 196-4, pp. 36:1-10, 41:11-18, 49:1-7). Ms. Whary then observed

black garbage bags that Defendant Yoncuski had dug up in the bucket of the

tractor.  (Doc. 196-4, pp. 41:20-42:8, 43:4-8,  87:16-88:3). Plaintiff also observed

Defendant Yoncuski driving a backhoe containing a "torn" and "busted" black

garbage bag that had jewelry hanging out of it. (Doc. 197-2, pp. 128:1-15, 201:23-

25)  The following day, Ms. Whary learned from the newspaper that the safe and

jewelry were turned over. (Doc. 196-4, p. 49:1-7). When Defendant Yoncuski later

returned the backhoe, Ms. Whary jokingly asked him whether he had dug up the

safe. (Doc. 196-4, p. 46:10-15). Defendant Yoncuski laughed and replied that he

had dug up something better. (*Id.*).

## SUMMARY JUDGMENT STANDARD

We will examine the motion for summary judgment under the well

established standard.  Rule 56(a) of the Federal Rules of Civil Procedure provides

as follows:

> A party may move for summary judgment, identifying each claim or defense
> - or the part of each claim or defense - on which summary judgment is
> sought. The court shall grant summary judgment if the movant shows that
> there is no genuine dispute as to any material fact and the movant is entitled
> to judgment as a matter of law. The court should state on the record the
> reasons for granting or denying the motion.  Fed. R. Civ. P. 56(a).

For purposes of Rule 56, a fact is material if proof of its existence or

nonexistence might affect the outcome of the suit under the applicable substantive

law. *Haybarger v. Laurence Cnty. Adult Prob. & Parole*, 667 F.3d 408, 412 (3d Cir. 2012) (*quoting Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). For an issue to be genuine, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* (*quoting Anderson*, 477 U.S. at 248-49).

Accordingly, in support of a motion for summary judgment, the moving party must show that if the evidence of record were reduced to admissible evidence in court, it would be insufficient to allow the non-moving party to carry its burden of proof. *See Celotex v. Catrett*, 477 U.S. 317, 323 ( 1986). Provided the moving party has satisfied this burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Instead, if the moving party has carried its burden, the non-moving party must then respond by identifying specific facts, supported by evidence, which show a genuine issue for trial, and may not rely upon the allegations or denials of its pleadings. *See Martin v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007); see also Fed. R. Civ. P. 56(c).

In adjudicating the motion, the court must view the evidence presented in the light most favorable to the opposing party, *Anderson*, 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party, *Big*

*Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir.

1992). Where the non-moving party's evidence contradicts the movant's, then the

non-movant's must be taken as true.  *Id.*  Additionally, the court is not to decide

whether the evidence unquestionably favors one side or the other, or to make

credibility determinations, but instead must decide whether a fair-minded jury

could return a verdict for the plaintiff on the evidence presented. *Id. at 252; see*

*also Big Apple BMW*, 974 F.2d at 1363. In reaching this determination, the Third

Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not match,
> item for item, each piece of evidence proffered by the movant. In practical
> terms, if the opponent has exceeded the "mere scintilla" threshold and has
> offered a genuine issue of material fact, then the court cannot credit the
> movant's version of events against the opponent, even if the quantity of the
> movant's evidence far outweighs that of its opponent. It thus remains the
> province of the factfinder to ascertain the believability and weight of the
> evidence. *Id.* In contrast, "[w]here the record taken as a whole could not lead
> a rational trier of fact to find for the non-moving party, there is no genuine
> issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475
> U.S. 574, 587 (1986) (internal quotation marks omitted); *NAACP v. North*
> *Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 476 (3d Cir. 2011).

Often described as a legal test that is easy to state but hard to apply, we now

turn to the facts of this case to determine if there is a genuine dispute of material

fact requiring a trial.

## **DISCUSSION**

As an initial matter, the procedural status of this motion deserves mention. Defendant moved to strike Plaintiff's opposition materials and requested that the instant motion be deemed unopposed due to Plaintiff's failure to comply with applicable deadlines. (Doc. 317). Based on the strong public policy in favor of resolving disputes on the merits and this Court's reluctance to hold a client responsible for their counsel's inadvertence or neglect, that motion was denied.[5] (Doc. 366). A contrary ruling, however, would not have changed the outcome of this Report and Recommendation.

Local Rule 56.1 requires a party moving for summary judgment to file a statement of material facts as to which it contends there is no genuine issue to be tried. Properly supported facts[6] set forth in that statement are deemed admitted unless controverted by the opposing party's counterstatement of disputed facts. *Id.* A party who fails to timely file the counterstatement or a brief in opposition is deemed not to oppose the motion for summary judgment. Local Rule 7.6. In this case, Plaintiff did not file a counterstatement of facts—timely or otherwise.

---

[5] A district court has discretion to depart from the requirements of local rules. *United States v. Eleven Vehicles*, 200 F.3d 203, 214-15 (3d Cir. 2000) *a*
[6] Local Rule 56.1 requires the statement to "include references to the parts of the record that support the statements." *Id.*; *see also* Fed. R. Civ. P. 56(c)(1) (requiring assertions of undisputed facts to be supported by citation to particular parts of the record).

A failure to dispute the moving party's statement of facts pursuant to Local Rule 56.1, however, is not a sufficient basis to grant summary judgment. *Ely v. Cabot Oil & Gas Corp.*, ___ F. Supp. 2d ___, 2014 WL 4071640, *7 (M.D. Pa. Apr. 23, 2014). Nor does failure to comply with the filing requirements imposed by Local Rule 7.6 require granting an unopposed motion. *See Anchorage Assoc. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 174-75 (3d Cir. 1990); *accord* Fed. R. Civ. P. 56, Advisory Committee Notes (2010). ("[S]ummary judgment cannot be granted by default even if there is a complete failure to respond to the motion."). Instead, Local Rules 56.1 and 7.6 "must be construed and applied in a manner consistent with the Federal Rules of Civil Procedure" which require that the moving party be entitled to judgment as a matter of law. *Anchorage Assoc.*, 922 F.2d at 174-75. Furthermore, even where no opposing evidentiary matter is presented, summary judgment should be denied if the evidence in support of the motion does not establish the absence of a genuine issue,[7] the movant's own papers demonstrate the existence of material factual issues,[8] or the court knows of record materials that show grounds for genuine dispute.[9]

Despite Plaintiff's failure to submit a counterstatement of facts, the Court is aware of evidentiary materials not cited by Defendant that raise genuine issues of

---

[7] Fed. R. Civ. P. 56, Advisory Committee Notes (1963).
[8] *See Drexel v. Union Prescription Centers, Inc.*, 582 F.2d 781, 790 (3d Cir. 1978)
[9] Fed. R. Civ. P. 56, Advisory Committee Notes (2010); *see also* Fed. R. Civ. P. 56(c)(3) (permitting court to consider any materials in the record on summary judgment).

fact. *Cf. Williams Controls, Inc. v. Parente, Randolph, Orlando, Carey & Assoc.*, 39 F. Supp. 2d 517, 519 n.1 (M.D. Pa. 1999) (considering entire record to ascertain relevant facts notwithstanding non-moving party's failure to submit counterstatement complying with Rule 56.1). Indeed, Defendant's supporting evidentiary materials themselves raise genuine issues of fact that preclude summary judgment. In sum, due to the vast number of motions filed in this case and this Court's familiarity with record, deeming this motion "unopposed" would not have changed the below recommendations. With that in mind, we proceed to discuss the merits of Defendant's motion.

