**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DONNA DEITRICK, | : | Civil No. 4:06-CV-01556 |
| | : | |
| Plaintiff, | : | (Judge Brann) |
| | : | (Magistrate Judge Arbuckle) |
| v. | : | |
| | : | |
| MARK COSTA, *et al.*, | : | |
| | : | |
| Defendants, | : | |

## REPORT AND RECOMMENDATION

(Defendant Balascik's Motion for Summary Judgment – Doc. 254)

# TABLE OF CONTENTS

**INTRODUCTION**..................................................................................................... 3

**PROCEDURAL HISTORY** ..................................................................................... 3

**STATEMENT OF MATERIAL FACTS**.................................................................. 4

**SUMMARY JUDGMENT STANDARD** ................................................................ 8

**DISCUSSION** ......................................................................................................... 11

   **I. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS** ...................... 11

      A. IIED Under Pennsylvania Law .................................................................. 11

      B. Plaintiff Cannot Recover for Intentional Infliction of Emotional Distress ...................... 12

   **II. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS** ....................... 15

      A. NIED Under Pennsylvania Law .................................................................. 15

      B. Plaintiff Cannot Recover for Negligent Infliction of Emotional Distress ...................... 16

   **III. NEGLIGENCE** ............................................................................................. 17

      A. Elements of Negligence.................................................................................. 17

      B. Plaintiff Cannot Recover for Negligence ....................................................... 19

   **IV. NEGLIGENCE PER SE** ................................................................................ 20

      A. Presumption of Negligence Per Se .................................................................. 20

      B. Dismissal of Negligence Per Se Claim ........................................................... 21

   **V. CIVIL CONSPIRACY** ..................................................................................... 22

      A. Elements and Proof of Civil Conspiracy ......................................................... 22

      B. Insufficient Evidence of Conspiracy................................................................. 24

   **VI. CONVERSION AND TRESPASS TO CHATTELS**..................................... 28

      A. Legal Framework............................................................................................ 28

      B. Insufficient Evidence of Conversion .............................................................. 29

**RECOMMENDATION**.......................................................................................... 32

**NOTICE OF REPORT & RECOMMENDATION**................................................. 33

# INTRODUCTION

Pending before the Court is Defendant Kevin Balascik's motion for summary judgment seeking dismissal of all counts against him. (Doc. 254, p. 1). Specifically, the Complaint alleges causes of action against Defendant Balascik for intentional infliction of emotional distress, negligent infliction of emotional distress, negligence and negligence per se, civil conspiracy, conversion, and trespass to chattels. Because there is no evidence linking Defendant Balascik to any of the alleged tortious acts, or a conspiracy in furtherance thereof, it is recommended that the motion be granted.

# PROCEDURAL HISTORY

Plaintiff Donna Deitrick commenced the above-captioned case on August 11, 2006 by filing a complaint alleging various federal and state causes of action against numerous defendants. (Doc. 1).  Defendant Kevin Balascik is named in Counts VI-IX and XII-XIV. Specifically, Plaintiff alleges state-law claims against Defendant Balascik for intentional infliction of emotional distress (Count VI), negligent infliction of emotional distress (Count VII), negligence (Count VIII), negligence per se (Count IX), civil conspiracy (Count XII), conversion (Count XIII), and trespass to chattels (Count XIV).

Defendant filed an answer on October 30, 2006. (Doc. 15). Defendant subsequently moved for summary judgment by filing the instant motion on January 4, 2013. (Doc. 254). In support of this motion, Defendant submitted a brief. (Doc. 255). Plaintiff submitted an opposition brief on May 3, 2013.[1] (Doc. 296). Neither party filed a statement of material facts as required by Local Rule 56.1. Litigation on other aspects of this case proceeded and the motion for summary judgment is ripe for decision.

## STATEMENT OF MATERIAL FACTS

The following is a statement of material facts drawn from the parties' supporting materials and the evidence of record known to this Court. Since neither party submitted their own evidentiary materials or otherwise provided proper citations, all references are to record evidence submitted by other parties to this litigation. The facts are set forth in the light most favorable to Plaintiff, the non-moving party.

On August 13, 2004, Plaintiff Donna Deitrick went to a warehouse owned by her then husband Robert Yoncuski in order to retrieve personal property. (Doc. 197-2, pp. 56-83). At the time, Deitrick and Yoncuski were separated and in the midst of divorce proceedings. (*Id.*). At the warehouse, a confrontation ensued

---

[1] Plaintiff did not timely file an opposition but was subsequently granted several extensions of time (Docs. 280, 294).

between Deitrick, Yoncuski, and several other parties including the police. (*Id.*).
The incident culminated in a traffic stop resulting in the detention of Plaintiff's
vehicle. (*Id.*). Defendant Kevin Balascik was neither present nor involved in these
events. (*Id.*).

Later that evening, Robert Yoncuski, aided by Jeffrey Adams, Marianne
Adams, Troy Latsha, and Kyle Schreffler, broke and entered Plaintiff's residence
and removed a safe containing money and jewelry. (Doc. 198, ¶¶ 6-11; Doc. 199,
p. 3). Defendant Balascik was not present during the theft. (Doc. 197-5, pp. 25:15-
19; 32:12-13, 35:7-9).

