# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONNA DEITRICK, | : | Civil No. 4:06-CV-1556 |
| | : | |
| Plaintiff, | : | (Judge Brann) |
| | : | (Magistrate Judge Arbuckle) |
| v. | : | |
| | : | |
| MARK A. COSTA, *et al.*, | : | |
| | : | |
| Defendants, | : | |

## REPORT AND RECOMMENDATION

(Motion for Partial Summary Judgment by Multiple Defendants – Doc. 161)

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................. 2

PROCEDURAL HISTORY ................................................................................. 2

STATEMENT OF MATERIAL FACTS........................................................... 3

SUMMARY JUDGMENT STANDARD .......................................................... 7

DISCUSSION ...................................................................................................... 10

   I. RETURNED JEWELRY ........................................................................... 11

   II. MISSING JEWELRY ............................................................................... 14

      A. Admissibility of Owner's Lay Opinion of Property Value ............................ 16

      B. Factual Dispute Regarding Value of the Missing Property .............................. 18

RECOMMENDATION....................................................................................... 22

NOTICE OF REPORT & RECOMMENDATION.......................................... 23

## INTRODUCTION

Pending before the Court is the motion for partial summary judgment filed by Defendants Linda Long, Robert Yoncuski, and Vanessa (Long) Yoncuski. (Doc. 161). The Complaint alleges various causes of action against Defendants including negligence, negligence per se, civil conspiracy, conversion, and trespass to chattels. (Doc. 1). Defendants contend there is no genuine dispute as to the value of certain property at issue in this case and seek an order to that effect. For reasons set forth below, it is recommended that Defendants' motion be denied.

## PROCEDURAL HISTORY

Plaintiff Donna Deitrick began this case on August 11, 2006 by filing a complaint alleging various federal and state causes of action against numerous defendants. (Doc. 1).  Defendants Linda Long, Robert Yoncuski, and Vanessa (Long) Yoncuski are named in Counts VI-IX and XII-XIV.[1]  Specifically, Plaintiff alleges state-law claims against these defendants for negligence (Count VIII), negligence per se (Count IX), civil conspiracy (Count XII), conversion (Count XIII), and trespass to chattels (Count XIV).[2]

Defendant Linda Long filed an answer on October 17, 2006. (Doc. 5). Defendant Vanessa Long filed an answer on November 16, 2006, (Doc. 23), and

---

[1] Yoncuski and Vanessa Long are also named in Counts IV and V.

[2] The other counts against these defendants are not implicated by the instant motion.

Defendant Yoncuski filed an answer the same day, (Doc. 25). On September 27, 2012, Defendants filed the instant motion for partial summary judgment as to both the repair or replacement value of certain jewelry that was returned to Plaintiff and the value of other jewelry that remains missing. (Doc. 161). Supporting materials were filed the same day. (Docs. 162-173).

Plaintiff submitted opposition materials on November 30 and December 2, 2012. (Docs. 223,[3] 223-1, 225). Exhibits B (Doc. 225-2) and F (Doc. 225-6) to those materials were ordered sealed because they contained sensitive or confidential information. (Doc. 245). Defendants' motion to strike Exhibit E[4] to those materials, (Doc. 233), was denied on March 4, 2013, (Doc. 272). On December 14, 2012, Defendants filed a reply brief and a supplemental statement of facts (Docs. 144, 144-1). Litigation on other aspects of this case proceeded and the motion for summary judgment is ripe for decision.

## STATEMENT OF MATERIAL FACTS

The following is a statement of material facts drawn from Defendant's Statement of Material Facts, (Doc. 162), Plaintiff's Counterstatement of Material Facts, (Doc. 223-1), and the underlying documents and exhibits. Other materials in the record known to this Court are used to provide background information and

---

[3] This document was mistakenly titled in the docket as opposition to motion filed at Doc. 197.
[4] The exhibit, Doc. 225-5 at 14-31, is an expert report on the valuation of certain jewelry.

other pertinent details. The facts are set forth in the light most favorable to Plaintiff, the non-moving party.