# I. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Defendant argues that Plaintiff cannot establish a prima facie case for intentional infliction of emotional distress because there is no evidence that Defendant committed an outrageous act. (Doc. 199, p. 6-7). Defendant also points out that Plaintiff has not produced an expert report and thereby cannot provide the requisite competent medical evidence. (*Id.* at 7). It is recommended that this claim be dismissed.

## A. IIED Under Pennsylvania Law

A cause of action for intentional infliction of emotional distress is a state law claim; consequently, Pennsylvania substantive law is controlling. 28 U.S.C. §

1652; *Erie R.R. Co. v. Tompkins* (1938); *United Mine Workers of Am. v. Gibbs*,

383 U.S. 715 (1966).  The Pennsylvania Supreme Court has yet to formally

recognize a cause of action for intentional infliction of emotional distress. *Taylor v.*

*Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000).  The Pennsylvania

appellate courts, however, have recognized the tort. *Field v. Philadelphia Elec.*

*Co.*, 565 A.2d 1170, 1183-84 (Pa. Super. 1989).  And the Third Circuit, predicting

that the Pennsylvania Supreme Court will ultimately recognize the tort, has

allowed recovery for intentional infliction of emotional distress.  *Williams v.*

*Guzzardi*, 875 F.2d 46 (3d Cir. 1989). Therefore, this Court is bound to conclude

that Pennsylvania permits recovery for intentional infliction of emotional distress.

    The Restatement (Second) of Torts sets forth the minimum elements

necessary to sustain a cause of action for intentional infliction of emotional

distress. *Taylor*, 754 A.2d at 652.  In order to recover, a plaintiff must plead and

prove that (1) by extreme and outrageous conduct (2) defendant intentionally or

recklessly (3) caused (4) severe emotional distress. *Id.* (citing Restatement

(Second) of Torts § 46 (1965)). Pennsylvania courts further require that the

existence of emotional distress be supported by competent medical evidence.

*Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d 988, 995 (Pa. 1987).

    It is not "enough that the defendant has acted with an intent which is tortious

or even criminal, or that he has intended to inflict emotional distress, or even that

his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Hunger v. Grand Cent. Sanitation*, 447 Pa. Super. 575, 584, 670 A.2d 173, 177 (1996) (quoting Restatement (Second) of Torts § 46 cmt. d).  The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*  It is for the court to determine in the first instance whether the conduct can reasonably be regarded as sufficiently extreme and outrageous to allow recovery. Restatement (Second) of Torts § 46 cmt. h.

The defendant must intentionally or recklessly cause the emotional distress. A defendant acts with intent if he or she knows that emotional distress is substantially certain to result from his or her conduct. *Hoffman v. Memorial Osteopathic Hospital*, 492 A.2d 1382, 1386 (Pa. Super. 1985). A defendant acts recklessly if he or she proceeds in deliberate disregard of a high degree of probability that emotional distress will follow. Restatement (Second) of Torts § 46 cmt. i.

The emotional distress must be sufficiently severe that no reasonable person could be expected to endure it. *See Chuy*, 595 F.2d at 1276 (citing Restatement (Second) of Torts § 46 cmt. j).  Additionally, the resulting distress must be reasonable, justified, and not exaggerated under the circumstances. *Id.* Competent

expert medical evidence confirming the existence, cause, and severity of the

distress is required in order for a plaintiff to recover. *See Williams*, 875 F.2d at 51-

52.

### B. Plaintiff Cannot Recover for Intentional Infliction of Emotional Distress

The intentional infliction of emotional distress claim can be dismissed on

two independent grounds. First, Defendant Yoncuski's conduct fails to rise to the

level of extreme and outrageous behavior that would permit recovery. Second,

irrespective of Defendant's conduct, Plaintiff has failed to provide competent

medical evidence proving her emotional distress.

### 1. Conduct Not Extreme and Outrageous

It is for this Court to determine, in the first instance, whether Defendant's

conduct can reasonably be regarded as so extreme and outrageous as to permit

recovery. It cannot be. As set forth in the complaint, the extreme and outrageous

conduct consists of the alleged tortious acts committed by Defendant Yoncuski.

(Doc. 1, ¶¶ 155-161). It is unnecessary to determine whether there are factual

issues for trial because those acts, even if true, do not constitute extreme and

outrageous behavior.

The complaint alleges that Defendant Thomas Yoncuski was involved in a conspiracy to steal Plaintiff's safe, cover up the theft, and conceal and convert the safe's contents. (Doc. 1, ¶¶ 85-86, 121).  It is irrelevant whether Defendant "acted with an intent which is tortious or even criminal, or that he . . .  intended to inflict emotional distress" because the forgoing conduct is not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46 cmt. d.  The allegations would support civil liability for conversion and criminal charges for receipt of stolen property. But receiving stolen property is not regarded as atrocious and utterly intolerable in a civilized community.

### 2. Medical Evidence

Pennsylvania courts require the existence of emotional distress to be supported by competent medical evidence. The only medical evidence offered by Plaintiff is an assortment of doctor notes, reports, and letters that plainly constitute expert evidence. (*See* Doc. 225-6, Ex. F).[10]  None of these materials have been sworn to by either the declarant-doctors or any other expert.  As discussed in a prior order in this case, (Docs. 333, 353), there is a line of Third Circuit precedent excluding unsworn expert materials as incompetent evidence on summary

---

[10] This exhibit was ordered sealed for confidentiality reasons. *See* Doc. 245.

judgment. *See, e.g.*, *Fowle v. C&C Cola*, 868 F.2d 59, 67 (3d Cir. 1989). Since

Plaintiff has not offered competent evidence of emotional distress that would allow

her to carry her burden at trial, Defendant is entitled to summary judgment on the

intentional infliction of emotional distress claim.

## II. NEGLIGENT INFLICTION OF EMTIONAL DISTRESS

Defendant argues that Plaintiff cannot establish a prima facie case of

negligence. (Doc. 199, p. 8). Furthermore, Defendant claims that Plaintiff's factual

allegations do not fit within any of the recognized theories of liability for negligent

infliction of emotional distress (*Id.*).  It is recommended that this claim be

dismissed.