Two days later, on August 15, Yoncuski cut open the safe and emptied its
contents into several bags and a blue container. (Doc. 197-3, pp. 61, 71). Yoncuski
called his niece Keri Balascik—who was married to and living with Defendant
Kevin Balascik—at the Balascik's residence[2] and asked her to come to his house
and take custody of the bags and container containing the contents of the safe.
(Doc. 197-3, pp. 61, 71:14-23; Doc. 197-5, pp. 6, 9). Robert Yoncuski then placed
three or four black garbage bags and a container measuring at least two cubic feet
into the trunk of Ms. Balascik's Pontiac Sunfire. (Doc. 197-3, pp. 61, 71: 14-23;

---

[2] Although Ms. Balascik testified she received the call while at work, (Doc. 197-5, pp. 10:2,
11:13-17), Robert Yoncuski testified that he phoned the Balascik's house, (Doc. 197-3, p. 61:14-
20). The latter scenario is more favorable to Plaintiff and therefore taken as true for purposes of
this motion.

Doc. 197-5, pp. 10:2-11:8). Mr. Yoncuski did not inform Ms. Balascik of the bags'

contents and instructed her not to look inside.[3] (Doc. 197-3, p. 61). Defendant

Kevin Balascik was not present at this exchange. (Doc. 197-5, p. 10:17-21). Nor

did Keri Balascik inform Defendant Balascik of the exchange. (*Id.* at 14:22-15:1,

17:19-21). Keri Balascik never discussed the exchange with a lawyer. (*Id.* at 16:17-

19, 19:21-23).

That same day, after leaving Robert Yoncuski's residence, Ms. Balascik

looked inside the bags in her trunk, recognized the items as jewelry, and decided

she wanted nothing to do with the matter. (Doc. 197-5, pp. 13:1-14:13). "Within a

short period of time . . . [n]ot long after [Robert Yoncuski] put [the bags] in [her]

car," Ms. Balascik took the items to her uncle Thomas Yoncuski's house. (*Id.*).

She left the items by Thomas Yoncuski's garage or front porch. (*Id.* at 15:15-19).

Keri Balascik did not inform Defendant Balascik of these events. (*Id.* at. 17:7-9,

26:15-20). Nor did Keri Balascik, either alone or with her husband Defendant

Balascik, ever meet and discuss these events with attorney Joel Wiest. (*Id.* at 34:2-

24).

---

[3] Mr. Yoncuski testified that he had no knowledge of and never inquired about what Ms. Balascik subsequently did with items placed in her trunk. (Doc. 197-3, pp. 71:18-23, 78:16-23, 80:16-19).

On August 16, 2004, Plaintiff was involved in a physical altercation at the Shamokin police station. (Doc. 1, ¶¶ 94-111). Defendant Kevin Balascik was not present at the police station or otherwise involved in the incident. (*Id.*).

On September 16, 2004, the Pennsylvania State Police interviewed Jeffrey and Marianne Adams—the parents of Defendant Balascik's wife, Keri Balascik— regarding the theft of the safe. (Doc. 225-2, pp. 20-21; Doc. 197-5, pp. 6). Both denied being involved in or having knowledge of the incident. (*Id.*). On or about January 28, 2005, the Pennsylvania State Police (PSP) again contacted the Adams regarding the safe. (Doc. 222-2, p. 34). At some point thereafter, Joel Wiest, who had previously represented Keri Balascik in divorce proceedings, called the PSP and informed them he represented the Adams. (*Id.*; Doc. 197-5, p. 17:22-18:18). The PSP informed Wiest that the Adams would be offered immunity in exchange for their cooperation regarding the theft of the safe. (Doc. 222-2, p. 34). Wiest acknowledged that he was potentially conflicted due to his concurrent representation of Robert Yoncuski. (*Id.*).  On February 7, 2005, Attorney Dave Noon contacted the PSP to inform them the Adams wanted to cooperate in exchange for immunity. (*Id.*).

On February 8, 2005, Attorney Wiest visited his client Robert Yoncuski in jail and informed him that Jeffrey and Marianne Adams were offered immunity

and had implicated Yoncuski in the theft of the safe.[4] (Doc. 197-3, pp. 64:19-
65:20; Doc. 187, Ex. JMA-6, Wiest Aff.). Yoncuski admitted his complicity in the
incident. (*Id.*).  At approximately 8:00 am the next morning, Defendant Thomas
Yoncuski delivered black trash bags and a blue tub containing the contents of the
safe to Vanessa Long. (Doc. 197-4, pp. 20:6-22:21). One or two hours later, Long
delivered those items to Michael Rudinski, an attorney who also represented
Robert Yoncuski. (*Id.*).  The jewelry was eventually returned to Plaintiff but much
of it was missing or damaged. (Doc. 197-2, pp. 184, 192:18-24,  228:24-229:1).

## SUMMARY JUDGMENT STANDARD

We will examine the motion for summary judgment under the well
established standard.  Rule 56(a) of the Federal Rules of Civil Procedure provides
as follows:

> A party may move for summary judgment, identifying each claim or defense
> - or the part of each claim or defense - on which summary judgment is
> sought. The court shall grant summary judgment if the movant shows that
> there is no genuine dispute as to any material fact and the movant is entitled
> to judgment as a matter of law. The court should state on the record the
> reasons for granting or denying the motion.  Fed. R. Civ. P. 56(a).