On August 13, 2004, Robert Yoncuski, aided by Jeffrey Adams, Marianne Adams, Troy Latsha, and Kyle Schreffler, broke and entered the residence of Yoncuski's then-wife, Plaintiff Donna Deitrick, and removed a large safe containing money and jewelry. (Doc. 162, ¶¶ 1-2; Doc. 198, ¶¶ 6-11; Doc. 199, p. 3; Doc. 197-2, p. 196:9-10). The safe was full at the time of the theft. (Doc. 225-1, p. 56:5-7). Two days later, on August 15, Robert Yoncuski cut open the safe and emptied some of its contents[5] into several bags and a blue container. (*Id.*).

The same day, Defendant Yoncuski asked his niece Keri Balascik to come to his house and take custody of the bags and container containing the contents of the safe. (Doc. 197-3, pp. 61, 71:14-23). Yoncuski then placed three or four black garbage bags and a container measuring at least two cubic feet into the trunk of Balascik's Pontiac Sunfire. (*Id.*; Doc. 197-5, pp. 10:2-11:8).  After leaving Yoncuski's residence, Balascik looked inside the bags in her trunk, recognized the items as jewelry, and decided she wanted nothing to do with the matter. (Doc. 197-5, pp. 13:1-14:13). "Within a short period of time," Balascik took the items to Thomas Yoncuski's house.[6] (*Id.*).

---

[5] Robert Yoncuski testified that he kept $50,000 in cash that was in the safe. (Doc. 197-3, p. 61).
[6] Thomas Yoncuski is the brother of Robert Yoncuski. (Doc. 197-3, p. 8).

On August 23 and 25 of 2004, Defendant Robert Yoncuski gave testimony in state court in which he denied involvement in the removal of the safe and disclaimed any knowledge of the whereabouts of its contents. (Doc. 176, ¶¶ 3, 4). At the conclusion of the hearing, the Court of Common Pleas for Northumberland County entered an order requiring Yoncuski to return the safe and identify the individuals who participated in its removal. (*See* Doc. 225-2, p. 92). Yoncuski was incarcerated for civil contempt for failure to comply with that order. (*Id.*).

On February 8, 2005, attorney Joel Wiest visited Robert Yoncuski, his client, in jail and informed him that Jeffrey and Marianne Adams were offered immunity and had implicated Yoncuski in the theft of the safe. (Doc. 197-3, pp. 64:19-65:20; Doc. 187, Ex. JMA-6, Wiest Aff.). Yoncuski admitted his complicity in the incident. (*Id.*).  The next morning, Thomas Yoncuski delivered black trash bags and a blue tub containing the contents of the safe to Defendant Vanessa Long. (Doc. 197-4, pp. 20:6-22:21). Long then delivered those items to attorney Michael Rudinski. (*Id.*).

On February 9, 2005, attorney Wiest informed the Court of Common Pleas for Northumberland County of Yoncuski's admissions. (Doc. 176, ¶ 6). Yoncuski then purged himself of civil contempt by acknowledging his involvement in the removal of the safe and naming other persons who were involved. (Doc. 162, ¶ 3; Doc. 225-2, pp. 93-97). The jewelry was eventually returned to Plaintiff but much

of it was missing or damaged. (Doc. 162, ¶ 3; Doc. 197-2, pp. 184, 192:18-24, 228:24-229:1).

Plaintiff Donna Deitrick has been involved in the business of selling her jewelry and other products since the 1970s. (Doc. 197-2, pp. 5:22, 27-28). When the jewelry was returned, Deitrick prepared a list of items from the safe that remained missing. (Doc. 225-2, pp. 63-65). She subsequently updated the list[7] and added dollar figures obtained from researching the value of the items. (Doc. 197-2, pp. 129:4-25, 141:9-20; Ex. DD-13). Deitrick conducted her research by comparing the cost of similar gemstones found at three different retail jewelry stores and jewelry listed on the internet. (Doc. 197-2, pp. 146:1-148:6, 154:7-16). She also consulted with several coin dealers to estimate the value of certain specie and banknotes that were missing from the safe. (Doc. 162, ¶ 7). Deitrick was able to assess the quality of various stones using a loupe and applying knowledge obtained from decades of experience with jewelry. (Doc. 197-2, pp. 146:1-148:6, 154:7-16; Doc. 225-1, p. 60:19-23).  Plaintiff does not, however, have receipts or photographs of the missing jewelry. (Doc. 162, ¶ 5). Furthermore, Plaintiff testified that written appraisals for some of the missing jewelry were also taken from the safe. (Doc. 197-2, p. 147:16-147:10). In May of 2007, Gary Smith, a Master Gemologist Appraiser and Forensic Gemologist, prepared a report expressing his