### A. NIED Under Pennsylvania Law

Under Pennsylvania law, there are four theories of liability under which an

action for negligent infliction of emotional distress will lie: (1) impact liability

where emotional distress is accompanied by physical injury or impact; (2) zone of

danger liability where emotional distress is inflicted on a plaintiff who was in close

proximity of physical impact and thereby reasonably experienced a fear of physical

injury; (3) bystander liability for emotional distress experienced by a plaintiff who

personally witnessed an impact upon a close relative; and, (4) special relationship

liability premised on the breach of a preexisting contractual or fiduciary

relationship that foreseeably resulted in emotional harm so extreme that a reasonable person should not be expected to endure the resulting distress. *Doe v. Philadelphia Cmty. Health Alternatives AIDS Task Force*, 745 A.2d 25, 27 (Pa. Super. 2000). *See generally* 1 Summ. Pa. Jur. 2d Torts § 10:1 *et seq.*  In all cases, plaintiff must establish a prima facie case of negligence: duty, breach, causation, and damages. *Brown v. Philadelphia Coll. of Osteopathic Med.*, 760 A.2d 863, 868 (Pa. Super. 2000); *see also Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 45 (Pa. Super. 2000) ("[A]bsent a finding of negligence, the negligent infliction of emotional distress claim cannot survive.").

Under the impact liability theory, a plaintiff may recover emotional distress damages that are accompanied by and consequentially flow from a direct physical injury caused by a defendant's negligence. *Shumosky v. Lutheran Welfare Servs. of Ne. PA, Inc.*, 784 A.2d 196, 200-201 (Pa. Super. 2001).  The injury can be trivial or minor, but the mental suffering must be directly traceable to the peril in which defendant's negligence placed the plaintiff. *Id.* at 201.  The requisite physical impact, however, need not be directly with the defendant nor occur simultaneously with the negligent act. *Stoddard v. Davidson*, 513 A.2d 419, 422 (Pa. Super. 1986).

**B. Plaintiff Cannot Recover for Negligent Infliction of Emotional Distress**

Plaintiff has not alleged that she personally witnessed a negligently inflicted physical injury to a close relative. (Doc. 1). Nor has Plaintiff alleged a fear of physical injury resulting from being in close proximity to a physical impact. (*Id.*). Finally, Plaintiff has not alleged any contractual or fiduciary relationship with Defendant Thomas Yoncuski. (*Id.*). It follows that Plaintiff can only recover for negligent infliction of emotional distress under an impact liability theory.

Plaintiff alleges that she was involved in a physical altercation at the Shamokin Police Station on August 16, 2004. (Doc. 1, ¶¶ 94-111).  These are the only allegations involving a physical impact or injury found in the complaint. There is nothing in the complaint to suggest that Defendant Yoncuski was present or otherwise involved in this incident. (*Id.*).  Nor has Plaintiff produced any evidence of negligent conduct by Defendant Yoncuski that is causally related to the incident or injuries resulting therefrom. (*See* Docs. 222, 225 Exs. A-F). In fact, the complaint avers that Plaintiff's physical injuries "are a direct and proximate result of the efforts of the defendant [police officers] in detaining and/or assaulting the Plaintiff as set forth above."[11] (*Id.* ¶ 111).  Thus, even if some as yet unknown act of negligence by Defendant Yoncuski is casually related to the police station incident, the intentional conduct of third persons is a superseding cause of the

---

[11] Plaintiff also alleges she was physically attacked by Vanessa Long during the incident. Doc. 1, ¶ 97.

requisite physical impact. *See Sovereign Bank v. BJ's Wholesale Club, Inc.*, 395 F. Supp. 2d 183, 196 (M.D. Pa. 2005). Accordingly, the negligent infliction of emotional distress claim should be dismissed.

## III. NEGLIGENCE

Defendant argues that the negligence count should be dismissed because Plaintiff's evidence and allegations fail to establish that Defendant breached a duty owed to Plaintiff. (Doc. 199, p.8-9). For reasons set forth below, the negligence claim should not be dismissed.

### A. Elements of Negligence

To establish a prima facie case of negligence, a plaintiff must plead and prove that (1) defendant owed a duty of care to plaintiff (2) the breach of which (3) caused (4) damages. *See Martin v. Evans,* 551 Pa. 496, 711 A.2d 458, 461 (1998). In Pennsylvania, whether a defendant owes a duty of care to a plaintiff is a question of law for the court to decide. *Kleinknecht v. Gettysburg College,* 989 F.2d 1360, 1366 (3d Cir.1993).  A duty can arise from the common law, statutes, or contract. *Hawley v. Delaware & Hudson Ry. Co.*, 514 F. Supp. 2d 650, 655 (M.D. Pa. 2007) (citations omitted).

Duty is predicated on the relationship between the parties and arises only when one engages in conduct that foreseeably creates an unreasonable risk of

physical harm[12] to others. *R.W. v. Manzek*, 888 A.2d 740, 747 (Pa. 2005). Mere

knowledge of a harmful situation by one having the ability to intervene is

insufficient to create a duty. *Wenrick v. Schloemann-Siemag Aktiengesellschaft*,

564 A.2d 1244, 1248 (Pa. 1989) ("Before a person may be subject to liability for

failing to act in a given situation, it must be established that the person has a duty

to act.").  Absent a special relationship with either an injured party or a third

person, a defendant is under no duty to control the conduct of third persons to

prevent harm to others. *Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 40-

41 (Pa. Super. 2000) (citing Restatement (Second) of Torts §§ 314-320).

A defendant acts negligently and breaches an applicable duty by failing to

exercise the ordinary care that a reasonably prudent person would exercise under

like circumstances. *Merlini ex rel. Merlini v. Gallitzin Water Auth.*, 980 A.2d 502

(Pa. 2009). There must be a causal connection between defendant's breach of duty

and plaintiff's injury. *Hamil v. Bashline*, 392 A.2d 1280, 1284 (Pa. 1978). A

defendant's negligence is the proximate cause of plaintiff's injury if the negligent

conduct is a substantial factor in bringing about the harm inflicted upon the

plaintiff. *Jones v. Montefiore Hosp.*, 431 A.2d 920, 923 (Pa. 1981). By contrast,

---

[12] Physical harm includes harm to the physical condition of land and chattels. *See Philadelphia Elec. Co. v. James Julian, Inc.*, 228 A.2d 669, 670 n.1 (Pa. 1967) (citing Restatement (Second) of Torts § 497).

causation is lacking where the plaintiff's injury would have been sustained even in the absence of the defendant's negligence. *Hamil*, 392 A.2d at 1284.

## B. Triable Issues of Fact Regarding Negligence

It is undisputed that Defendant was not present during the warehouse, traffic stop, or police station incidents. (*See* Doc. 199, p. 8-9). Therefore an action for negligence will not lie based on those occurrences. On the other hand, Thomas Yoncuski's involvement in the possession and concealment of Plaintiff's jewelry is disputed. (*See* Doc. 197-5, pp. 13:1-14:13, 15:15-19). Summary judgment should be denied because there is evidence from which a jury could find that Defendant's negligence caused damage to Plaintiff's property. Before addressing that evidence, it is for this Court to determine whether Defendant owed Plaintiff a duty of care.