For purposes of Rule 56, a fact is material if proof of its existence or
nonexistence might affect the outcome of the suit under the applicable substantive

---

[4] Construing the wording in the light most favorable to Plaintiff, Yoncuski testified that Wiest
also informed him that Keri and Kevin Balascik came to his office and told Wiest that "they had
the jewelry." (Doc. 197-3, p. 65:2-4). As discussed below, this evidence is not capable of
admission on summary judgment. *See infra* Part V.B.

law. *Haybarger v. Laurence Cnty. Adult Prob. & Parole*, 667 F.3d 408, 412 (3d Cir. 2012) (*quoting Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). For an issue to be genuine, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* (*quoting Anderson*, 477 U.S. at 248-49).

Accordingly, in support of a motion for summary judgment, the moving party must show that if the evidence of record were reduced to admissible evidence in court, it would be insufficient to allow the non-moving party to carry its burden of proof. *See Celotex v. Catrett*, 477 U.S. 317, 323 ( 1986). Provided the moving party has satisfied this burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Instead, if the moving party has carried its burden, the non-moving party must then respond by identifying specific facts, supported by evidence, which show a genuine issue for trial, and may not rely upon the allegations or denials of its pleadings. *See Martin v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007); see also Fed. R. Civ. P. 56(c).

In adjudicating the motion, the court must view the evidence presented in the light most favorable to the opposing party, *Anderson*, 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party, *Big*

*Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). Where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true. *Id.* Additionally, the court is not to decide whether the evidence unquestionably favors one side or the other, or to make credibility determinations, but instead must decide whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. *Id. at 252; see also Big Apple BMW*, 974 F.2d at 1363. In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. It thus remains the province of the factfinder to ascertain the believability and weight of the evidence. *Id.* In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted); *NAACP v. North Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 476 (3d Cir. 2011).

Often described as a legal test that is easy to state but hard to apply, we now turn to the facts of this case to determine if there is a genuine dispute of material fact requiring a trial.

## DISCUSSION

## I. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### A. IIED Under Pennsylvania Law

A cause of action for intentional infliction of emotional distress is a state law claim; consequently, Pennsylvania substantive law is controlling. 28 U.S.C. § 1652; *Erie R.R. Co. v. Tompkins* (1938); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966).  The Pennsylvania Supreme Court has yet to formally recognize a cause of action for intentional infliction of emotional distress. *Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000).  The Pennsylvania appellate courts, however, have recognized the tort. *Field v. Philadelphia Elec. Co.*, 565 A.2d 1170, 1183-84 (Pa. Super. 1989).  And the Third Circuit, predicting that the Pennsylvania Supreme Court will ultimately recognize the tort, has allowed recovery for intentional infliction of emotional distress.  *Williams v. Guzzardi*, 875 F.2d 46 (3d Cir. 1989).

In Pennsylvania, The Restatement (Second) of Torts sets forth the minimum elements necessary to sustain a cause of action for intentional infliction of emotional distress. *Taylor*, 754 A.2d at 652.  In order to recover, a plaintiff must plead and prove that by (1) extreme and outrageous conduct (2) defendant intentionally or recklessly (3) caused (4) severe emotional distress. *Id.* (citing

Restatement (Second) of Torts § 46 (1965)). Pennsylvania courts further require that the existence of emotional distress be supported by competent medical evidence. *Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d 988, 995 (Pa. 1987).

"It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Hunger v. Grand Cent. Sanitation*, 447 Pa. Super. 575, 584, 670 A.2d 173, 177 (1996) (quoting Restatement (Second) of Torts § 46 cmt. d).  The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* It is for the court to determine in the first instance whether the conduct can reasonably be regarded as sufficiently extreme and outrageous to allow recovery. Restatement (Second) of Torts § 46 cmt. h.

### B. Plaintiff Cannot Recover for Intentional Infliction of Emotional Distress

The intentional infliction of emotional distress claim can be dismissed on two independent grounds. First, Defendant Balascik's alleged conduct fails to rise to the level of extreme and outrageous behavior that would permit recovery.

Second, irrespective of Defendant's conduct, Plaintiff has failed to provide competent medical evidence.

### 1. Conduct Not Extreme and Outrageous

It is for this Court to determine, in the first instance, whether Defendant's conduct can reasonably be regarded as so extreme and outrageous as to permit recovery. It cannot be. As set forth in the complaint, the extreme and outrageous conduct consists of the alleged tortious acts committed by Defendant Balascik. (Doc. 1, ¶¶ 155-161). It is unnecessary to determine whether there are factual issues for trial because those acts, even if true, do not constitute extreme and outrageous behavior.

The complaint alleges that Defendant Kevin Balascik was involved in a conspiracy to steal Plaintiff's safe, cover up the theft, and conceal and convert the safe's contents. (Doc. 1, ¶¶ 85-86, 121).  It is irrelevant whether Defendant "acted with an intent which is tortious or even criminal, or that he . . .  intended to inflict emotional distress" because the forgoing conduct is not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46 cmt. d.  The allegations would support civil liability for conversion and criminal charges for larceny. But

commission of a property crime is, unfortunately, an all too common occurrence in modern society and generally not regarded as atrocious and utterly intolerable. *Cf.* Restatement (Third) of Torts § 46 cmt. d ("[S]ome conduct that may be outrageous—for example, marital infidelity—is sufficiently common that it could not be characterized as extreme.").