---

[7] Those lists also contain the estimated cost of damages, repairs, and mitigation efforts associated with the returned jewelry. (*Id.*; Doc. 223-1, ¶ 5).

opinion as to the missing jewelry's approximate replacement value in the pre-owned retail jewelry market. (Doc. 225-5, 14-31).

With respect to the jewelry that was returned, Plaintiff was unable to count the exact number of items because much of it was torn, tangled, or twisted. (Doc. 162, ¶ 4; Doc. 197-2, pp. 184:10-186:24, 244). Deitrick was in the process of untangling the items and getting valuation and repair estimates when the jewelry and appraisal documents were stolen from her vehicle. (*Id.*). Photographs and a video of the returned jewelry were taken prior to that date. (Doc. 162, ¶ 4; Doc. 225-2, pp. 29, 66).

## SUMMARY JUDGMENT STANDARD

We will examine the motion for summary judgment under the well established standard.  Rule 56(a) of the Federal Rules of Civil Procedure provides as follows:

> A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense - on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.  Fed. R. Civ. P. 56(a).

For purposes of Rule 56, a fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law.  *Haybarger v. Laurence Cnty. Adult Prob. & Parole*, 667 F.3d 408, 412 (3d

Cir. 2012) (*quoting Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). For an issue to be genuine, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* (*quoting Anderson,* 477 U.S. at 248-49).

Accordingly, in support of a motion for summary judgment, the moving party must show that if the evidence of record were reduced to admissible evidence in court, it would be insufficient to allow the non-moving party to carry its burden of proof. *See Celotex v. Catrett*, 477 U.S. 317, 323 ( 1986). Provided the moving party has satisfied this burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Instead, if the moving party has carried its burden, the non-moving party must then respond by identifying specific facts, supported by evidence, which show a genuine issue for trial, and may not rely upon the allegations or denials of its pleadings. *See Martin v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007); see also Fed. R. Civ. P. 56(c).

In adjudicating the motion, the court must view the evidence presented in the light most favorable to the opposing party, *Anderson*, 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party, *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir.

1992). Where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true. *Id.* Additionally, the court is not to decide whether the evidence unquestionably favors one side or the other, or to make credibility determinations, but instead must decide whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. *Id. at 252; see also Big Apple BMW*, 974 F.2d at 1363. In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. It thus remains the province of the factfinder to ascertain the believability and weight of the evidence. *Id.* In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted); *NAACP v. North Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 476 (3d Cir. 2011).

Often described as a legal test that is easy to state but hard to apply, we now turn to the facts of this case to determine if there is a genuine dispute of material fact requiring a trial.

## DISCUSSION

Defendants move for partial summary judgment as to both the repair or replacement value of the jewelry that was returned to Plaintiff and the value of jewelry that remains missing. (Doc. 161). An overview of the applicable law precedes evaluation of the merits of the instant motion.

Under Pennsylvania law, the evidence must afford a reasonable basis to support an award of damages; a verdict cannot be based upon mere speculation or guesswork. *Helpin v. Trustees of Univ. of Pennsylvania*, 10 A.3d 267, 270 (Pa. 2010). Damages are deemed speculative, however, only if there is uncertainty concerning the existence of damages rather than the value or amount of damages. *Kituskie v. Corbman*, 714 A.2d 1027, 1030 (Pa. 1998). If it is clear that the damages were the certain result of defendant's conduct, mere uncertainty as to the precise amount is no bar to recovery. *Delahanty*, 464 A.2d at 1257.  Thus, a defendant whose wrongful conduct has rendered difficult the ascertainment of damages bears the risk of uncertainty. *Com. Trust Co. of Pittsburgh v. Hachmeister Lind Co.*, 181 A. 787, 790 (Pa. 1935).