Although research revealed no case law directly on point, this Court concludes that one who comes into possession of property knowing that it was stolen owes a duty of care to the true owner not to engage in conduct that foreseeably creates an unreasonable risk of harm to that property. *See Manzek*, 888 A.2d at 747; *cf. Ferrick Excavating & Grading Co. v. Senger Trucking Co.*, 484 A.2d 744, 749 (Pa. 1984) (discussing duty of care owed by bailee to bailor). Recognizing such a duty is consistent with the five-factor inquiry applied by Pennsylvania courts. *See Althaus v. Cohen,* 756 A.2d 1166, 1169 (Pa. 2000). That

inquiry requires consideration of (1) the relationship between the parties, (2) the social utility of defendant's conduct, (3) the nature of the risk imposed and foreseeability of the harm incurred, (4) the consequences of imposing a duty upon the defendant, and (5) the overall public interest in the proposed solution.[13] First, the relationship between one who comes into possession of goods known to belong to a particular person and that person weighs in favor of recognizing a duty of care. This is all the more so where, as here, the third person is in an in-law residing in the same community as the defendant.

Second, concealing the fruits of a crime plainly has no social utility. Third, it is entirely foreseeable that concealing stolen property risks prolonging the period of dispossession and thereby harms the true owner. *Cf.* Restatement (Second) of Torts § 221 cmt. b (noting that negligent conduct resulting in loss of possession may support recovery in an action for negligence). In this case, the very means of concealment—burying the jewelry—risks damaging the property in a foreseeable manner. Fourth, to the extent that imposing a duty upon Defendant to exercise care in the safekeeping of stolen property would result in any adverse consequences, those consequences could be avoided by returning the property to the government or the true owner. Finally, the fact that the Pennsylvania legislature has

---

[13] No one of these five factors is dispositive; a duty will be found where the balance of these factors weighs in favor of placing such a burden on a defendant." *Berrier v. Simplicity Mfg., Inc.*, 563 F.3d 38, 62 (3d Cir. 2009).

criminalized the conduct at issue suggests recognizing a duty would advance the public interest. *See, e.g.*, 18 Pa. Cons. Stat. Ann. § 3925 (receiving stolen property); *id.* § 3924 (theft of property lost, mislaid, or delivered by mistake); *id.* § 3304 (criminal mischief).

Having concluded that Defendant owed Plaintiff a duty not to engage in conduct that subjected her property to an unreasonable risk of harm, factual issues as to breach, causation, and damages preclude summary judgment. There is evidence from which a jury could conclude that Defendant Yoncuski was in possession of bags and a plastic tub containing the jewelry from August of 2004 until February 9, 2005. (Doc. 197-5, pp. 13:1-14:13, 15:15-19; Doc. 197-4, pp. 20:6-22:21).  A jury could further infer that Defendant Yoncuski knew this jewelry came from the stolen safe and thus belonged to Plaintiff. (*See* Doc. 225-2, p. 20). Finally, there is evidence from which a jury could find that some of the jewelry was damaged or lost as a result of Defendant Yoncuski's burying and digging up the jewelry before it was returned to Plaintiff. (Doc. 197-2, pp. 128:1-15, 201:23-25; Doc. 196-4, pp. 41:20-42:8, 43:4-8,  87:16-88:3). Based on the forgoing, a reasonable jury could conclude that Defendant's conduct fell below the standard of care owed to Plaintiff and thereby proximately caused damage to her property.

## IV. NEGLIGENCE PER SE

Defendant argues there is no evidence that he violated a statute, regulation, or ordinance establishing a duty the breach of which proximately caused injury to Plaintiff. (Doc. 199, p. 9). For reasons set forth below, it is recommended that the negligence per se count be dismissed against Defendant Yoncuski.

### A. Presumption of Negligence Per Se

Negligence per se is not a distinct cause of action but rather an evidentiary presumption that a defendant's violation of a legislative or regulatory enactment constitutes proof of a breach of duty. *See Daniel Boone Area Sch. Dist. v. Lehman Bros.*, 187 F. Supp. 2d 400, 407 (W.D. Pa. 2002) ("The effect of such a rule is to stamp the defendants conduct as negligence, with all the effects of common law negligence, but with no greater effect."). In Pennsylvania, the violation of a statute or ordinance may serve as the basis for negligence per se. *Wagner v. Anzon, Inc.*, 684 A.2d 570, 574 (Pa. Super. 1996). To establish the evidentiary presumption, four requirements must be met: (1) the purpose of the statute must be, at least in part, to protect the interest of a group of individuals, as opposed to the public generally;[14] (2) the statute or regulation must clearly apply to the conduct of the

---

[14] Stated differently, the statute's purpose must be found to be exclusively or in part (a) to protect a class of persons which includes the one whose interest is invaded, and (b) to protect the particular interest which is invaded, and (c) to protect that interest against the kind of harm which has resulted, and (d) to protect that interest against the particular hazard from which the

defendant; (3) the defendant must violate the statute or regulation; and, (4) the

violation of the statute or regulation must be the proximate cause of the plaintiff's

injuries. *Cecile Indus., Inc. v. United States*, 793 F.2d 97, 99 (3d Cir. 1986).  The

concept of negligence per se establishes both duty and the required breach of duty.

It does not end the inquiry. The plaintiff still bears the burden of establishing

causation. *Cabiroy v. Scipione*, 767 A.2d 1078, 1079 (Pa. Super. 2001).

### B. Dismissal of Negligence Per Se Claim

It is not apparent from the complaint what enactment Defendant Thomas

Yoncuski allegedly violated. Plaintiff avers only that "Defendant[] . . . owed a duty

to the Plaintiff not to violate Federal law, State law, local ordinances, and the like .

. . and conduct of the Defendant[] . . . violated said laws, . . . fell well below the

standard of care . . . , and constituted a breach of a duty owed to the Plaintiff."

(Doc. 1, ¶ 175). In other circuits, claims premised upon similar vague allegations

that a defendant has violated unspecified statutes have been dismissed (without

prejudice) under Rule 12(b)(6) for failure to satisfy the notice pleading

requirements of Rule 8. *See, e.g.*, *ADT Sec. Servs., Inc. v. Swenson, ex rel. Estate

of Lee*, 687 F. Supp. 2d 884, 892-93 (D. Minn. 2009) (failing to plead violated

statute); *Bd. of Cnty. Comm'rs of Cnty. of La Plata, Colorado v. Brown Grp.*

---

harm results. *Congini by Congini v. Portersville Valve Co.*, 504 Pa. 157, 162, 470 A.2d 515, 517-18 (1983) (citing Restatement (Second) of Torts § 286).