### *2. Medical Evidence*

Pennsylvania courts require the existence of emotional distress to be supported by competent medical evidence. The only medical evidence offered by Plaintiff is an assortment of doctor notes, reports, and letters that plainly constitute expert evidence. (*See* Doc. 225-6, Ex. F).[5]  None of these materials have been sworn to by either the declarant-doctors or any other expert.  As discussed in a prior order in this case, (Docs. 333, 353), there is a line of Third Circuit precedent excluding unsworn expert materials as incompetent evidence on summary judgment. *See, e.g.*, *Fowle v. C&C Cola*, 868 F.2d 59, 67 (3d Cir. 1989). Since Plaintiff has not offered competent evidence of emotional distress that would allow her to carry her burden at trial, Defendant is entitled to summary judgment on the intentional infliction of emotional distress claim.

---

[5] This exhibit was ordered sealed for confidentiality reasons. *See* Doc. 245.

## II. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### A. NIED Under Pennsylvania Law

Under Pennsylvania law, there are four theories of liability under which an action for negligent infliction of emotional distress will lie: (1) impact liability where emotional distress is accompanied by physical injury or impact; (2) zone of danger liability where emotional distress is inflicted on a plaintiff who was in close proximity of physical impact and thereby reasonably experienced a fear of physical injury; (3) bystander liability for emotional distress experienced by a plaintiff who personally witnessed an impact upon a close relative; and, (4) special relationship liability premised on the breach of a preexisting contractual or fiduciary relationship that foreseeably resulted in emotional harm so extreme that a reasonable person should not be expected to endure the resulting distress. *Doe v. Philadelphia Cmty. Health Alternatives AIDS Task Force*, 745 A.2d 25, 27 (Pa. Super. 2000). *See generally* 1 Summ. Pa. Jur. 2d Torts § 10:1 *et seq.*  Under the impact liability theory, a plaintiff may recover emotional distress damages that are accompanied by and consequentially flow from a direct physical injury caused by a defendant's negligence. *Shumosky v. Lutheran Welfare Servs. of Ne. PA, Inc.*, 784 A.2d 196, 200-201 (Pa. Super. 2001).  The injury can be trivial or minor, but the mental suffering must be directly traceable to the peril in which defendant's negligence placed the plaintiff. *Id.* at 201.  The requisite physical impact, however,

need not be directly with the defendant nor occur simultaneously with the

negligent act. *Stoddard v. Davidson*, 513 A.2d 419, 422 (Pa. Super. 1986).

### B. Plaintiff Cannot Recover for Negligent Infliction of Emotional Distress

Plaintiff has not alleged that she personally witnessed a negligently inflicted

physical injury to a close relative. (Doc. 1). Nor has Plaintiff alleged a fear of

physical injury resulting from being in close proximity to a physical impact. (*Id.*).

Finally, Plaintiff has not alleged any contractual or fiduciary relationship with

Defendant Balascik. (*Id.*). It follows that Plaintiff can only recover for negligent

infliction of emotional distress under an impact liability theory.

Plaintiff alleges that she was involved in a physical altercation at the

Shamokin Police Station on August 16, 2004. (Doc. 1, ¶¶ 94-111).  These are the

only allegations involving a physical impact or injury found in the complaint.

There is nothing in the complaint to suggest that Defendant Balascik was present

or otherwise involved in this incident. (*Id.*). Nor has Plaintiff produced any

evidence of negligent conduct by Defendant Balascik that is causally related to the

incident or injuries resulting therefrom. (*See* Docs. 296, 225 Ex. A-F). In fact, the

complaint avers that Plaintiff's physical injuries "are a direct and proximate result

of the efforts of the defendant [police officers] in detaining and/or assaulting the

Plaintiff . . ." (*Id.* ¶ 111).  Thus, even if some as yet unknown act of negligence by

Defendant Balascik is casually related to the police station incident, the intentional conduct of third persons is a superseding cause of the requisite physical impact. *See Sovereign Bank v. BJ's Wholesale Club, Inc.*, 395 F. Supp. 2d 183, 196 (M.D. Pa. 2005). Accordingly, the negligent infliction of emotional distress claim should be dismissed.

## III. NEGLIGENCE

### A. Elements of Negligence

To establish a prima facie case of negligence, a plaintiff must plead and prove that (1) defendant owed a duty of care to plaintiff (2) the breach of which (3) caused (4) damages. *See Martin v. Evans,* 551 Pa. 496, 711 A.2d 458, 461 (1998). In Pennsylvania, whether a defendant owes a duty of care to a plaintiff is a question of law for the court to decide. *Kleinknecht v. Gettysburg College,* 989 F.2d 1360, 1366 (3d Cir.1993).  A duty can arise from the common law, statutes, or contract. *Hawley v. Delaware & Hudson Ry. Co.*, 514 F. Supp. 2d 650, 655 (M.D. Pa. 2007) (citations omitted).

Duty is predicated on the relationship between the parties and arises only when one engages in conduct that foreseeably creates an unreasonable risk of

physical harm[6] to others. *R.W. v. Manzek*, 888 A.2d 740, 747 (Pa. 2005). Mere

knowledge of a harmful situation by one having the ability to intervene is

insufficient to create a duty. *Wenrick v. Schloemann-Siemag Aktiengesellschaft*,

564 A.2d 1244, 1248 (Pa. 1989). Absent a special relationship with either an

injured party[7] or a third person,[8] a defendant is under no duty to control the

conduct of third persons to prevent harm to others. *Brezenski v. World Truck*

*Transfer, Inc.*, 755 A.2d 36, 40-41 (Pa. Super. 2000) (citing Restatement (Second)

of Torts §§ 314-320).