Plaintiff bears the burden of proof and must present sufficient evidence by which damages can be determined on some rational basis. *ASTech Int'l, LLC v. Husick*, 676 F. Supp. 2d 389, 405 (E.D. Pa. 2009); *Omicron Sys., Inc. v. Weiner*, 860 A.2d 554, 564-65 (Pa. Super. 2004). While proof of damages does not require

mathematical precision, the evidence must establish the fact with a "fair degree of probability." *Brisbin v. Superior Valve Co.*, 398 F.3d 279, 289 (3d Cir. 2005) (citing *Exton Drive-In, Inc. v. Home Indemnity Co.*, 261 A.2d at 324 (Pa. 1969)). Determination of damages is a question of fact for the jury. *Omicron Sys., Inc. v. Weiner*, 860 A.2d 554, 564-65 (Pa. Super. 2004). In an action for conversion, the jury has broad discretion in this regard. *See Lynch v. Bridges & Co. Inc.*, 678 A.2d 414, 416 (Pa. Super. 1996) (noting that it is the traditional function of the fact finder in conversion actions to estimate damages).

It is the jury's role to assess testimony, weigh the evidence, make credibility determinations, and accept or reject the damage estimates given by witnesses. *Penn Elec. Supply Co., Inc. v. Billows Elec. Supply Co., Inc.,* 364 Pa.Super. 544, 528 A.2d 643, 644 (1987).  The jury may make a "reasonable estimate . . . based on relevant data, and in such circumstances may act on probable and inferential, as well as upon direct and positive proof." *Delahanty*, 464 A.2d at 1257.  Although the jury may not rely upon "sheer conjecture as a basis for arriving at a verdict, . . . a measure of speculation" is permissible. *Id.*

## I. RETURNED JEWELRY

Defendants ague that Plaintiff does not know the value of the returned jewelry and has not produced a list of the returned jewelry. (Doc. 173, p. 5). Further, Defendants contend that Plaintiff has not disclosed any competent

evidence as to what jewelry was damaged, proof of its prior condition, value at the time it was taken, or its repair costs. (*Id.*). Deitrick responds by arguing that her testimony provides a sufficient evidentiary basis upon which a jury can determine the value of Plaintiff's property. (Doc. 223, p. 16).

We believe the Defendants are not entitled to partial summary judgment with respect to the jewelry that was recovered and returned to Plaintiff because there are facts from which a jury could award damages if Plaintiff prevails on the issue of liability. The measure of damages for harm to property not amounting to a total destruction in value includes compensation for loss of use. *Holt v. Pariser*, 54 A.2d 89, 91 (Pa. Super. 1947). It is undisputed that Deitrick was dispossessed of the returned jewelry from August 13, 2004, until February, 9, 2005. (Doc. 162, ¶¶ 1, 3). Accordingly, a jury could find that Plaintiff is entitled to some amount of compensation for the loss of use of the jewelry during that time period.

In addition to loss of use, damages for harm to property includes either the change in the value of the chattel or, at the plaintiff's election, the reasonable cost of repair or restoration. *Holt*, 54 A.2d at 91. Here, there are triable issues of fact as to both the change in value of the jewelry and the reasonable cost of repair or restoration. Deitrick testified that much of the returned jewelry was damaged. (Doc. 197-2, pp. 184-86). She also provided an estimated dollar value for the

"damage, repairs, and . . . hours of work" associated with the returned jewelry.[8] (Doc. 197-2, Ex. DD-13 e). Construed favorably to Plaintiff, some or all of that dollar amount represents the change in value of the jewelry (i.e. "damage"). Alternatively, some or all of that dollar amount represents costs of repair and restoration (i.e. "repairs" and "hours of work"). Indeed, Plaintiff testified that she personally expended time and labor attempting to separate, repair, and restore the damaged jewelry. (Doc. 197-2, pp. 184:10-186:24). It is for the jury to calculate what, if anything, these amounts are after weighing Plaintiff's testimony, evaluating her credibility, and assessing any other pertinent evidence.