*Retail, Inc.*, 598 F. Supp. 2d 1185, 1194-95 (D. Colo. 2009) (list of many thousands of statutes and regulations); *Holler v. Cinemark USA, Inc.*, 185 F. Supp. 2d 1242, 1243-45 (D. Kan. 2002) (unspecified "local, state, and federal statutes, guidelines and regulations"). By contrast, citation to a specific statute is not required provided the complaint alleges "particular conduct that clearly violates a statute or regulation. . . ." *Welch v. Loftus*, 776 F. Supp. 2d 222, 225-27 (S.D. Miss. 2011) (holding that defendants were not entitled to judgment as a matter of law on negligence per se claim merely because complaint omitted citation to specific statute where allegation that defendant fail[ed] to yield the right of way "could leave no reasonable reader at a loss to predict how [plaintiff] would proceed with his case"); *see also* Fiorentino *v. Cabot Oil & Gas Corp.*, 750 F. Supp. 2d 506, 515-16 (M.D. Pa. 2010) (denying motion to strike allegations of negligence per se where it was undisputed that "laundry list" of statutes in complaint were directed at defendant's conduct and relevant to plaintiff's negligence claim).

In this case, Count IX against Defendant Thomas Yoncuski should be dismissed because the complaint itself does not state a viable cause of action for negligence per se. The complaint fails to identify any specific statutes that Defendant Yoncuski violated. The complaint also fails to allege "particular conduct [by Yoncuski] that clearly violates a statute." 776 F. Supp. 2d at 226. Consequently, Defendant Yoncuski is entitled to summary judgment on the

negligence per se claim since Plaintiff has not stated a claim upon which relief can

be granted. *See Melo v. Hafer*, 912 F.2d 628, 633 (3d Cir. 1990) (permitting

district court to dismiss for failure to state a claim on a motion for summary

judgment).

## V. CIVIL CONSPIRACY

### A. Defendant's Contentions

Defendant argues that Plaintiff lacks "full, clear and satisfactory evidence

that [Defendant] conspired or agreed with anyone to further an unlawful purpose."

(Doc. 199, p. 10).  In support of this argument, Defendant points to evidence

indicating he was neither involved with nor aware of the removal of the safe on the

night the theft occurred. (*Id.*).  Defendant also asserts that there is no evidence that

he committed an overt act in furtherance of an unlawful purpose. (*Id.*).  As

discussed below, this part of the motion should be denied because there are factual

issues for trial.

### B. Elements and Proof of Civil Conspiracy

Under Pennsylvania law, to establish a prima facie case of civil conspiracy,

a plaintiff must plead and prove: (1) a combination of two or more persons acting

with a common purpose to do an unlawful act or to do a lawful act by unlawful

means or for an unlawful purpose; (2) an overt act in furtherance of the conspiracy;

and (3) actual legal damages. *Goldstein v. Phillip Morris, Inc.*, 854 A.2d 585, 590 (Pa. Super. 2004). Proof of malice, defined as an intent to injure, is required. *Reading Radio, Inc. v. Fink*, 833 A.2d 199, 212 (Pa. Super. 2003). The unlawful intent must be without justification. *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979).

Absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act. *Goldstein*, 854 A.2d at 590. Instead, conspiracy liability must be based on an existing independent wrong or intentional tort that would constitute a valid cause of action if committed by one actor. *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 407 (3d Cir. 2000); *In re Orthopedic Bone Screw Products Liab. Litig.*, 193 F.3d 781, 789 (3d Cir. 1999); *see also Goldstein*, 854 A.2d at 591 (rejecting civil conspiracy claims premised on negligence and strict liability). Civil conspiracy cannot be predicated upon criminal acts that do not otherwise give rise to a cognizable private right of action. *See, e.g.*, *Pelagatti v. Cohen*, 370 Pa. Super. 422, 432, 536 A.2d 1337, 1342 (1987) (no cause of action for civil conspiracy predicated on obstruction of justice); *Homer v. Ciamacco*, 2 Pa. D. & C.3d 755, 757 (Pa. Com. Pl. 1977) (no cause of action for civil conspiracy predicated on perjury).

Conspiracy may be proved by circumstantial evidence, including subsequent acts of the alleged conspirators, provided the evidence is "full, clear and

satisfactory." *Blank & Gottschall Co. v. First Nat. Bank of Sunbury*, 50 A.2d 218, 220 (Pa. 1947); *see also Fife v. Great Atl. & Pac. Tea Co.*, 52 A.2d 24, 27 (Pa. 1947) ("A conspiracy may be proved by acts and circumstances sufficient to warrant an inference that the unlawful combination had been in point of fact formed for the purpose charged."); *Reading Radio, Inc. v. Fink*, 833 A.2d 199, 212 (Pa. Super. 2003) ("All of the [elements of conspiracy] may be proven circumstantially by subsequent acts."). The mere fact that several parties happened to exercise independent rights around the same time, however, does not constitute actionable civil conspiracy. *Id.* "Mere suspicion or the possibility of guilty connection is not sufficient, nor proof of acts which are equally consistent with innocence." *Id.* Conscious parallelism does not suffice to establish civil conspiracy. *In re Asbestos Sch. Litig.*, 46 F.3d 1284, 1292 (3d Cir. 1994) (citing *Burnside v. Abbot Lab.*, 505 A.2d 973 (Pa. Super. 1985)).

## C. Factual Issues Regarding Defendant's Involvement in Conspiracy

Conspiracy liability requires an existing intentional tort that would constitute a valid cause of action if committed by one actor. *Goldstein*, 854 A.2d at 591. Intentional infliction of emotional distress cannot serve as the predicate tort in this case because that claim is recommended for dismissal. The negligence claims are not intentional torts and therefore cannot support an action for civil conspiracy.

Therefore, the cause of action for civil conspiracy against Defendant Yoncuski must be premised upon conversion or trespass to chattels.

Defendant points to evidence showing that he was not personally involved in the taking and burying of the safe or the emptying of its contents. (Doc. 198, p. 2; Doc. 199, p. 10). That same evidence also indicates Defendant was unaware of the theft on the night it occurred. (*Id.*). For purposes of deciding this motion, these facts will be considered undisputed. It does not follow, however, that Defendant's lack of involvement in the asportation of the safe absolves him of liability for conspiracy to convert its contents.  Based on Defendant's own supporting materials and evidence of record known to this Court, a reasonable jury could return a verdict in favor of Plaintiff on the civil conspiracy count.

The theft of the safe occurred on August 13, 2004 (Doc. 197-3, p. 56-58). Robert Yoncuski testified that on August 15, 2004, he placed the contents of the safe into three or four garbage bags and one tub measuring at least two cubic feet. (Doc. 197-3, p. 61).  That same afternoon, he placed those bags and the tub into the trunk of Keri Balascik's car. (*Id.*). In deposition testimony, Keri Balascik stated that on the day the bags were placed in her trunk, she looked at the items therein and "realized [she] wanted nothing to do with this and [took the items] to [Defendant Thomas Yoncuski]." (Doc. 197-5, p. 13:1-13). Balascik further testified that she left those items on Defendant's garage or front porch without ever

informing him. (*Id.* at 15:11-16:6, 26:1-27:1).[15]  In September of 2004, Defendant was at the residence of Jeffrey and Marianne Adams when the police arrived to ask questions about the theft of the safe. (Doc. 197-8, pp. 42:17-44:23). Defendant Yoncuski and the Adams each denied involvement in the incident. (Doc. 225-2, p. 20). On February 7, 2005, however, the Adams retracted their earlier denials and admitted participating in the theft. (Doc. 222-2, p. 34).