A defendant acts negligently and breaches an applicable duty by failing to

exercise the ordinary care that a reasonably prudent person would exercise under

like circumstances. *Merlini ex rel. Merlini v. Gallitzin Water Auth.*, 980 A.2d 502

(Pa. 2009). There must be a causal connection between defendant's breach of duty

and plaintiff's injury. *Hamil v. Bashline*, 392 A.2d 1280, 1284 (Pa. 1978). A

defendant's negligence is the proximate cause of plaintiff's injury if the negligent

---

[6] Physical harm includes harm to the physical condition of land and chattels. *See Philadelphia Elec. Co. v. James Julian, Inc.*, 228 A.2d 669, 670 n.1 (Pa. 1967) (citing Restatement (Second) of Torts § 497).

[7] A special relationship that gives rise to a duty to aid or protect exists between common carriers and passengers, innkeepers and their guests, a possessor of land who holds it open to the public and the public, and one who takes custody of another and the other. Restatement (Second) of Torts § 314A; *see also id.* § 320 (duty of a person having custody of another to control the conduct of a third person).

[8] A special relationship that gives rise to a duty to control another exists between parent and child, master and servant, possessors of land or chattel and licensees, and one taking charge of a person having dangerous propensities. Restatement (Second) of Torts §§ 316-319.

conduct is a substantial factor in bringing about the harm inflicted upon the plaintiff. *Jones v. Montefiore Hosp.,* 431 A.2d 920, 923 (Pa. 1981).

### B. Plaintiff Cannot Recover for Negligence

The only duty that Defendant Balascik owed Donna Deitrick was the general duty of all persons not to engage in conduct that places others at an unreasonable risk of harm. There are no allegations or evidence that Defendant was negligent in this regard. It is undisputed that Mr. Balascik was not present during the warehouse, traffic stop, theft, or police station incidents. (*See* Doc. 1, ¶¶ 94-111; Doc. 197-2, pp. 56-83; Doc. 197-5, pp. 25:15-19; 32:12-13, 35:7-9). Nor was Mr. Balascik present when his wife Keri Balascik received and later disposed of the jewelry from the safe. (Doc. 197-5, pp. 10:17-21, 17:7-9, 26:15-20). Therefore an action for negligence will not lie based on these occurrences.

Finally, there is no admissible evidence that Mr. Balascik knew of or was complicit in his wife's involvement in transferring the jewelry between Robert and Thomas Yoncuski. (Doc. 197-5, pp. 14:22-15:1, 17:7-21, 26:15-20). Even if Defendant Balascik had known of his wife's actions and thereby 'negligently' failed to report the same to Plaintiff or the authorities, he was under no legally cognizable duty to do so. At common law, mere knowledge of a harmful situation coupled with an ability to render assistance does not impose an affirmative duty to do so. Furthermore, a marital relationship does not impose a duty upon one spouse

to control the conduct of the other. *See* Restatement (Second) of Torts §§ 316-319. And public policy considerations suggest that Pennsylvania courts would be unlikely to recognize an affirmative duty to warn or aid a third person based on information about tortious conduct communicated by a spouse. *Cf.* 42 Pa. Cons. Stat. Ann. § 5923 (marital communications privilege); *id.* § 5913 (spousal testimony privilege). Accordingly, the negligence claim should be dismissed because there is no evidence that Defendant Balascik breached any applicable duty owed to Plaintiff.

## IV. NEGLIGENCE PER SE

### A. Presumption of Negligence Per Se

Negligence per se is not a distinct cause of action but rather an evidentiary presumption that a defendant's violation of a legislative or regulatory enactment constitutes proof of a breach of duty. *See Daniel Boone Area Sch. Dist. v. Lehman Bros.*, 187 F. Supp. 2d 400, 407 (W.D. Pa. 2002). To establish the evidentiary presumption, four requirements must be met: (1) the purpose of the statute must be, at least in part, to protect the interest of a group of individuals, as opposed to the public generally; (2) the statute or regulation must clearly apply to the conduct of the defendant; (3) the defendant must violate the statute or regulation; and, (4) the violation of the statute or regulation must be the proximate cause of the plaintiff's injuries. *Cecile Indus., Inc. v. United States*, 793 F.2d 97, 99 (3d Cir. 1986).  The

concept of negligence per se establishes both duty and the required breach of duty. It does not end the inquiry. The plaintiff still bears the burden of establishing causation. *Cabiroy v. Scipione*, 767 A.2d 1078, 1079 (Pa. Super. 2001).