While Defendants correctly point out that Plaintiff was unable to count or itemize the damaged items, this is so because much was torn, tangled, or twisted as a result of their alleged conduct. (Doc. 162, ¶ 4; Doc. 197-2, pp. 184:10-186:24). If responsible for the damaged condition of the returned jewelry, Defendants bear the risk of any resulting uncertainty occasioned by the absence of a precise itemization. *See Hachmeister*, 181 A. at 790. On the other hand, Defendants could very well gain from the uncertainty of which they complain. The subsequent theft of the returned items suggests that Plaintiff faces the difficult task of relying upon

---

[8] To the extent Defendants argue this 'evidence' lacks foundation, (Doc. 224-1, p. 4), Plaintiff testified that she was the author of the exhibit. (Doc. 197-2, pp. 129:4-25, 141:9-20). Regardless of whether this exhibit is admissible at trial, and irrespective of its weight, it is appropriately considered on summary judgment because the contents are capable of admission at trial through Plaintiff's testimony. *See Bender v. Norfolk S. Corp.*, 994 F. Supp. 2d 593, 599 (M.D. Pa. 2014).

testimonial evidence to convince a jury of damages to property that she no longer possesses.[9]

In any event, Plaintiff's loss of use of the jewelry and testimony as to its damaged condition and her repair efforts present factual issues for trial. If a jury finds that "the damages were the certain result of defendant[s'] conduct, [then] mere uncertainty as to the precise amount is no bar to recovery." *Delahanty*, 464 A.2d at 1257. It is therefore recommended that partial summary judgment be denied as to the value of the returned jewelry.

## II. MISSING JEWELRY

In an action for conversion, a defendant is liable in damages for all actual losses and injuries sustained as a natural and proximate result of his or her wrong. *Fort Washington Res., Inc. v. Tannen*, 901 F. Supp. 932, 944 (E.D. Pa. 1995) (citations omitted). In the typical case, this amounts to the value of the converted property at the time of conversion. *Id.* If the property if of fluctuating value, however, the proper measure of damages is the highest value attained by the chattel within a reasonable time after notice of the conversion. 42 Pa. Cons. Stat. Ann. § 8335 (West); *Fletcher v. Cobuzzi*, 510 F. Supp. 263, 265 (W.D. Pa. 1981).

---

[9] As an aside, this Court notes that neither the moving Defendants nor Plaintiff has introduced into evidence the police inventory of the returned items or photographs of the same. The existence of such materials is referenced in the record. *See* Doc. 162, ¶ 4; Doc. 225-2, pp. 29, 66.

In this case, Defendants argue that the information provided by Plaintiff about the value of the missing property is "so speculative . . . that it is impossible for anyone—including Plaintiff-to reliably address its value." (Doc. 173, p. 6). In support of this contention, Defendants point to discrepancies between different lists itemizing the value of the jewelry. (*Id.*). Defendants contend that the descriptions and valuations therein are inadequate, and that Plaintiff Deitrick herself is unsure which list is most accurate. (*Id.*). Defendants further contend that Plaintiff has supplied neither an adequate foundation for the valuations nor sufficient information for an expert appraisal. (*Id.* at 7).  Finally, according to Defendants, Deitrick is not qualified to offer opinion testimony as to the value of the jewelry. (*Id.* at 8-9). Deitrick responds by arguing that her testimony and a gemologist's expert opinion provide a sufficient evidentiary basis upon which a jury can determine the value of the missing property. (Doc. 223, p. 16).

It is recommended that summary judgment be denied because estimating the amount of damages is a traditional function of the jury and here there is evidence that would enable Plaintiff to establish the fact of damages with reasonable certainty. Furthermore, the expert report of Gary Smith provides a "rational basis" upon which damages can be determined. *See ASTech*, 676 F. Supp. 2d at 405. The admissibility of that report and Mr. Smith's testimony, however, is presently an unresolved matter of dispute. In order to avoid basing this recommendation on

evidence that may ultimately be excluded, and to give all parties a full opportunity to be heard on the matter, we defer a *Daubert* inquiry and base this recommendation on the remaining evidence. *Cf. Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 417 (3d Cir. 1999) ("[T]he detailed factual record requirement, firmly entrenched in our jurisprudence, requires adequate process at the evidentiary stage, particularly when a summary judgment may flow from it."); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994) ("[W]hen the district court's exclusionary evidentiary rulings with respect to scientific opinion testimony will result in a summary or directed judgment, we will give them a 'hard look.'").