On February 8, 2005, Robert Yoncuski admitted his complicity in the theft of the safe. (Doc. 197-3, pp. 64:19-65:20; Doc. 187, JMA-6, Wiest Aff. 1). The very next morning, Defendant Thomas Yoncuski delivered to Vanessa Long black trash bags and a blue tub containing jewelry from the safe that had been buried on his property. (Doc. 197-4, pp. 20:6-22:21; Doc. 196-4, pp. 36:1-10, 41:11-42:8, 43:4-8, 49:1-7, 87:16-88:3). The same day, during a state court civil contempt hearing, Robert Yoncuski identified Defendant Thomas Yoncuski as one of the individuals who participated in the removal of the safe. (Doc. 225-2, pp. 92, 95). On or about that date, Defendant Yoncuski informed his neighbor: "*We* screwed up the jewelry real good. She will never get it back." (Doc. 196-4, pp. 35:9-12, 44:14-24) (emphasis added).

---

[15] When asked about why she was not worried that the bags of jewelry which she dropped off at Defendant's house without informing him might get thrown away, Balascik replied she "didn't care what happened to it" because "it was marital property." (*Id.* at 27:2-7).

From this evidence, a jury could infer that Defendant Yoncuski took possession of the jewelry in August of 2004 and kept it buried on his property until February 9, 2005 in furtherance of an agreement to unlawfully dispossess plaintiff of her property. Taking possession of the jewelry, burying the jewelry, denying involvement in response to police questioning, and "screw[ing] up the jewelry" would each constitute an overt act in furtherance of the alleged conspiracy. An unlawful agreement with Keri Balascik, Robert Yoncuski, and/or the Adams can be proved circumstantially based on Defendant's relation to his brother Robert Yoncuski,[16] Robert Yoncuski's admitted role in stealing the safe and delivering the jewelry to Keri Balascik, Balascik's subsequent delivery of the jewelry to Defendant Yoncuski, Defendant Yoncuski's burial of the jewelry on his property, Defendant's statement that at least one person other than himself was involved in "screw[ing] up the jewelry," Defendant's immediate delivery of the jewelry the day after the Adams and Robert Yoncuski confessed, and Robert Yoncuski's statements in state court implicating Defendant in the theft of the safe. A reasonable jury could find these acts and circumstances are not "equally consistent with innocence" but rather "warrant an inference that the unlawful combination had been in point of fact formed for the purpose charged." *Fife*, 52 A.2d at 27.

---

[16] Robert Yoncuski lives at 1035 Trevorton Road (Doc. 197-5, p. 12:8) which is a half mile from Defendant Thomas Yoncuski's house (Doc. 197-3, p. 8:10-11). In May of 2004, Robert Yoncuski began staying at his brother Defendant Yoncuski's house. (Doc. 197-3, p. 8:6-11).

Malice, defined as intent to injure, can be proved circumstantially based on the above, as well as directly from evidence that Defendant Yoncuski "screwed up the jewelry real good."  Finally, there is evidence from which a jury could find that Plaintiff incurred actual legal damages as a result of the loss, destruction, or dispossession of her property. (Doc. 197-2, pp. 128:1-15, 184, 192:18-24, 201:23-25, 228:24-229:1; Doc. 196-4, pp. 41:20-42:8, 43:4-8,  87:16-88:3). Summary judgment should therefore be denied because there are triable issues of fact regarding Defendant Yoncuski's involvement in the alleged conspiracy.

## VI. CONVERSION AND TRESPASS TO CHATTELS

Defendant argues that Plaintiff cannot establish a prima facie case for either conversion or trespass to chattels. (Doc. 199, p. 1). Plaintiff contends there is a prima facie case for both torts based on Defendant's receipt and possession of the stolen jewelry. (Doc. 297, p. 4). As discussed below, this part of the motion should be denied because there are factual issues for trial.

### A. Elements of Conversion and Trespass to Chattels

Under Pennsylvania law, conversion is the deprivation of or interference with another's right of property in, use of, or possession of a chattel without the owner's consent and without lawful justification.  *PTSI, Inc. v. Haley*, 71 A.3d 304, 314 (Pa. Super. 2013) (citations omitted); *see also* Restatement (Second) of

Torts § 222A (1965) (defining conversion as "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel"). The deliberate taking of another's personal property without consent is the clearest case of conversion. *Cenna v. United States*, 402 F.2d 168, 170 (3d Cir. 1968).  Other acts constituting conversion include: unreasonably withholding possession from one who has the right to it; transferring goods in a manner that deprives the owner of their control; seriously damaging or misusing the chattel in defiance of the owner's rights; and intentionally barring the possessor's access to a chattel. *Norriton E. Realty Corp. v. Cent.-Penn Nat. Bank*, 254 A.2d 637, 638 (Pa. 1969); *Druckenmiller v. Kuzenski*, 124 A.2d 141, 143 (Pa. Super. 1956). Receiving and possessing stolen goods also constitutes conversion. *Bressan Exp.-Imp. Co. v. Conlew*, 346 F. Supp. 683, 685 (E.D. Pa. 1972).

In all cases, the defendant must intentionally exercise dominion or control over the chattel. *Snead v. Soc'y for Prevention of Cruelty to Animals of Pennsylvania*, 929 A.2d 1169, 1183 (Pa. Super. 2007). Specific intent to commit a wrong, however, is not required. *Id.* Instead, the defendant must merely intend to exercise a dominion or control over the chattels which is in fact inconsistent with the plaintiff's rights. *Norriton E. Realty Corp. v. Cent.-Penn Nat. Bank*, 254 A.2d 637, 638 (Pa. 1969). For instance, a good faith purchaser for value who acquires

converted goods is liable to the true owner for conversion. *See First Camden Nat. Bank & Trust Co. v. J. R. Watkins Co.*, 122 F.2d 826, 826 (3d Cir. 1941); *L.B. Foster Co. v. Charles Caracciolo Steel & Metal Yard, Inc.*, 777 A.2d 1090, 1093 (Pa. Super. 2001). The elements of conversion, including intent, can be established by circumstantial evidence. *See Royal Ins. Co. (U.K.) v. Ideal Mut. Ins. Co.*, 649 F. Supp. 130, 137-38 (E.D. Pa. 1986).

The tort of trespass to chattels is defined as intentionally dispossessing another of a chattel or using or intermeddling with a chattel in the possession of another. *Pestco, Inc. v. Associated Products, Inc.*, 880 A.2d 700, 708 (Pa. Super. 2005) (citing Restatement (Second) of Torts § 217). In contrast to conversion, the interference with possession of the chattel is not sufficiently important to be classified as conversion, thereby allowing for damages less than the full market value of the chattel in question. *See generally* 2 Summ. Pa. Jur. 2d Torts § 14:3 (2d ed.) (citing Pennsylvania cases).