### B. Dismissal of Negligence Per Se Claim

It is not apparent from the complaint what enactment Defendant Balascik allegedly violated. Plaintiff avers only that "Defendant[] . . . owed a duty to the Plaintiff not to violate Federal law, State law, local ordinances, and the like . . . and conduct of the Defendant[] . . . violated said laws, . . . fell well below the standard of care . . . , and constituted a breach of a duty owed to the Plaintiff." (Doc. 1, ¶ 175). In other circuits, claims premised upon similar vague allegations that a defendant has violated unspecified statutes have been dismissed (without prejudice) under Rule 12(b)(6) for failure to satisfy the notice pleading requirements of Rule 8. *See, e.g.*, *ADT Sec. Servs., Inc. v. Swenson, ex rel. Estate of Lee*, 687 F. Supp. 2d 884, 892-93 (D. Minn. 2009) (failing to plead violated statute); *Bd. of Cnty. Comm'rs of Cnty. of La Plata, Colorado v. Brown Grp. Retail, Inc.*, 598 F. Supp. 2d 1185, 1194-95 (D. Colo. 2009) (list of many thousands of statutes and regulations); *Holler v. Cinemark USA, Inc.*, 185 F. Supp. 2d 1242, 1243-45 (D. Kan. 2002) (unspecified "local, state, and federal statutes, guidelines and regulations"). By contrast, citation to a specific statute is not required provided the complaint alleges "particular conduct that clearly violates a

statute or regulation. . . ." *Welch v. Loftus*, 776 F. Supp. 2d 222, 225-27 (S.D. Miss.
2011) (holding that defendants were not entitled to judgment as a matter of law on
negligence per se claim merely because complaint omitted citation to specific
statute where allegation that defendant fail[ed] to yield the right of way "could
leave no reasonable reader at a loss to predict how [plaintiff] would proceed with
his case").

In this case, Count IX against Defendant Balascik should be dismissed
because the complaint itself does not state a viable cause of action for negligence
per se. The complaint fails to identify any specific statutes that Defendant Balascik
violated.  The complaint also fails to allege "particular conduct [by Balascik] that
clearly violates a statute." 776 F. Supp. 2d at 226. Consequently, Defendant
Balascik is entitled to summary judgment on the negligence per se count since
Plaintiff has not stated a claim upon which relief can be granted. *See Melo v.
Hafer*, 912 F.2d 628, 633 (3d Cir. 1990) (permitting district court to dismiss for
failure to state a claim on a motion for summary judgment).

## V. CIVIL CONSPIRACY

### A. Elements and Proof of Civil Conspiracy

Under Pennsylvania law, to establish a prima facie case of civil conspiracy,
a plaintiff must plead and prove: (1) a combination of two or more persons acting

with a common purpose to do an unlawful act or to do a lawful act by unlawful

means or for an unlawful purpose; (2) an overt act in furtherance of the conspiracy;

and (3) actual legal damages.  *Goldstein v. Phillip Morris, Inc.*, 854 A.2d 585, 590

(Pa. Super. 2004).  Proof of malice, defined as an intent to injure, is required.

*Reading Radio, Inc. v. Fink*, 833 A.2d 199, 212 (Pa. Super. 2003).  The unlawful

intent must be without justification.  *Thompson Coal Co. v. Pike Coal Co.*, 412

A.2d 466, 472 (Pa. 1979).

Absent a civil cause of action for a particular act, there can be no cause of

action for civil conspiracy to commit that act. *Goldstein*, 854 A.2d at 590. Instead,

conspiracy liability must be based on an existing independent wrong or intentional

tort that would constitute a valid cause of action if committed by one actor.

*Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 407 (3d Cir. 2000);

*In re Orthopedic Bone Screw Products Liab. Litig.*, 193 F.3d 781, 789 (3d Cir.

1999); *see also Goldstein*, 854 A.2d at 591 (rejecting civil conspiracy claims

premised on negligence and strict liability).

Conspiracy may be proved by circumstantial evidence, including subsequent

acts of the alleged conspirators, provided the evidence is "full, clear and

satisfactory." *Blank & Gottschall Co. v. First Nat. Bank of Sunbury*, 50 A.2d 218,

220 (Pa. 1947); *see also Fife v. Great Atl. & Pac. Tea Co.*, 52 A.2d 24, 27 (Pa.

1947) ("A conspiracy may be proved by acts and circumstances sufficient to

warrant an inference that the unlawful combination had been in point of fact formed for the purpose charged."); *Reading Radio, Inc. v. Fink*, 833 A.2d 199, 212 (Pa. Super. 2003) ("All of the [elements of conspiracy] may be proven circumstantially by subsequent acts."). The mere fact that several parties happened to exercise independent rights around the same time, however, does not constitute actionable civil conspiracy. *Fife*, 52 A.2d at 27. "Mere suspicion or the possibility of guilty connection is not sufficient, nor proof of acts which are equally consistent with innocence." *Id.*

### B. Insufficient Evidence of Conspiracy

Conspiracy liability requires an existing intentional tort that would constitute a valid cause of action if committed by one actor. *See Goldstein*, 854 A.2d at 590-91. Intentional infliction of emotional distress cannot serve as the predicate tort because that claim is recommended for dismissal. The negligence claims are not intentional torts and therefore cannot support an action for civil conspiracy. Therefore, the cause of action for civil conspiracy against Defendant Balascik must be premised upon conversion or trespass to chattels.

Defendant Balascik argues that Plaintiff is unable to produce any admissible evidence that Defendant was involved in the theft of the safe. (Doc. 255, p. 3). The burden thus shifts to Plaintiff to identify evidence that raises a triable issue of fact regarding Defendant's involvement in an alleged conspiracy to steal the safe or

convert its contents. Plaintiff contends that deposition testimony of Robert Yoncuski and Keri Balascik implicates Defendant Balascik. (Doc. 296, pp. 2-4). While that evidence suggests Defendant's wife Ms. Balascik may have been a part of a conspiracy, there is no admissible evidence that Defendant Kevin Balascik was a party to any such unlawful agreement.