## A. Admissibility of Owner's Lay Opinion of Property Value

The parties dispute whether Deitrick, as owner of the missing jewelry, is competent to give lay opinion testimony as to its value. The Third Circuit's decisions in *Asplundh* and *Lightning Lube*, both cited approvingly by the Advisory Committee,[10] compels the conclusion that an owner may give opinion testimony under Rule 701 regarding the value her property. In *Lightning Lube*, the Court of Appeals upheld the District Court's decision to permit the owner of a business to give opinion testimony as to lost profits and damages without qualifying as an expert witness. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1175 (3d Cir. 1993). There, the owner's opinion was based on his knowledge and participation in

---

[10] Fed. R. Evid. 701, Advisory Committee Notes (2000).

the day-to-day affairs of the business. *Id.* In *Asplundh*, the Third Circuit analyzed in detail the requirements for admission of lay opinion testimony. *Asplundh Mfg. Div., a Div. of Asplundh Tree Expert Co. v. Benton Harbor Eng'g*, 57 F.3d 1190 (3d Cir. 1995). In doing so, the court listed the "value of one's property" as an "example[] of . . . quintessential Rule 701 opinion testimony. . ." *Id.*

Other circuits are in accord. In *Neff*, an Eleventh Circuit case cited with approval in *Asplundh*, the Court of Appeals concluded that the District Court erred in excluding the plaintiff-owner's lay opinion testimony as to the value of his coin collection. *Neff v. Kehoe*, 708 F.2d 639, 643-44 (11th Cir. 1983) (holding that "an owner of property is competent to testify regarding its value). Even though accurate valuation of the coins was "really a science" and "require[d] a fair amount of technical proficiency," the owner was entitled to give testimony on the value of the collection where his opinion was based upon coin collector publications, appraisals received from various collectors, and personal experience as the owner of the collection. *Id.*  The court noted that although "such testimony may be self-serving and unsupported by other evidence, it is subject to attack through cross-examination or independent evidence refuting the owner's estimate." *Id.* (citations and punctuation omitted).

In the criminal context, it is "well-settled that the owner of stolen property may testify as to its market value." *United States v. Laughlin*, 804 F.2d 1336,

1339-41 (5th Cir. 1986) (noting that the owner of property is qualified by ownership alone to testify as to market value). This is so even if the property owner is not otherwise an expert. *United States v. McGinnis*, 783 F.2d 755, 757 (8th Cir. 1986) (holding that owner's testimony "was sufficient without more to support a jury finding"); *see also United States v. Robinson*, 698 F.2d 448, 456 (D.C. Cir. 1983) ("While courts will not permit testimony on the mere subjective value to the individual of the property, the owner's testimony on the objective, market value of the property *is* relevant) (emphasis in original). Hence, testimony by the owner of stolen property may suffice to prove market value beyond a reasonable doubt. *A fortiori* testimony by the owner of stolen jewelry is sufficient to submit the question of damages to a jury.

## B. Factual Dispute Regarding Value of the Missing Property

Partial summary judgment should be denied because there are factual disputes regarding the existence and value of items stolen from the safe. It is undisputed that there was cash in the safe that was never returned. (Doc. 197-2, p. 196:9-11; Doc. 197-3, p. 61). Defendants themselves concede that the "cash and currency may be presumed to have its face value." (Doc. 161, ¶ 5). Based on consultations with various coin dealers, Plaintiff disputes that the money was only worth face value. (Doc. 162, ¶ 7).Thus, there is a triable issue of fact regarding value of the missing money.