### B. Factual Issues Regarding Conversion and Trespass to Chattels

Defendant argues the claims for conversion and trespass to chattels should be dismissed because there is no evidence that he committed an intentional act of interference with Plaintiff's jewelry. (Doc. 199, p. 11). Defendant points to evidence suggesting that he was not involved with the removal of the safe, the

contents of which "were placed on his property without his knowledge." (*Id.*). Finally, Defendant claims that he aided the return of the safe contents to authorities the same day they were placed on his property. (*Id.*). Despite these claims, summary judgment should be denied based on two independent grounds.

First, the preceding section recommended denying summary judgment on the civil conspiracy claim because there are genuine disputes of material fact regarding Defendant's involvement in a conspiracy to convert the safe's contents. Since liability for civil conspiracy requires performance of the predicate tort, the previous section's reasoning implies that there are triable issues of fact precluding dismissal of the conversion claim. *See Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 407 (3d Cir. 2000) (noting that civil conspiracy is a means for establishing vicarious liability for the underlying tort). Second, irrespective of any involvement in a *conspiracy* to convert the safe's contents, summary judgment should be denied because Defendant has not met his burden as the moving party. Defendant's own supporting materials demonstrate the existence of triable issues of fact from which a jury could find Defendant primarily liable for conversion.

Defendant's claim that he returned the safe's contents to authorities the same day the contents were placed on his property is blatantly contradicted by the

record.[17] In deposition testimony, Keri Balascik unequivocally testified that she

delivered the jewelry to Defendant Thomas Yoncuski's residence on or shortly

after the day those items were placed in her trunk by Robert Yoncuski. (Doc. 197-

5, p. 13:1-13). Robert Yoncuski placed those items in her trunk on August 15,

2004. (Doc. 197-3, pp. 61, 71:14-23). Defendant Thomas Yoncuski returned those

items on or about February 9, 2005. (Doc. 199, pp. 3-4; Doc. 197-4, p. 20:6-13).

Accordingly, there is evidence from which a jury could conclude that Defendant

Thomas Yoncuski received and possessed jewelry stolen from the safe on or about

August 15, 2004 until February of 2005.[18] These facts alone would constitute

conversion under Pennsylvania law. *Cf. Bressan*, 346 F. Supp. at 685 (holding

defendant's conviction for receipt of stolen property had preclusive effect that

conclusively established liability for conversion in subsequent civil action).

---

[17] Defendant relies on deposition testimony of Vanessa Long and Robert Yoncuski. *See* Doc. 199, pp. 3, 11. Vanessa Long testified that between 7 and 8 pm on February 8, 2005, she saw "Kevin and Keri Balascik go upstairs to meet with attorney Wiest." (Doc. 197-4, pp. 18:19-19:3). Ms. Long further asserted she first learned of Robert Yoncuski's involvement in the theft of the safe later that night at the jail when attorney Wiest informed Mr. Yoncuski that the Balascik's informed Wiest they were in possession of the jewelry. (Doc. 197-4, pp. 19:12-20:5). Keri Balascik, however, testified neither she nor her husband ever discussed the jewelry with attorney Wiest. (Doc. 197-5, p. 34:2-24). Defendant also points to Robert Yoncuski's hearsay testimony that attorney Wiest told him the Balascik's "were in possession of the jewelry." (Doc. 197-3, p. 76:4-10). But Robert Yoncuski also testified that he never inquired about what Ms. Balascik subsequently did with items placed in her trunk on August 15 and "ha[d] no idea" when she gave the items to Defendant Thomas Yoncuski. (*Id.* at 71:18-23, 78:16-23).

[18] Aside from Keri Balascik, there is at least one other person with personal knowledge of when Defendant Thomas Yoncuski received the jewelry: Thomas Yoncuski. Significantly, Defendant did not submit an affidavit or any other sworn statements in support of this motion. But even if Defendant had averred under oath that he received the jewelry on February 9, 2005, Balascik's contradictory testimony that she delivered the jewelry on or about August 15 must be taken as true on a motion for summary judgment.

There is also evidence from which a jury could find that Defendant Yoncuski intentionally exercised dominion or control over the jewelry during that time period.  Before delivering the bags of jewelry to Vanessa Long, Defendant Yoncuski used his neighbor's back-hoe to dig up those bags from beneath the surface of his property. (Doc. 197-4, pp. 20:6-22:21; Doc. 196-4, pp. 36:1-10, 41:11-42:8, 43:4-8, 49:1-7, 87:16-88:3). A reasonable jury could logically infer that Defendant Yoncuski initially buried those bags of jewelry on his property, or knew they were there, and in so doing intentionally deprived or interfered with Plaintiff's right of property in, use of, or possession of her jewelry. Additionally, Defendant Yoncuski's statement that he "screwed up the jewelry real good," if credited by the jury,[19] is not only evidence of an intentional exercise of dominion, but an act of conversion in its own right. *See Norriton E. Realty Corp.*, 254 A.2d at 638. Accordingly, summary judgment should be denied as to the conversion and trespass to chattels claims.

## VI. VALUE OF THE SAFE CONTENTS

Defendant argues that Plaintiff cannot prove damages with reasonable certainty and therefore the claim for the value of the safe's contents should be dismissed. (Doc. 199, pp. 11-13). Presumably, Defendant seeks partial summary

---

[19] Carol Ann Whary overheard Defendant make this statement. Therefore it can be admitted substantively against Defendant Yoncuski as a statement by a party opponent. *See* Fed. R. Evid. 801(d)(2)(A).

judgment as to the value of the damages arising from the loss or destruction of the safe's contents. It is recommended that summary judgment be denied because estimating the amount of damages is a traditional function of the jury and here there is evidence that would enable Plaintiff to establish the fact of damages with reasonable certainty.

## A. Legal Framework

Under Pennsylvania law, the evidence must afford a reasonable basis to support an award of damages; a verdict cannot be based upon mere speculation or guesswork. *Helpin v. Trustees of Univ. of Pennsylvania*, 10 A.3d 267, 270 (Pa. 2010). Damages are deemed speculative, however, only if there is uncertainty concerning the existence of damages as opposed to the value or amount of damages. *Kituskie v. Corbman*, 714 A.2d 1027, 1030 (Pa. 1998). If it is clear that the damages were the certain result of defendant's conduct, mere uncertainty as to the precise amount is no bar to recovery. *Delahanty*, 464 A.2d at 1257. Thus, a defendant whose wrongful conduct has rendered difficult the ascertainment of damages bears the risk of uncertainty. *Com. Trust Co. of Pittsburgh v. Hachmeister Lind Co.*, 181 A. 787, 790 (Pa. 1935).