Plaintiff relies entirely upon evidence that Robert Yoncuski gave jewelry from the safe to Keri Balascik and Robert Yoncuski's testimony that attorney Wiest told Yoncuski the Balascik's informed Wiest on February 8, 2005, that they "had the jewelry." (Doc. 296, pp. 2-3; Doc. 197-3, pp. 64:19-65:15, 76:9-10). The latter evidence is relevant because possession of jewelry is probative of involvement in a conspiracy to convert that jewelry in addition to being an overt act in furtherance of the conspiracy. But that evidence is hearsay that is not capable of admission at trial and therefore cannot be considered on summary judgment. *See Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009) ("Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment.").

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801(a)-(c). Here, the Balasciks' alleged out-of-court statement to Wiest is offered for its truth—that the Balasciks' "had the jewelry." (Doc. 197-3, p. 65:4). Construing the evidence in the light most favorable to

Plaintiff, we assume that Defendant Kevin Balascik made the statements to Wiest.[9]

Thus, the assertion to Wiest is a statement by a party opponent that is admissible

under Rule 801(d)(2)(A). Wiest's repetition of that statement, however, is also

offered for its truth and is thus inadmissible absent an exception to the hearsay

rule. *See* Fed. R. Evid. 805.  There is no applicable exception. Since Defendant

objected to the admissibility of the statement, (Doc. 255, p. 3), Plaintiff must

demonstrate that there is "more than a mere possibility" that the evidence will be

admissible at trial as non-hearsay. *See Bender v. Norfolk Southern Corp.*, 994 F.

Supp. 2d 593, 600-01 (M.D. Pa. 2014). Despite ample opportunity for discovery in

this case and several enlargements of time to respond to the instant motion,

Plaintiff has not come forward with any affidavits, deposition testimony,

interrogatories, or other materials showing that attorney Wiest is prepared to testify

about the substance of Defendant Balascik's alleged admissions. Since Plaintiff has

failed to demonstrate that the declarant will testify as to the substance of the out-

of-court statements, the evidence is hearsay that cannot be considered on summary

---

[9] If Keri Balascik made the statements, the evidence is inadmissible hearsay. Plaintiff seems to rely upon the co-conspirator exemption from the definition of hearsay. *See* Doc. 196, p. 3. That reliance is misplaced because the alleged statements were not made during and in furtherance of the alleged conspiracy. *See* Doc. Doc. 197-3, p. 65. Hence Rule 801(d)(2)(E) does not apply. Statements by Ms. Balascik would also not be capable of admission at trial because the declarant has given sworn testimony during discovery that contradicts the hearsay statement. *See Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1246 (3d Cir. 1993). Specifically, Ms. Balascik testified neither she nor her husband ever discussed the jewelry with attorney Wiest. (Doc. 197-5, p. 34:2-24).

judgment. *See, e.g.*, *Smith*, 589 F.3d at 693-94; *Santos v. Murdock*, 243 F.3d 681, 684 (2d Cir. 2001); *Bender*, 994 F. Supp. 2d at 600.

Robert Yoncuski, for his part, testified that he lacked personal knowledge regarding the whereabouts of the jewelry after it was transferred to Keri Balascik. Specifically, Yoncuski testified that he neither inquired about nor had knowledge of what Ms. Balascik did with items he placed in her trunk and had "no idea" when she gave the items to Thomas Yoncuski or how long they were in her possession. (Doc. 197-3, 71:18-23, 78:16-23, 80:16-19). Thus, the only substantive evidence linking Defendant Balascik to a conspiracy involving the jewelry is Ms. Balascik's testimony that she took custody of the jewelry for a "short period of time." (Doc. 197-5, p. 13). Yet there is no admissible evidence that Defendant Balascik knew of or was complicit in his wife's involvement in transferring the jewelry between Robert and Thomas Yoncuski. (Doc. 197-5, pp. 14:22-15:1, 17:7-21, 26:15-20). *A fortiori* there is no evidence that Defendant Balascik conspired with his wife to convert that jewelry. A marital relationship, without more, does not constitute "full, clear and satisfactory" circumstantial evidence from which a rational jury could infer "that the unlawful combination had been in point of fact formed for the purpose charged." *Fife*, 52 A.2d at 27. Since Plaintiff has not produced evidence that would enable her to carry the burden at trial, it is recommended that the conspiracy claim against Defendant Balascik be dismissed.

## VI. CONVERSION AND TRESPASS TO CHATTELS

Defendant Balascik argues that Plaintiff has yet to produce any affirmative evidence that Balascik was involved in the removal of the safe. (Doc. 255, p. 3). Defendant further argues that the only evidence in any way connecting Balascik to the incidents described in the complaint is inadmissible hearsay. (*Id.*).  In response, Plaintiff contends that deposition testimony of Robert Yoncuski and Keri Balascik (Defendant Balascik's wife) implicates Defendant Balascik. (Doc. 296, pp. 2-4). The claims against Defendant Balascik should be dismissed for reasons discussed in the previous section: there is no admissible evidence linking Defendant Balascik to Plaintiff's jewelry.