There are also triable issues of fact regarding the value of the missing jewelry. Deitrick, who has been involved in the business of selling her jewelry and other products since the 1970s, is competent and qualified to give her lay opinion of the value of the jewelry. (Doc. 197-2, pp. 5:22, 27-28). When the jewelry was returned, Deitrick prepared a list of items from the safe that remained missing. (Doc. 225-2, pp. 63-65). She subsequently updated the list and added dollar figures she obtained from researching the value of the items. (Doc. 197-2, pp. 129:4-25, 141:9-20; Doc. 197-2, Ex. DD-13). This research was conducted by comparing the cost of similar gemstones found at three different retail jewelry stores and jewelry listed on the internet. (Doc. 197-2, pp. 146:1-148:6, 154:7-16). Deitrick testified that she was able to assess the quality of various stones using a loupe and applying knowledge obtained from decades of experience with jewelry. (*Id.*; Doc. 225-1, p. 60:19-23). Accurate valuation of jewelry, like the coin collection in *Neff*, may be a "science" requiring "technical proficiency." Nevertheless, as in *Neff*, Plaintiff is qualified to give a lay opinion as to the value of her jewelry based upon information obtained from the jewelry market and personal experience as the owner. Thus, Defendants argument attacking the source and sufficiency of Plaintiff's valuation information is unavailing.

Equally unavailing is Defendants' contention that the value of the missing property is too speculative. Defendants point to discrepancies between the lists

itemizing the value of the jewelry and argue that the descriptions and valuations therein are inadequate. As discussed above, the lists are permissibly based upon Plaintiff's opinion as to the value of her property. If properly authenticated and credited by a jury, those lists provide a reasonably certain basis for valuing the stolen jewelry. (*See* Doc. 197-2, Ex. DD-13). It follows that testimony based upon those lists could provide a reasonably certain basis for valuing the jewelry.[11] The accuracy of, discrepancies between, and Plaintiff's confusion as to those lists present questions of fact and credibility that are within the province of the jury and are not susceptible of resolution on summary judgment. *Cf. Dietz v. Consol. Oil & Gas, Inc.*, 643 F.2d 1088, 1093-94 (5th Cir. 1981) (rejecting claim that owner's recollection testimony of growing costs was speculative, even though testimony varied from book of accounts and may have been "sketchy, . . . based on poor memory, and . . . wrong"). If the jury finds that the loss of or injury to Plaintiff's property was the "certain result of [Defendants'] conduct, [then] mere uncertainty as to the precise amount [of damages] is no bar to recovery. *Delahanty*, 464 A.2d at 1257. Indeed, Defendant Robert Yoncuski has admitted in court proceedings and deposition testimony that he stole the safe and removed the items contained therein. (Doc. 225-2, pp. 93-97).

---

[11] *See* Fed. R. Evid. 612 (writing used to refresh witness's memory); Rule 803(5) (recorded recollection read into evidence).

Finally, Defendants point out that there are no receipts, photographs, or written appraisals that prove the existence or value of the missing jewelry. This lack of documentary evidence does not warrant partial summary judgment because Plaintiff has provided testimonial evidence raising triable issues of fact as to the existence and value of the missing items. (*Doc.* 197-2, pp. 145-96).  As the owner of the allegedly stolen property, Plaintiff is certainly competent to give lay opinion testimony as to its value. Should the jury find Defendants liable for conversion of Plaintiff's jewelry, then as "wrongdoer[s] [Defendants] [are] not entitled to complain that [damages] cannot be measured with the exactness and precision that would be possible if the case, which [they are] responsible for making, were otherwise." *Hachmeister*, 181 A. at 190. For the forgoing reasons, it is recommended that partial summary judgment be denied.

## <u>RECOMMENDATION</u>

For the forgoing reasons, it is recommended that Defendants' motion for partial summary judgment be denied.

With respect to partial summary judgment as to the value and replacement costs of the missing jewelry, it is recommended that summary judgment be **DENIED**.

With respect to partial summary judgment as to the value of the missing jewelry, it is recommended that summary judgment be **DENIED**.

## <u>NOTICE OF REPORT & RECOMMENDATION</u>

NOTICE IS HEREBY GIVEN that the Magistrate Judge has entered the foregoing Report and Recommendation.

Any party may obtain a review of the Report and Recommendation pursuant to Local Rule 72.3, which provides:

> **Any party may object** to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition **within fourteen (14) days after being served** with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. **The briefing requirements set forth in Local Rule 72.2 shall apply**.  A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses, or recommit the matter to the magistrate judge with instructions.  M.D.Pa. LR 72.3 (2010). (emphasis added).

Signed on <u>10/28/2014</u>.            *s/ William I. Arbuckle III*
                                        WILLIAM I. ARBUCKLE III
                                        UNITED STATES MAGISTRATE JUDGE