Plaintiff bears the burden of proof and must present sufficient evidence by which damages can be determined on some rational basis. *ASTech Int'l, LLC v.*

*Husick*, 676 F. Supp. 2d 389, 405 (E.D. Pa. 2009); *Omicron Sys., Inc. v. Weiner*, 860 A.2d 554, 564-65 (Pa. Super. 2004). While proof of damages does not require mathematical precision, the evidence must establish the fact with a "fair degree of probability." *Brisbin v. Superior Valve Co.*, 398 F.3d 279, 289 (3d Cir. 2005) (citing *Exton Drive-In, Inc. v. Home Indemnity Co.*, 261 A.2d at 324 (Pa. 1969)). Determination of damages is a question of fact for the jury. *Omicron Sys., Inc. v. Weiner*, 860 A.2d 554, 564-65 (Pa. Super. 2004). It is the jury's role to assess testimony, weight the evidence, make credibility determinations, and accept or reject the estimates of damages given by witnesses. *Penn Elec. Supply Co., Inc. v. Billows Elec. Supply Co., Inc.,* 364 Pa.Super. 544, 528 A.2d 643, 644 (1987).  The jury may make a "reasonable estimate of the damage based on relevant data, and in such circumstances may act on probable and inferential, as well as upon direct and positive proof." *Delahanty*, 464 A.2d at 1257.

In an action for conversion, a defendant is liable in damages for all actual losses and injuries sustained as a natural and proximate result of his or her wrong. *Fort Washington Res., Inc. v. Tannen*, 901 F. Supp. 932, 944 (E.D. Pa. 1995) (citations omitted). In the typical case, this amounts to the value of the converted property at the time of conversion. *Id.* More generally, however, the objective is to compensate the plaintiff for defendant's wrong by fitting the remedy to the particular circumstances of the case. *Id.* This is so because it is often the case that

the market value of the converted property is unascertainable. *See Lynch v. Bridges & Co.,* 451 Pa.Super. 92, 678 A.2d 414 (1996). Hence, the finder of fact has broad discretion to determine damages in an action for conversion. <u>*Lynch v. Bridges & Co. Inc.*</u>, 678 A.2d 414, 416 (Pa. Super. 1996) (noting that it is the traditional function of the fact finder in conversion actions to estimate damages).

### B. Jury Question as to Damages

Defendant argues that Plaintiff cannot establish the value of the safe contents with reasonable certainty. In support of this contention, Defendant cites evidence indicating that Plaintiff Deitrick is herself uncertain about both the contents of the safe and their value. (Doc. 199, pp. 12-15).  Specifically, Defendant relies upon Plaintiff's difficulty, during deposition testimony, distinguishing between and assessing the accuracy of several lists itemizing the value of missing and damaged jewelry allegedly stolen from the safe. (*Id.* at 12).  If properly authenticated and credited by a jury, however, those lists provide a reasonably certain basis for awarding damages. (*See* Doc. 197-2, Ex. DD-13). It follows that testimony based upon those lists could provide a reasonably certain basis for awarding damages.[20] The accuracy of, discrepancies between, and Plaintiff's confusion as to those lists present questions of fact and credibility that are within the province of the jury and

---

[20] *See* Fed. R. Evid. 612 (writing used to refresh witness's memory); Rule 803(5) (recorded recollection read into evidence).

are not susceptible of resolution on summary judgment. (*See* Doc. 197-2, pp. 145-96)

Defendant next points to the lack of documentary evidence offered by Plaintiff to prove the existence and value of the items in the safe. (Doc. 199, p. 12). Specifically, Defendant claims—and Plaintiff does not dispute—that there are no receipts, photographs, or written appraisals that prove the existence or value of the items allegedly stolen from the safe. (*Id.*; Doc. 223-1, ¶ 5). This lack of documentary evidence does not warrant partial summary judgment because Plaintiff has provided testimonial evidence raising triable issues of fact as to the existence and value of the missing items. (*Doc.* 197-2, pp. 145-96).  As the owner of the allegedly stolen property, Plaintiff is certainly competent to give lay opinion testimony as to its value. *E.g.*, *Asplundh Mfg. Div., a Div. of Asplundh Tree Expert Co. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1197-98 (3d Cir. 1995); *United States v. Laughlin*, 804 F.2d 1336, 1339-41 (5th Cir. 1986); *accord* Fed. R. Evid. 701, Advisory Committee Notes (2000 Amendments). Should the jury find Defendant liable for conversion of Plaintiff's jewelry, then as the "wrongdoer [Defendant] is not entitled to complain that [damages] cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise." *Hachmeister*, 181 A. at 190. For similar reasons, Defendant's argument that Plaintiff has failed to provide a reasonable basis for the

calculation of damages is unavailing. If the jury finds that the loss of or injury to Plaintiff's property was the "certain result of [D]efendant's conduct, [then] mere uncertainty as to the precise amount [of damages] is no bar to recovery. *Delahanty*, 464 A.2d at 1257.

Finally, Defendant contends that Plaintiff herself has admitted the instant lawsuit does not have any merit or value. As evidence for this proposition, Defendant points to Plaintiff's failure to timely respond to a Request for Admission asking her to admit (i) that she valued the lawsuit at $1.00 on a bankruptcy petition, and (ii) is fully aware this case has no merit or value. (Doc. 199, p. 13). This Court assumes, without deciding, that the admission is deemed admitted under Rule 36. Nevertheless, this Court fails to see how Plaintiff's subjective valuation of a lawsuit—a suit naming seventeen defendants and alleging fourteen causes of action—on a bankruptcy petition prevents Plaintiff from proving damages with reasonably certainty. It may be fodder for cross-examination, or the $1.00 statement may have a reasonable explanation. Either way, it is a question of disputed fact that is best left to the trier-of-fact rather than this Court on summary judgment.

## RECOMMENDATION

For the forgoing reasons, it is recommended that Defendant Thomas Yoncuski's motion for summary judgment be granted in part and denied in part.

With respect to Count VI (intentional infliction of emotional distress) against Defendant Yoncuski, it is recommended that summary judgment be **GRANTED.**

With respect to Count VII (negligent infliction of emotional distress) against Defendant Yoncuski, it is recommended that summary judgment be **GRANTED.**

With respect to Count VIII (negligence) against Defendant Yoncuski, it is recommended that summary judgment be **DENIED.**

With respect to Count IX (negligence per se) against Defendant Yoncuski, it is recommended that summary judgment be **GRANTED.**

With respect to Count XII (civil conspiracy) against Defendant Yoncuski, it is recommended that summary judgment be **DENIED.**

With respect to Count XIII (conversion) and XIV (trespass to chattels) against Defendant Yoncuski, it is recommended that summary judgment be **DENIED.**

With respect to partial summary judgment as to the value of the safe's contents, it is recommended that summary judgment be **DENIED.**

## <u>NOTICE OF REPORT & RECOMMENDATION</u>

NOTICE IS HEREBY GIVEN that the Magistrate Judge has entered the

foregoing Report and Recommendation.

Any party may obtain a review of the Report and Recommendation pursuant

to Local Rule 72.3, which provides:

> **Any party may object** to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition **within fourteen (14) days after being served** with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. **The briefing requirements set forth in Local Rule 72.2 shall apply**. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses, or recommit the matter to the magistrate judge with instructions. M.D.Pa. LR 72.3 (2010). (emphasis added).

Signed on <u>10/16/2014</u>.          *s/ William I. Arbuckle III*
                                      WILLIAM I. ARBUCKLE III
                                      UNITED STATES MAGISTRATE JUDGE