### A. Legal Framework

Under Pennsylvania law, conversion is the deprivation of or interference with another's right of property in, use of, or possession of a chattel without the owner's consent and without lawful justification.  *PTSI, Inc. v. Haley*, 71 A.3d 304, 314 (Pa. Super. 2013) (citations omitted); *see also* Restatement (Second) of Torts § 222A (1965) (defining conversion as "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel").  Similarly, the tort of trespass to chattels is defined as intentionally

dispossessing another of a chattel or using or intermeddling with a chattel in the possession of another. *Pestco, Inc. v. Associated Products, Inc.*, 880 A.2d 700, 708 (Pa. Super. 2005) (citing Restatement (Second) of Torts § 217).

### B. Insufficient Evidence of Conversion

Defendant's motion is premised on the assertion that Plaintiff cannot produce admissible evidence showing Defendant Kevin Balascik was involved in the incidents described in the complaint. (Doc. 255, p. 3).  The burden thus shifts to Plaintiff to identify specific facts, supported by evidence, upon which a jury could return a verdict in Plaintiff's favor on the issue of conversion or trespass to chattels.  Plaintiff points to evidence that arguably implicates *Keri* Balascik, Defendant's wife, in the conversion or dispossession of Plaintiff's jewelry. (Doc. 296, pp. 3-4). However, "it is well settled in [Pennsylvania] that a husband is not responsible for the tortious acts of his wife committed outside his presence and without his actual or implied consent or direction." *Cmty. Fed. Sav. & Loan Ass'n v. Luckenbach*, 261 A.2d 327, 329 (Pa. 1970). Plaintiff has not provided a scintilla of admissible evidence that Defendant Balascik was in any way complicit in his wife's actions regarding the receipt and subsequent transfer of the safe's contents.

The only direct evidence that Defendant Balascik committed an act of deprivation or interference with the jewelry is based on Robert Yoncuski's

testimony that Wiest told him the Balascik's informed Wiest on February 8, 2005, that they had the jewelry. (Doc. 197-3, pp. 65:1-16, 76:4-9). As discussed in the previous section,[10] this is inadmissible hearsay that cannot be considered on summary judgment because Plaintiff failed to demonstrate it is capable of admission at trial. The only circumstantial evidence linking Defendant Balascik to the jewelry is his wife's testimony that she took custody of the jewelry for a "short period of time." (Doc. 197-5, p. 13). Yet Ms. Balascik also testified that her husband, Defendant Balascik, neither knew of nor was complicit in her activities involving the jewelry. (Doc. 197-5, pp. 14:22-15:1, 17:7-21, 26:15-20). Plaintiff produced no affirmative evidence to contradict Ms. Balascik's averments that her husband was not involved in the incident. (*See* Doc. 296, pp. 2-3).

Finally, there is no legal or evidentiary support for Plaintiff's contention that there is admissible evidence that Robert Yoncuski pointed to and implicated the Balasciks in the conspiracy. (Doc. 296, p. 3). First, Yoncuski's testimony about the Wiest conversation is inadmissible. Second, Yoncuski testified that he lacked personal knowledge regarding the chain of custody of the jewelry after it was transferred to Keri Balascik. (Doc. 197-3, 71:18-23, 78:16-23, 80:16-19). Therefore, Yoncuski is not competent to testify as to whether Defendant Balascik was ever in possession of the jewelry that Yoncuski transferred to Keri Balascik. It

---

[10] *See supra* Part V.B.

is therefore recommended that the conversion and trespass to chattels claims against Defendant Kevin Balascik be dismissed because Plaintiff has not provided any affirmative evidence that Defendant Balascik exercised dominion or control over Plaintiff's jewelry.

[The next page contains the recommendations.]

# RECOMMENDATION

For the forgoing reasons, it is recommended that Defendant Kevin Balascik's motion for summary judgment be granted in full.

With respect to Count VI (intentional infliction of emotional distress) against Defendant Balascik, it is recommended that summary judgment be **GRANTED.**

With respect to Count VII (negligent infliction of emotional distress) against Defendant Balascik, it is recommended that summary judgment be **GRANTED.**

With respect to Count VIII (negligence) against Defendant Balascik, it is recommended that summary judgment be **GRANTED.**

With respect to Count IX (negligence per se) against Defendant Balascik, it is recommended that summary judgment be **GRANTED.**

With respect to Count XII (civil conspiracy) against Defendant Balascik, it is recommended that summary judgment be **GRANTED.**

With respect to Count XIII (conversion) against Defendant Balascik, it is recommended that summary judgment be **GRANTED.**

With respect to Count XIV (trespass to chattels) against Defendant Balascik, it is recommended that summary judgment be **GRANTED.**

## <u>NOTICE OF REPORT & RECOMMENDATION</u>

NOTICE IS HEREBY GIVEN that the Magistrate Judge has entered the

foregoing Report and Recommendation.

Any party may obtain a review of the Report and Recommendation pursuant

to Local Rule 72.3, which provides:

> **Any party may object** to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition **within fourteen (14) days after being served** with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. **The briefing requirements set forth in Local Rule 72.2 shall apply**. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses, or recommit the matter to the magistrate judge with instructions. M.D.Pa. LR 72.3 (2010). (emphasis added).

Signed on <u>10/21/2014</u>.       *s/ William I. Arbuckle III*
                           WILLIAM I. ARBUCKLE III
                           UNITED STATES MAGISTRATE JUDGE