## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONNA DEITRICK, | : | Civil No. 4:06-CV-1556 |
| | : | |
| Plaintiff, | : | (Judge Brann) |
| | : | (Magistrate Judge Arbuckle) |
| v. | : | |
| | : | |
| MARK A. COSTA, *et al.*, | : | |
| | | |
| Defendants, | | |

### REPORT AND RECOMMENDATION
(Joint Motion to Dismiss by Multiple Defendants – Doc. 258)
(Motion to Join by Multiple Defendants – Docs. 358, 360)

### TABLE OF CONTENTS

**INTRODUCTION** .................................................................................................. **2**

**CASE BACKGROUND** ......................................................................................... **3**

**PROCEDURAL HISTORY** .................................................................................. **5**

    **A. The First Stay: February, 2007 – August, 2010** ..................................... **7**
    **B. The Second Stay: May, 2011 – June, 2012** ............................................. **8**
    **C. Discovery Disputes & Motion Practice: July, 2012 – January, 2013** ...... **8**
    **D. Delays, Discovery Disputes, and a Disappearance: 2013-2014** ............. **13**
    **E. Interlocutory Appeal to the Third Circuit: 2014** ................................... **17**
    **F. Withdrawal of Loftus: 2014 – Present** .................................................. **17**

**DISCUSSION** ....................................................................................................... **19**

    **A. The *Poulis* Factors** ............................................................................... **20**
      *1. Extent of Plaintiff Deitrick's Personal Responsibility* ...................... 20
      *2. Prejudice to the Adversary* ............................................................... 24
      *3. History of Dilatoriness* ..................................................................... 27
      *4. Willful or Bad Faith Conduct* ........................................................... 28
      *5. Effectiveness of Alternative Sanctions* ............................................. 32
      *6. Merits of the Claims* ......................................................................... 34
    **B. Balancing the Factors** ........................................................................... **36**

**RECOMMENDATION** ........................................................................................ **38**

**NOTICE OF REPORT & RECOMMENDATION** ............................................... **39**

## INTRODUCTION

In August of 2004, Plaintiff Donna Deitrick was in the process of divorcing Robert Yoncuski. In this lawsuit she claims that property was stolen from her during that divorce. She further claims that police officers, Yoncuski's relatives, and lawyers involved in the divorce acted to facilitate the theft. The case was delayed by a successful criminal prosecution of Robert Yoncuski, a bankruptcy by Deitrick, the dilatory conduct of Deitrick's counsel, ongoing discovery disputes, an interlocutory appeal to the Third Circuit, and, most recently, the precipitous withdrawal of Deitrick's counsel.

Presently before the Court is a Rule 41(b) motion to dismiss filed by several Defendants (Doc. 258) and joined by the remaining Defendants (Doc. 358, 360). Defendants contend the forgoing delays warrant dismissal of the action for failure to prosecute based on Plaintiff's violation of court orders. We find that defendants have been prejudiced by these violations as well as Plaintiff's overall history of dilatoriness. On the other hand, we do not believe that Deitrick—who may have meritorious claims against several defendants—bears personal responsibility for the conduct of her former counsel, attorney Peter Loftus. In light of these and other relevant factors, and taking into account the current posture of the case, it is recommended that the motion be denied.

## CASE BACKGROUND

The following is a concise statement of facts drawn from materials in the record known to this Court. The facts are set forth only to provide contextual and background information and do not constitute factual findings.

On August 13, 2004, Plaintiff Donna Deitrick went to a warehouse owned by her then husband Robert Yoncuski in order to retrieve personal property. (Doc. 198, ¶ 1). At the time, Deitrick and Yoncuski were separated and in the midst of divorce proceedings. (Doc. 197, ¶ 3). At the warehouse, a confrontation ensued between Deitrick, Yoncuski, and several other parties including the police. (Doc. 198, ¶¶ 2-5). The incident culminated in a traffic stop resulting in the detention of Deitrick's vehicle. (Doc. 197-2, pp. 56-83). Later that night, Robert Yoncuski, aided by Defendants Jeffrey Adams, Marianne Adams, and two other individuals, broke and entered the Deitrick's residence and removed a large safe containing money and jewelry. (Doc. 162, ¶¶ 1-2; Doc. 198, ¶¶ 6-11; Doc. 199, p. 3; Doc. 197-2, p. 196:9-10). Two days later, Yoncuski transferred some or all of the safe contents to Keri Balascik and buried the safe on or near the Adams property. (Doc. 196-15, pp. 61, 71; Doc. 196-7, p. 28; Doc. 196-8, pp. 39-40). At some point thereafter, Balascik took the items to Thomas Yoncuski's house.[1] (Doc. 197-5, pp. 13:1-14:13). The next day, Deitrick was involved in a physical altercation with

---

[1] Thomas Yoncuski is the brother of Robert Yoncuski. (Doc. 197-3, p. 8).

Vanessa Long, Robert Yoncuski, and defendant police officers at the Shamokin police station. (Doc. 198, ¶ 18).

On August 25, 2004, Robert Yoncuski gave testimony in state court in which he denied involvement in the removal of the safe and disclaimed any knowledge of the whereabouts of its contents. (Doc. 176, ¶¶ 3, 4). At that time, Defendant Jane Acri represented Yoncuski in divorce proceedings against Deitrick. (Doc. 176, ¶ 3). At the conclusion of the hearing, the Court of Common Pleas for Northumberland County entered an order requiring Yoncuski to return the safe and identify the individuals who participated in its removal. (*See* Doc. 225-2, p. 92). Yoncuski was incarcerated for civil contempt for failure to comply with that order. (*Id.*).

On February 8, 2005, attorney Joel Wiest—who also represented Robert Yoncuski—visited his client in jail and informed him that Jeffrey and Marianne Adams were offered immunity and had implicated him in the theft of the safe. (Doc. 197-3, pp. 64:19-65:20; Doc. 187, Ex. JMA-6). Yoncuski admitted his complicity in the incident. (*Id.*).  The next morning, Thomas Yoncuski delivered black trash bags and a blue tub containing the contents of the safe to Defendant Vanessa Long. (Doc. 197-4, pp. 20:6-22:21). Long then delivered those items to attorney Michael Rudinski. (*Id.*). Later that day, attorney Wiest informed the Court of Common Pleas of Yoncuski's admissions. (Doc. 176, ¶ 6). Yoncuski then

purged himself of civil contempt by acknowledging his involvement in the removal of the safe and naming other persons who were involved. (Doc. 162, ¶ 3; Doc. 225-2, pp. 93-97). The jewelry was eventually returned to Plaintiff but much of it was missing or damaged. (Doc. 162, ¶ 3; Doc. 197-2, pp. 184, 192:18-24, 228:24-229:1).

## PROCEDURAL HISTORY

Plaintiff Donna Deitrick began this case on August 11, 2006 by filing a complaint alleging various federal and state causes of action against numerous defendants.[2] (Doc. 1). Specifically, Deitrick alleges state-law claims for false imprisonment (Count IV), assault and battery (Count V), intentional infliction of emotional distress (Count VI), negligent infliction of emotional distress (Count VII), negligence (Count VIII), negligence per se (Count IX), negligent hiring and supervision (Count X), respondeat superior (Count XI), civil conspiracy (Count XII), conversion (Count XIII), and trespass to chattels (Count XIV). Deitrick also alleges federal claims under section 1983 for deprivation of constitutional rights (Count I) and municipal liability under the Court's decisions in *Monell* (Count II) and *City of Canton* (Count III). The following table summarizes the current status of Plaintiff's claims with respect to each defendant.

---

[2] At the time, the case was assigned to Judge Muir. The case was reassigned to Judge Kane in 2010. (Doc. 72). The matter was thereafter referred to then Magistrate Judge Mannion and, in 2012, to the undersigned Magistrate Judge. (Docs. 89, 138). The case was reassigned to Judge Brann in 2013. (*See* Doc. 266).

| Defendant | Status |
|---|---|
| Shamokin Police Dep't<br>City of Shamokin | All claims (Counts II, III, X, XI) have been dismissed. (Docs. 102, 353) |
| Brown<br>Moore | Voluntarily dismissed from the action on September 13, 2012. (Doc. 157) |
| Nichols<br>Zelinski | All claims (Counts I, IV-IX, XII-XIV) have been dismissed. (Docs. 102, 353) |
| Costa<br>Miner | Excessive force and state-law battery (Counts I, V) are pending. (Doc. 353).<br>The remaining claims (Counts IV, VI-IX, XII-XIV) have been dismissed. (Docs. 102, 353) |
| Searls | Claims premised on negligence are pending (Counts VII-IX).<br>The remaining claims (I, IV, VI, XII-XIV) have been dismissed. (Docs. 102, 353) |
| Acri<br>Balascik | All claims (Counts VI-IX, XII-XIV) have been recommended for dismissal by R&R. (Doc. 362; Doc. 372) |
| Thomas Yoncuski | Emotional distress and negligence per se claims (Counts VI, VII, IX) have been recommended for dismissal by R&R. (Doc. 367).<br>It was recommended that summary judgment be denied with respect to the remaining claims (Counts VIII, XII-XIV). (Doc. 367) |
| Robert Yoncuski<br>Vanessa Long | claims for emotional distress, negligence, conspiracy, conversion, trespass to chattels, false imprisonment, assault and battery (Counts IV-IX, XII-XIV) remain pending. |
| Jeff Adams<br>Marianne Adams<br>Linda Long | Claims for emotional distress, negligence, conspiracy, conversion, and trespass to chattels (Counts VI-IX, XII-XIV) remain pending. |

**A. The First Stay: February, 2007 – August, 2010**

Attorney Peter Loftus entered an appearance on behalf of Plaintiff on November 15, 2006.[3] (Doc. 22). On February 26, 2007, before the first case management conference, the Court granted a joint motion of all parties to stay the case pending disposition of criminal proceedings against Robert Yoncuski. (Doc. 64). Attorney Loftus was ordered to notify the Court within 20 days after completion of the criminal case. (*Id.*).

On June 13, 2008, the Court ordered Loftus to file a status report regarding the criminal proceedings. (Doc. 70). Loftus timely complied seven days later. (Doc. 71). On April 7, 2010, the Court again ordered Loftus to file a status report. (Doc. 73). Loftus timely complied the following day by informing the Court that the matter was set for trial in August. (Doc. 74). On August 19, 2010, Loftus advised the Court that Yoncuski's criminal case had been concluded. (Doc. 76). A Case Management Order issued on November 8, 2010 and trial was set for December of 2011. (Doc. 87).

---

[3] Plaintiff was originally represented by attorney Richard Wilson. On September 1, 2006, attorney Richard Jennings entered an appearance on behalf of Plaintiff. (Doc. 3). Attorneys Wilson and Jennings subsequently withdrew as counsel of record on November 27, 2006. (Docs. 30, 46).

**B. The Second Stay: May, 2011 – June, 2012**

On January 27, 2011, Plaintiff Deitrick filed a bankruptcy petition under Chapter 7 in the Bankruptcy Court for the Middle District of Pennsylvania at Docket 4:11-BK-00542-JJT.  No notice was given to this court until May 11, 2011. (*See* Suggestion of Bankruptcy filed by Counsel for the Adams Defendants, Doc. 103 filed with this court on 05/11/11).

On May 16, 2011, this Court entered an order staying this case pending resolution of Deitrick's bankruptcy petition or a lifting of the automatic stay. (Doc. 108).   Litigation in the bankruptcy court challenged the inclusion of this case as an asset of the bankruptcy estate.  The bankruptcy trustee's motion to abandon this lawsuit as an asset of the bankruptcy estate was eventually granted by the bankruptcy court on April 23, 2012 (See 4:11-BK-00542-JJT, Doc. 117).  Shortly thereafter Deitrick was granted a discharge (See 4:11-BK-00542-JJT, Doc. 122).

On May 16, 2012, Attorney Loftus informed this Court that the bankruptcy was discharged. (Doc. 125).  On June 4, 2012 a new Case Management Order issued (Doc. 126) restarting this case.  Trial was set for February 26, 2013 and the deadline for fact discovery was extended to August 1, 2012. (Doc 126).

**C. Discovery Disputes & Motion Practice: July, 2012 – January, 2013**

Following a discovery conference on July 12, 2012, this Court issued an order instructing Deitrick to authorize the release of certain medical records and

requiring Loftus to respond to interrogatories propounded by Defendant Thomas Yoncuski. (Doc. 138). When Loftus failed to timely respond, another order issued on August 1, 2012 requiring a response to Yoncuski's interrogatories no later than August 20, 2012. (Doc. 147). That order also instructed Loftus to conduct a privilege review and produce certain documents (the "Moro files") responsive to a subpoena issued to Deitrick's former attorney Gregory Moro. (*Id.*). Loftus timely responded to the interrogatories on August 20, 2012 but those responses were not verified by Deitrick. (Doc. 151). The same day, Loftus contacted Defendant Acri to advise her of his progress in obtaining the Moro files. (Doc. 152). One month later, on September 18, 2012, this Court ordered Loftus to file a personal verification by Deitrick for the Yoncuski interrogatories. (Doc. 159). That order also addressed Loftus's failure to timely produce the Moro files: Loftus was instructed to obtain certain information from Moro, inform Defendants of his progress, and produce responsive files already in his possession. (*Id.*; Doc. 160). Loftus only partially complied and untimely filed a required update on the status of the Moro files on October 5. (Doc. 191).

On September 27, 2012, Defendants Linda Long, Vanessa (Yoncuski) Long and Robert Yoncuski filed a motion for partial summary judgment. (Docs. 161-73). Defendant Acri also filed a motion for summary judgment on the same day. (Docs. 175-89).  On October 9, 2012, the City of Shamokin and its employee defendants

filed a motion for summary judgment. (Docs. 193-96). The same day, Defendant Thomas Yoncuski filed a motion for summary judgment. (Docs. 197-200).  On October 19, 2012,[4] attorney Loftus moved for an enlargement of time of 45 days (to December 3, 2012) to respond to these motions due to technological deficiencies and workload constraints he faced as a solo practitioner. (Doc. 204). Seven days later, Defendant Thomas Yoncuski filed a motion (Doc. 209) for discovery sanctions regarding the unverified interrogatories.  Attorney Loftus was ordered to respond to all of these motions[5] no later than November 23, 2012. (Doc. 210).

On November 6, 2012, a discovery order issued regarding the Moro files. (Doc. 211).  Attorney client privilege was deemed waived[6] due to Plaintiff's failure to file a privilege log, as required by this Court's prior orders (Docs. 159, 160).

On November 23, 2012, Loftus moved for another enlargement of time— without determining whether the other parties concurred— to respond to the outstanding motions due to "personal illness and other [pre-scheduled] outstanding

---

[4] This was one day after the deadline to respond to Document 161. It was timely for Document 175 because the supporting brief for that motion was not submitted until September 28.

[5] The brief for the motion for sanctions had not yet been filed when this order issued on November 6. Under Local Rule 7.6, a party opposing a motion has 14 days from service of the movant's brief to submit opposition materials. Defendant Yoncuski ended up filing a brief on November 9.

[6] Since attempts to contact attorney Loftus prior to this order failed, Plaintiff was given 10 days to object by filing a protective order by Nov. 16. None was filed. We also noted that Loftus, having "raised the issue of attorney-client privilege but not properly defended it," had already been given ample opportunity to review the documents and submit a privilege log. (Doc. 211).

matters." (Doc. 213). All moving defendants opposed this motion. (Docs. 214-17). This Court extended the deadline to respond to all pending motions to November 30, 2012, and informed Plaintiff that failure to do so would result in the case being dismissed under Rule 41(b) for violations of court orders. (Doc. 218).

At some point between Friday, November 30, and Sunday, December 2,[7] Loftus filed opposition materials to Acri's motion for sanctions[8] (Doc. 132), Yoncuski's motion for sanctions (Doc. 209), and both September 27 summary judgment motions[9] (Docs. 161, 175). (*See* Docs. 220-23). Loftus noted that some of the materials could not be submitted until December 2 due to an ECF outage from November 30 until December 2, 2012. (Doc. 224). On December 2, 2012, Attorney Loftus also filed an "Emergency Motion for Enlargement of Time" requesting two additional days to complete and file opposition materials to the City of Shamokin and Shamokin employees' motion for summary judgment (Doc. 193). (Doc. 224). Loftus indicated the bulk of the work had been completed but office and workload constraints necessitated additional time.[10] (*Id.*). The opposition materials were ultimately filed on December 4, 2012. (Doc. 228). No materials

---

[7] The exact dates are unclear because Document 225, apparently filed on November 30, appears to have been submitted before the earlier numbered Documents 220-24 dated December 2.

[8] Defendant Acri filed this Rule 11 motion for sanctions against Loftus and Deitrick's original attorney, Richard Wilson, on July 6, 2012. Doc. 132.

[9] Document 223, filed as a brief in opposition to Thomas Yoncuski's Motion for Summary Judgment (Doc. 197), was actually an opposition brief to the joint motion for partial summary judgment, (Doc. 161).

[10] Loftus stated he was dependent upon a part-time secretary to retrieve and file documents on ECF.

were submitted in response to Thomas Yoncuski's motion for summary judgment. Defendants moved to strike all of the forgoing briefs and an expert report. (Docs. 229-31, 233, 241).

On December 20, 2012, a discovery order issued regarding: the Moro files;[11] certain allegedly missing photographs in Deitrick's possession; and, a request for production. (Doc. 246). Attorney Loftus was ordered to produce the Moro files for inspection and copying at a designated neutral site. (*Id.*). Acri was instructed to provide a list of photographs believed to be in Deitrick's possession. (*Id.*). Deitrick was ordered to respond to Acri within fourteen days of service of that list. (*Id.*). Loftus was ordered to file on ECF a copy of Deitrick's verifications to Thomas Yoncuski's interrogatories by January 7, 2013. (*Id.*).

On December 20, 2012, this Court ordered Plaintiff to respond to Defendant Thomas Yoncuski's motion for summary judgment (Doc. 197) by January 7, 2013. (Doc. 245). All case management deadlines (Doc. 126) were suspended and Defendant Balascik was granted leave to file the motion for summary judgment that was subsequently filed on January 4, 2013 (Doc. 254). (Docs. 245, 266). We also invited defendants to submit briefing on the *Poulis* factors in connection with the pending motions to strike. The instant joint motion to dismiss was submitted on January 7, 2013, pursuant to that directive. (Doc. 258).

---

[11] The Moro files were apparently given to Plaintiff Deitrick who then delivered them to attorney Loftus. Doc. 246.

**D. Delays, Discovery Disputes, and a Disappearance: 2013-2014**

This Court issued an order on March 4, 2013, resolving all outstanding procedural motions.[12] (Doc. 272). The motions to strike Plaintiff's untimely opposition materials (Docs. 229-31, 241) were denied. The motion to strike as untimely the expert report (Doc. 233) was denied and Defendants were granted leave to depose Plaintiff's expert and submit counter expert reports.[13] Thomas Yoncuski's motion for discovery sanctions (Doc. 209) was granted.[14] Acri's motion for Rule 11 sanctions (Doc. 132) was denied without prejudice.  Finally, Plaintiff was ordered to respond to Thomas Yoncuski's motion for summary judgment (Doc. 197) and the joint motion to dismiss (Doc. 258) no later than March 29. (Doc. 272).

On March 12, 2013, attorney Loftus moved for an enlargement of time to respond to Acri's discovery motion (Doc. 267) and the joint motion to dismiss (Doc. 258).[15] (Doc. 275). The motion was granted and Loftus was given until April 12 to respond to Documents 267, 254, and 258. (Docs. 279, 280). On April 15, 2013, no response had been filed and we deemed the preceding three motions

---

[12] Acri's motion for discovery sanctions (Doc. 267), which remains pending, was not addressed.

[13] We explained that "given the tortured procedural history of this case, excluding the [expert] report . . . would unfairly prejudice the plaintiff. She should not be penalized for the lack of action by her counsel at this stage." Doc. 272, p. 11.

[14] We noted that "[o]nly after three discovery conferences and three orders [] did the plaintiff provide a properly verified response. . . . The record of delay and inattention by plaintiff and her counsel are inexcusable and they have offered no meaningful excuse." Doc. 272, pp. 9-10.

[15] Loftus indicated he suffered medical conditions requiring admission to the emergency rooms on December 14, 2012, and March 8, 2013. Doc. 275, p. 1.

(Docs. 254, 258, 267) and Defendant Yoncuski's summary judgment motion unopposed. (Doc. 286). That order also addressed discovery disputes relating to the chain of custody of the Moro files and the allegedly missing photographs. (*Id.*). Acri was instructed to obtain an affidavit from Moro regarding the authenticity of the six boxes of files that Loftus produced for copying and inspection. (*Id.*). Regarding the allegedly missing photographs, Loftus was ordered to file, by April 30, an affidavit signed by Deitrick responsive to Acri's January 16 letter.[16] (*Id.*). Loftus was also ordered to file Deitrick's verification to Yoncuski's interrogatories by April 17 and pay previously ordered sanctions[17] to Yoncuski by April 30. (*Id.*).

The following day, Plaintiff's counsel moved for another enlargement of time based on personal and family medical reasons to respond to Acri's motion for discovery sanctions (Doc. 267) and Balascik's summary judgment motion (Doc. 254). (Doc. 287). The motion was granted[18] and Plaintiff was given until May 3, 2013, to file responses to Documents 267 and 254. (Doc. 294). On May 3, attorney Loftus paper-filed responses to Balascik's motion (Doc. 254) and Yoncuski's Motion (Doc. 197). (Docs. 296, 297). The same day, Loftus moved for an enlargement of time—based on computer and network problems preventing access

---

[16] By prior order, Plaintiff was required to respond to the letter by January 30. *See* Doc. 246.

[17] The sanctions were to be paid by either attorney Loftus or Plaintiff Deitrick. (Doc. 272).

[18] Acri and Balascik were provided an opportunity to be heard on their objections to the motion. (Docs. 288, 292, 293). We concluded that granting the motion would not substantially increase any prejudice suffered by Acri and Balascik. Doc. 294. We also advised Plaintiff that no further extensions of time would be granted with respect to Documents 254 and 267.

ECF—to respond to Documents 267 and 258. (Doc. 295). Loftus advised that the

opposition materials would be filed on May 7, 2013. (*Id.*). On May 7, Loftus again

moved for an enlargement of time—based on lack of time due to preparations for a

deposition which was ultimately cancelled—to respond to Documents 267 and

258. (Doc. 299). The motion was retroactively granted and Plaintiff was given until

May 15 to respond to the two motions. (Doc. 304). On May 15, Loftus paper-filed

two "answers" responding to the factual allegations found in each motion. (Docs.

308, 309). Five days latter, Loftus retroactively moved for an enlargement of

time—a computer crashed caused already typed briefs to be lost—to submit the

opposing briefs. (Doc. 312). The briefs opposing Documents 267 and 258 were

submitted the same day. (Docs. 313, 314).

On May 21, 2013, an order issued requiring Plaintiff to: (1) comply with the

instructions set forth in Document 286 regarding the allegedly missing

photographs by May 28 or be precluded from introducing photographic evidence at

trial; (2) reschedule the deposition of expert Gary Smith;[19] and, (3) pay the

previously ordered sanctions[20] to Thomas Yoncuski by May 28. (Doc. 315). On

May 28, Loftus noticed the deposition of Gary Smith and submitted an affidavit

---

[19] The expert cancelled an earlier scheduled deposition because Plaintiff had not paid the retainer. Doc. 315, pp. 3-4.

[20] Attorney Loftus indicated that Plaintiff Deitrick needed additional time to gather the funds. (Doc. 315, p. 4). This was the third time Loftus was informed that he was jointly responsible for payment of the sanctions. *See* Docs. 272, 286.

from Deitrick regarding the allegedly missing pictures.[21] (Docs. 319, 320).  On

July 12, 2013, in response to a request for a discovery conference by Defendant

Acri (Doc. 329), this Court ordered Plaintiff to respond in detail to certain

questions regarding the Moro files within ten days. (Doc. 330). On July 19,

attorney Loftus moved for an extension of time—based on the deadline falling

"within the vacation season"—to respond to Acri's letter. (Doc. 334). Plaintiff was

granted until August 6 to respond. (Doc. 339). Attorney Loftus filed a one page

response on August 5.[22] (Doc. 346). That response was curt, incomplete, non-

cooperative, and suggested Loftus would refuse to confer with Defendant Acri

going forward. (*Id.*).

Two months later, Plaintiff Deitrick mailed a letter dated December 19,

2013, in which she informed this Court that she had been unable to contact

attorney Loftus for the previous two months. (Doc. 350). According to Deitrick,

Loftus's office was listed for sale and his current phone number was disconnected.

(*Id.*). Three days later, we ordered Loftus to contact Deitrick by December 30 and

report the results of that contact. (Doc. 351). No report was filed. On January 7,

2014, Deitrick faxed another letter to the court advising that Loftus still had not

---

[21] Sanctions were to be paid to Thomas Yoncuski the same day. By letter filed May 30, Yoncuski's counsel stated that payment had not yet been received although Loftus had informed him a check would be mailed on the 28th.

[22] The response was initially filed incorrectly as a motion and was ultimately re-filed on August 12, 2013.

contacted her. (Doc. 352). Deitrick expressed concern about the status of her case and believed Loftus had not been keeping up with motions. (*Id.*).

## E. Interlocutory Appeal to the Third Circuit: 2014

On January 23, 2014, the undersigned magistrate judge's report and recommendation (Doc. 333) on City of Shamokin and its employees' summary judgment motion (Doc. 193) was adopted in full by the District Court. (Doc. 353). Neither party had filed objections to the report and recommendation. (*Id.*). However, on February 24, 2014, attorney Loftus appealed that non-final order to the Third Circuit. (Docs. 354, 356). Two days later—and eight weeks after the December 30 deadline—Loftus filed a "Status Report" indicating that he had meet with Plaintiff Deitrick during the first week of January. (Doc. 355).

On August 8, 2014, the Third Circuit dismissed the appeal for failure to prosecute after Loftus failed to file a variety of required materials. (Doc. 357). Three weeks later, defendants Jeff and Marianne Adams, Thomas Yoncuski, and City of Shamokin and its employees filed motions to join the instant joint motion to dismiss. (Docs. 358, 360, 361).

## F. Withdrawal of Loftus: 2014 – Present

In October of 2014, this Court issued report and recommendations (R&Rs) on the motions for summary judgment filed by Defendants Acri (Doc. 175),

Thomas Yoncuski (Doc. 197), Balascik (Doc. 254), and Long (Doc. 161). (Docs. 362, 367, 372, 376). It was recommended that all claims against Acri and Balascik be dismissed. It was also recommended that summary judgment be denied with respect to certain claims against Thomas Yoncuski as well as partial summary judgment as to damages.

On October 6, shortly after the Acri R&R was filed, counsel for certain defendants filed a letter (Doc. 363) informing this Court that the Pennsylvania Disciplinary Board website listed attorney Loftus (Bar. I.D. 9943) as "retired" and that attempts to reach Mr. Loftus have been unsuccessful. On October 16, Loftus informed the court that he had retired from the practice of law in September and turned over Deitrick's entire file to her on October 1. (Doc. 369). There was no indication that he gave her any instructions on how to protect her rights or advance the case. We stayed all pending deadlines and instructed Deitrick to obtain other counsel and file an entry of appearance not later than Monday, November 3, 2014. (Doc. 369).

No entry of appearance was filed and Plaintiff was ordered to appear before the Court on November 4 for instructions on how to proceed *pro se*. (Doc. 378). Counsel for all parties were invited to attend. Without objection from those present, 90 day deadlines were established for the filing of responses to all pending matters in this case. (Docs. 379, 380). These matters included objections to R&Rs

on the summary judgment motions and the instant motion to dismiss, opposition materials to a motion to exclude an expert report, and opposition materials to Defendant Acri's second Rule 11 motion for sanctions. (*Id.*).

## **DISCUSSION**

Rule 41(b) permits a defendant to move to dismiss an action or claim if the plaintiff fails to comply with court orders or the Rules of Civil Procedure. Fed. R. Civ. P. 41(b). A district court's decision to dismiss under Rule 41(b) is reviewed for an abuse of discretion. *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984). That discretion, however, must be exercised by balancing the following six factors: (1) the extent of the party 's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal; and (6) the meritoriousness of the claim or defense. *Id.* Dismissal with prejudice is a drastic sanction that is only appropriate in limited circumstances. *Briscoe v. Klaus*, 538 F.3d 252, 257-58 (3d Cir. 2008). Accordingly, doubts are resolved in favor of reaching a decision on the merits. *Id.*

## A. The *Poulis* Factors

### 1. Extent of Plaintiff Deitrick's Personal Responsibility

The first *Poulis* factor—the extent of Plaintiff Deitrick's personal responsibility—weighs against dismissal. A client's lack of responsibility for their counsel's dilatory conduct, however, is not dispositive because a client cannot always avoid the consequences of counsel's conduct. *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984). Nevertheless, the Third Circuit emphasizes visiting sanctions directly on the delinquent lawyer rather than a client who is not actually at fault. *Adams v. Trustees of New Jersey Brewery Employees Pension*, 29 F.3d 863, 873 (3d Cir. 1994).

Defendants argue that the record reflects Plaintiff's personal responsibility for much of the delay. (Doc. 262, p. 4).  For instance, defendants accuse Deitrick of filing a frivolous bankruptcy petition. (Doc. 262, p. 4). In opposition, Plaintiff correctly notes (but provides no authority or other support) that there is nothing in the materials cited by Defendants that indicate the bankruptcy was frivolous or otherwise fraudulently pursued for the purpose of delaying the instant case. (*See* Docs. 259-1, Ex. 14-17). The materials indicate that Deitrick's brother ended up paying all of her debts, but there is nothing unusual about 100% workout plans in a Chapter 7 bankruptcy. Further, the allegation of a pre-petition fraudulent conveyance and the subsequent settling of that claim—a common subject of

adversary proceedings in bankruptcy—does not mean the bankruptcy itself was fraudulent.  We note also that the bankruptcy court ultimately granted a discharge of Deitrick's remaining debts, an unlikely order in a frivolous or fraudulent case.

More to the point, the materials cited by Defendants indicate that Deitrick entered bankruptcy with an eye towards pursuing the instant litigation.

First, Plaintiff's amended Bankruptcy Schedule C listed this lawsuit as exempt property. The Bankruptcy Court sustained the Trustee's objection to the claimed exemption; the action was thus never removed from the estate and remained subject to the Trustee's control (Doc. 104, Ex. B) until the Trustee's Motion to Abandon this lawsuit as property of the bankruptcy estate action was granted on April 23, 2012 (See 4:11-BK-00542-JJT, Doc 117).

Second, Plaintiff attempted to withdraw the bankruptcy petition in March of 2011—before this court entered a stay of these proceedings. (Doc. 104, para 4, Ex D).

Third, it was Defendants, rather than Plaintiff, who initially moved to stay this case pursuant to section 362 of the bankruptcy code.[23]

Finally, an important component of the Release and Settlement Agreement in the bankruptcy case compromising the controversy between Deitrick and certain

---

[23] It is not clear that this case was even within the automatic stay provisions of section 362. *See Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991) (concluding automatic stay applies only to proceedings against a debtor and does not address actions brought by debtor which would inure to the benefit of the estate).

creditors was the Trustee's agreement to withdraw his objection and allow Deitrick

to proceed with the instant litigation. (Doc. 259-1, Ex. 16).

In sum, other than filing the bankruptcy petition, there is nothing to suggest

that Deitrick is personally responsible for the one year delay occasioned by this

Court's entry of a stay of these proceedings (Doc. 108) in May, 2011.  By contrast,

the delay occasioned by the stay pending Yoncuski's prosecution—for which

Deitrick bears no responsibility—was three and a half years.[24]

The remaining evidence cited by defendants cannot support a finding that

Deitrick was personally responsible for the post-bankruptcy delays caused by

attorney Loftus's untimely filings and noncompliance with court orders.

Defendants point to Deitrick's refusal to sign consents for the release of medical

records in June, 2012 and her delivery of discovery materials four years after filing

suit.[25] (Doc. 262, pp. 4-5). The consent issue was resolved in July of 2012 (Doc.

138) and the delivery of discovery materials four years after filing suit is a logical

consequence of the three and a half year stay pending Yoncuski's criminal

prosecution. In any event, these isolated events occurred prior to September of

---

[24] Defendants argue that this stay was inevitable due to the Fifth Amendment implications of parallel proceedings. (Doc. 325, pp. 11-12). We agree. But the same logic also applies to the second stay. Just as the Fifth Amendment functions to protect the rights of criminal defendants such as Robert Yoncusi, bankruptcy protection—also of constitutional origin—functions to protect the rights of both creditors and debtors.

[25] Defendants also point to Deitrick's verification of allegedly nonresponsive or evasive discovery responses. (Doc. 262, pp. 4-5). No citation, support, or explanation for this statement is provided.

2012 and do not suggest that Deitrick was personally responsible for the missed

deadlines and order violations that began in October of 2012. Defendants also

accuse Deitrick of hiding certain evidence. (Doc. 262, p. 4; Doc. 325, pp. 14-15).

The materials cited, while indicative of attorney Loftus's inattention and delay, do

not warrant an inference that Deitrick was personally concealing evidence or

otherwise responsible for her attorney's failure to comply with discovery orders.

(*See* Doc. 258, p. 28; Doc. 315, pp. 1-3; Doc. 321-1; Doc. 325-3, Ex 88, p. 12).

Finally, there is some evidence—from attorney Loftus— that Deitrick's failure to

pay a retainer fee delayed the deposition of her expert, Gary Smith. (Docs. 300,

301). In light of the short timeline surrounding the scheduling of that deposition

(Doc. 286 at 2), contradictory testimony by the deponent (Doc. 342, para. 11; Doc.

342-1, Smith Dep., p. 71:4-22), Loftus's pattern of delay and dubious last-minute

excuses (Docs. 204, 213, 224, 275, 287, 295, 299, 312) and refusal to accept

personal responsibility for any of the delays in this case (Doc. 314), we give no

weight to attorney Loftus's efforts to blame his client for the cancelled deposition.

Finally, defendants assert that Deitrick was aware of, but failed to correct,

the dilatory conduct of her counsel. (Doc. 262, p. 5). If true, this would support a

finding of personal responsibility. *See Ennis v. New Jersey Bell Tel. Co.*, 782 F.2d

396, 397 (3d Cir. 1985) (affirming district court's finding of personal responsibility

where plaintiff insisted on continued representation despite knowledge of counsel's

health problems and noncompliance with court orders). Defendants, however,

provide no direct evidence in support of this assertion but rather challenge Plaintiff

to produce evidence to the contrary. (*Id.*). Since a finding of personal responsibility

must be supported by the record, Plaintiff was under no obligation to rebut

Defendant's unsupported allegation that Deitrick was aware of Loftus's conduct.

*See Dunbar v. Triangle Lumber and Supply Co.*, 816 F.2d 126, 129-30 (3d Cir.

1987) (holding that district court erred by failing to point to record evidence of

plaintiff's awareness of attorney's conduct). In any event, the evidence in the

record known to this Court suggests Deitrick was not aware of Loftus's conduct

until the end of 2013 when she notified us that Loftus had been out of contact for

several months.[26]

### 2. Prejudice to the Adversary

The second *Poulis* factor—prejudice to the defendants—weighs in favor of

dismissal. Prejudice under this factor need not be irremediable harm that cannot be

alleviated by reopening discovery and postponing trial. *Adams*, 29 F.3d at 874. For

instance, in the discovery context, prejudice includes the deprivation of

information, costs incurred obtaining court orders to force compliance with

---

[26] At the show cause hearing, Deitrick explained she was not computer literate and therefore
could not use the ECF system. Presumably, then, she could not have known of Loftus's late
filings and missed deadlines from the ECF system. With respect to the discovery issues, it
appears that all mailings that would have put Deitrick on notice of Loftus's dilatory conduct
were addressed to Loftus. *E.g.*, Docs. 246, p. 3; 286, p. 5; 274, p. 2; 321-1; Docs. 147, p. 2; 151;
153; 159, p. 2; 220; 246, p. 5.

discovery, and the burden imposed by impeding a party's ability to adequately prepare for trial. *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003); *Adams*, 29 F.3d at 874. Other examples of prejudice are the irretrievable loss of evidence, dimming of witnesses' memories, and excessive and possibly irremediable burdens or costs imposed on the opposing party. *Scarborough*, 747 F.2d at 876. A finding of true prejudice bears substantial weight in support of dismissal. *Id.*

Defendants contend that they have been severely prejudiced by the delays and have expended resources in attempting to move the case along. (Doc. 262, p. 6; Doc. 257, p. 9; Doc. 359, p. 3). For instance, Defendants claim that as a result of Plaintiff's missed deadlines, the case management order setting trial for March, 2013, had to be postponed after defendants had already cleared their calendars for a one month trial. (Doc. 325, p. 18). Additionally, Defendants argue that they will be "profoundly" prejudiced by the disappearance of certain records and the allegedly missing photographs. (*Id.*). Plaintiff rejects, without explanation, that defendants have suffered prejudice from the delays or expended resources in moving the case along. (Doc. 314, pp. 5-6). Plaintiff also accuses the defendants of manufacturing discovery disputes and filing pretextual motions for the apparent purpose of obtaining monetary sanctions. (*Id.* at 2, 5-6).

We find that Defendants have been prejudiced by Plaintiff's failure to comply with court orders, numerous missed deadlines, and inadequate discovery responses. Defendant Thomas Yoncuski's ability to prepare for depositions and trial was impeded by Plaintiff's late and unverified responses to interrogatories. (Doc. 257, p. 9). Yoncuski also incurred costs as a result of the motions and discovery conferences pertaining to those interrogatories. (*E.g.*, Doc. 159). Defendant Acri was likewise prejudiced by the delays and uncertainty surrounding the Moro files and the allegedly missing photographs. (*E.g.*, Doc. 246).

All defendants were prejudiced—in terms of time and money—when the case management deadlines had to be suspended as a result of the numerous extensions of time and missed deadlines associated with Plaintiff's opposition materials to the five summary judgment motions. (*See* Doc. 245). This prejudice was exacerbated when Plaintiff failed to file objections to an R&R on one of those motions only to later appeal the non-final order adopting that R&R. (*See* Docs. 353, 354). All defendants were prejudiced—in terms of time, money, and trial preparation—when Plaintiff submitted an untimely expert report in connection with the summary judgment motions. (Doc. 272, pp. 10-11). All defendants were further prejudiced when Plaintiff's failure to pay a retainer resulted in a last-minute cancellation of that expert's deposition. (*See* Doc. 310, pp. 3-4).  In sum, there is ample evidence that the defendants have been prejudiced by Plaintiff's dilatory and

non-compliant conduct. Plaintiff's unsupported assertion to the contrary is without merit.

### 3. History of Dilatoriness

The third *Poulis* factor—Plaintiff's history of dilatoriness—also weighs in favor of dismissal. Extensive or repeated delay or delinquency constitutes a history of dilatoriness. *Adams*, 29 F.3d at 874.  For instance, consistent non-response to interrogatories or tardiness in complying with court orders supports a finding of dilatoriness. *See id.* On the other hand, conduct that occurs one or two times is insufficient to demonstrate a history of dilatoriness. *Briscoe v. Klaus*, 538 F.3d 252, 261 (3d Cir. 2008). For purposes of this factor, a party's conduct is evaluated over the life of the case. *Adams*, 29 F.3d at 875.

Defendants argue that Plaintiff has missed a "shocking number" of deadlines in this case. (Doc. 262, p. 6).  Plaintiff, pointing to six motions to dismiss and the two stays, responds that it is actually the defendants who have a history of being dilatory. (Doc. 314, p. 6). Plaintiff's response is not relevant because the "shocking number" of missed deadlines of which defendants complain occurred after the second stay had been lifted in 2012. For instance, between October of 2012 and May of 2013, Plaintiff filed at least eight motions requesting an extension of time to file opposition materials to five summary judgment motions and the instant joint motion to dismiss. (Docs. 204, 213, 224, 275, 287, 295, 299, 312). All but two of

the requests were filed on or after previously set deadlines. Despite the fact that all of those extensions were retroactively granted, Plaintiff was ultimately untimely in filing opposition materials to all but one of the summary judgment motions.[27]

Plaintiff's counsel demonstrated a similar pattern of delinquency in opposing motions for sanctions and complying with discovery orders. In sum, Plaintiff's counsel violated court orders by missing extended deadlines or untimely requesting extensions with respect to every motion filed after the second stay was lifted. This extensive and repeated pattern of delay and delinquency constitutes a history of dilatoriness.

### 4. Willful or Bad Faith Conduct

The fourth *Poulis* factor—whether Deitrick or attorney Loftus's conduct was willful or in bad faith—weighs slightly in favor of dismissal. To be sure, at least some of attorney Loftus's dilatory conduct was willful, as the term has been defined in the caselaw. We cannot conclude, however, that Plaintiff Deitrick—who is presently proceeding *pro se*—personally committed, desired, or was otherwise complicit in the missed deadlines and discovery disputes that underlie the instant motion to dismiss.

---

[27] See the Procedural History section, *supra*. Opposition materials to documents 161, 175, and 193 were filed after the extended deadline of November 30, 2012.  Opposition materials to Document 197 came more than a month after the thrice extended deadline of March 29, 2013. Opposition materials to Document 254 were technically timely, but this is so only because we granted an untimely motion to retroactively extend the missed extended deadline to May 3, 2013.

Willfulness or bad faith is almost always required in order for dismissal to be within the scope of the court's discretion. *Estate of Spear v. C.I.R.*, 41 F.3d 103, 111 (3d Cir. 1994). Under this factor, we look for the type of willful or contumacious behavior characterized as "flagrant bad faith" in *NHL*. *Adams*, 29 F.3d at 875. In *NHL*, the Court approved the district court's dismissal of a case after 17 months in which the plaintiffs failed to answer crucial interrogatories despite numerous extensions and broken commitments to the court. *Id.* (citing *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639 (1976) (per curiam)).  More generally, willfulness involves intentional or self-serving behavior. *Adams*, 29 F.3d at 875. In the case of dilatory conduct, an attorney who knowingly takes on an unmanageable caseload and thereby fails to meet deadlines acts willfully. *Wallace ex rel. Wallace v. Novartis Pharma. Corp.*, 984 F. Supp. 2d 377, 389 (M.D. Pa. 2013). By contrast, conduct that is merely negligent or inadvertent is neither contumacious nor willful. *See Briscoe v. Klaus*, 538 F.3d 252, 262 (3d Cir. 2008); *Adams*, 29 F.3d at 875 ("Tardiness not excused for inability is not necessarily willful."); *Bowers v. Nat'l Coll. Athletic Ass'n*, 564 F. Supp. 2d 322, 340 (D.N.J. 2008) ("[A]n attorney's negligent behavior or failure to move with dispatch—even if inexcusable—will not suffice to establish willfulness or bad faith.") (citations and punctuation omitted).

Defendants argue that the nature, frequency, and breadth of Attorney Loftus's delays suggest the dilatory conduct is part of a conscious strategy rather than mere negligence. (Doc. 262, p. 7). Defendants also question the veracity of the myriad excuses and explanations for Plaintiff's repeated noncompliance with deadlines and discovery orders. (Doc. 262, pp. 7-8). According to defendants, those excuses and explanations, if believed, demonstrate self-serving behavior. (Doc. 257, p. 11).

Loftus argues that he "duly explained" all missed deadlines in the requests for an extension of time and that Deitrick has no reason to delay the case. (Doc. 314, p. 7).

We agree that attorney Loftus's conduct was willful. As Loftus has "duly explained," he missed deadlines due to: (1) office and workload constraints he faced as a sole practitioner, (Docs. 204, 224, 299); (2) medical reasons, (Docs. 213, 275, 287); (3) an ECF outage (Doc. 224); (4) computer problems and technological deficiencies (Docs. 204, 295, 312); (4) and the "vacation season" (Doc. 334). Other than the medical reasons, which we believe, Loftus's inability to meet deadlines resulted from his decision as a sole practitioner having limited IT capabilities and a part-time secretary to knowingly undertake a representation involving complex litigation in federal court. By December of 2012, attorney Loftus was admittedly aware that he possessed inadequate time, resources, and technology to timely

comply with deadlines imposed by court orders or rules. (*See* Docs. 204, 224, 245). Yet, over the next six months, Loftus continued to miss deadlines and file untimely requests for extensions of time. Loftus's noncompliance with respect to submitting opposition materials may not have been in bad faith, but it was knowing, chronic, and therefore willful. *See Wallace*, 984 F. Supp. 2d at 389.

By contrast, there is nothing in the record to suggest that Plaintiff Deitrick herself acted willfully or in bad faith. First, we have already found that Deitrick does not bear personally responsibility for the delays in this case. Second, submission of briefs and other opposition materials was attorney Loftus's responsibility and there is no evidence that Deitrick was involved in the numerous missed deadlines and untimely filings. Finally, to the extent Loftus acted willfully and in bad faith with respect to the various discovery disputes, there is no evidence that Deitrick was complicit in such conduct. For instance, it appears that attorney Loftus was solely responsible for violating orders requiring the filing of Deitrick's verification to Yoncuski's interrogatories. (*See* Doc. 159, p. 2; Doc. 246, p. 5; Doc. 253; Doc. 272, p. 10 n. 4; Doc. 286, p. 6; Doc. 314, p. 5). Similarly, the disputes surrounding the Moro files and the allegedly missing photographs are the apparent result of attorney Loftus's intransigence or negligence rather than Plaintiff Deitrick's conduct. (*See* Doc. 159, pp. 4-5; Doc. 211, p. 5; Doc. 246, pp. 2-3; Doc. 286, pp. 2-5; Doc. 315, pp. 2-3; Doc. 346; Doc. 308, p. 5; Doc. 321-1; Doc. 314, p.

4). Nevertheless, since attorney Loftus's conduct was willful, this factor weighs slightly in favor of dismissal.

### 5. *Effectiveness of Alternative Sanctions*

The fourth *Poulis* factor—an evaluation of the effectiveness of sanctions other than dismissal—weighs against dismissal. Dismissal is a sanction of last resort. *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868-69 (3d Cir. 1984). Accordingly, alternative sanctions must be analyzed prior to dismissing a case. *Id.* The most preferable sanctions for a dilatory attorney are imposing costs and fees directly upon the attorney with an order that payment is not to be passed onto the client. *Id.* Evidentiary rulings, such as exclusion of evidence or adverse inference instructions, may also be appropriate in a variety of circumstances circumstances. *See, e.g.*, *Scarborough v. Eubanks*, 747 F.2d 871, 877 (3d Cir. 1984). For instance, a preclusion order may be an effective alternative sanction for failure to identify an expert. *Id.*

Defendants argue that the frequency and breadth of Plaintiff's noncompliance with deadlines—some under threat of sanctions—indicates that lesser sanctions will not be effective. (Doc. 262, pp. 9-10). In light of the departure of attorney Loftus, we do not agree. Attorney Loftus may not have been deterred by the usual sanctions, but we have no basis for finding at this time that Plaintiff Deitrick—who is presently proceeding *pro se*—would fail to comply with

forthcoming orders of this court. First, Deitrick, on her own, personally wrote two letters to this Court in which she expressed concern about the status of her case following her inability to contact attorney Loftus. (Docs. 350, 352).  Second, pursuant to the show cause order dated October 16, 2014, Plaintiff personally appeared before this Court on November 4 to receive instructions on how to proceed *pro se*. (Doc. 379). This personal appearance followed efforts by Deitrick to retain counsel on short notice. (*See* Doc. 378). Third, Deitrick personally represented to this Court that she was aware that Loftus's dilatory conduct had placed her case in a precarious position and that she appreciated the leniency heretofore afforded was at an end. (Doc. 382). We are satisfied that Deitrick understands any further noncompliance or missed deadlines will result in the dismissal of her case with prejudice.

As discussed above, Defendants have certainly been prejudiced as a result of attorney Loftus's dilatory conduct. We believe monetary sanctions against attorney Loftus can be effective and adequate to redress at least some of the prejudice arising from the costs incurred by defendants in bringing various motions and attending discovery conferences. Indeed, various motions for sanctions remain pending. (Docs. 267, 331). Due to the protracted nature of this litigation, however, sanctions against Loftus will be deferred until the conclusion of this case so that

the parties can focus on responding to the pending R&Rs, explore settlement opportunities, and prepare for trial.

Defendants have also suffered prejudice as a result of attorney Loftus's untimely and arguably inadequate discovery responses. For instance, there remains uncertainty surrounding certain boxes of files that are allegedly missing. (Docs. 345, 346). Since Deitrick is now personally in possession of all her files pertaining to this case, we hope she and the remaining defendants, with the assistance of this Court, can quickly and amicably work to resolve those issues. Once those issues have been sorted out, appropriate evidentiary rulings can effectively remedy prejudice defendants suffered as a result of being deprived of information. Similarly, the prejudice resulting from Plaintiff's untimely expert report will be addressed when ruling on the pending motion to preclude that report. (Doc. 342). Accordingly, we conclude that alternative sanctions can effectively remedy the prejudice defendants have suffered to date. Furthermore, we believe that attorney Loftus's withdrawal combined with Plaintiff Deitrick's understanding that future noncompliance will result in dismissal weighs against dismissing the case at this time.

### 6. Merits of the Claims

The final *Poulis* factor—the meritoriousness of Plaintiff's claim—weighs against dismissal. The meritoriousness of a claim is evaluated on the basis of the

facial validity of the pleadings and not on summary judgment standards.

*Scarborough*, 747 F.2d at 875. The test is whether the plaintiff could recover if the

allegations of the pleadings were established at trial. *Poulis*, 747 F.2d at 870.

At this point in the litigation, claims against Defendants Costa, Miner, and

Searls have survived a motion to dismiss and a motion for summary judgment.

(Docs. 102, 353). Further, it was recommended that Defendant Thomas Yoncuski's

motion for summary judgment be denied with respect to claims for negligence,

conspiracy, and conversion. (Doc. 367). While all claims against Defendant Acri

have been recommended for dismissal, the recommendation with respect to civil

conspiracy and conversion was premised on evidentiary considerations rather than

the legal sufficiency of the allegations. (Doc. 362). Finally, all claims against

Defendants Robert Yoncuski, Vanessa Long, Linda Long, Jeff Adams, and

Marianne Adams remain pending.[28] This is sufficient for Plaintiff's claims to be

deemed meritorious for purposes of the sixth *Poulis* factor.

Defendants urge that we "refine" this factor and define "meritoriousness" as

it appears from the record in its entirety. (Doc. 262, p. 12-13). We are bound by

precedent to decline Defendants' well-argued invitation to consider whether

Plaintiff's claims are generally meritorious. *Cf. Poulis*, 747 F.2d at 867 ("Whatever

---

[28] It should also be noted that Defendant Robert Yoncuski was convicted of multiple felonies for conduct giving rise to this case. *See* Doc. 197-3, p. 72; Doc. 272, p. 1 n.1. And that conviction was preceded by Yoncuski's inculpatory testimony in civil divorce proceedings that was facilitated, in part, by the admissions of Jeff and Marianne Adams given pursuant to an immunity agreement. *See* Doc. 197-3, pp. 64:19-65:20; Doc. 187, Ex. JMA-6.

may be the personal views of the district court as to the merits *vel non* of a decision of this court, the district court is not free to "adopt" the dissent."). Since Plaintiff has viable claims against various defendants, this factor weighs against dismissal.

## B. Balancing the Factors

In applying the forgoing factors, there is no magic formula or mechanical calculation. *See Briscoe v. Klaus*, 538 F.3d 252, 263 (3d Cir. 2008). No single factor is dispositive. *Id.* At the same time, not all the factors must be satisfied in order to dismiss a case for failure to prosecute. *Id.*

Here, three factors weigh in favor of dismissal: prejudice to the defendants, a history of dilatoriness, and the willful conduct of attorney Loftus. Three factors also weigh against dismissal: Deitrick's lack of personal responsibility, the effectiveness of alternative sanctions, and the merits of the case.  As discussed above, we believe that sanctions other than dismissal can remedy the prejudice defendants have suffered. Similarly, we feel that Loftus's willful conduct is offset by Deitrick's lack of personal responsibility. Finally, since Deitrick has meritorious claims—and hence has a positive expected recovery at trial—Loftus's history of dilatoriness presently represents a sunk cost. Moving forward, we believe the departure of Loftus and Deitrick's understanding that no further delay will be tolerated permits this case to be expeditiously resolved on the merits.

We therefore recommend that the motion to dismiss (Doc. 258) be denied. The City of Shamokin, Mark Costa, William Miner, Richard Nichols, William Zalinski, Robert Searls, Jeff Adams, and Marianne Adams have filed motions (Docs. 358, 360) to join in the instant joint motion to dismiss (Doc 258) and the brief in support of that motion (Doc 262).  We recommend that the motions to join be granted, but the motion to dismiss be denied.

## RECOMMENDATION

For the forgoing reasons, it is recommended that the motions of City of Shamokin, Mark Costa, William Miner, Richard Nichols, William Zalinski, Robert Searls, Jeff Adams, and Marianne Adams to join in the joint motion to dismiss (Docs. 358, 360) be granted to the extent that the parties are included in the joint motion to dismiss (Doc. 258) and the brief in support of that motion (Doc. 262).

However, it is further recommended that the joint motion to dismiss (Doc. 258) under Rule 41(b) be **DENIED** as to all joining defendants.

By previous order of this court (Doc. 380) all deadlines, including the filing of any objections to this Report and Recommendation have been stayed until February 5, 2015.

Signed on 12/11/2014.　　　　　　*s/ William I. Arbuckle III*
　　　　　　　　　　　　　　　　WILLIAM I. ARBUCKLE III
　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

## NOTICE OF REPORT & RECOMMENDATION

NOTICE IS HEREBY GIVEN that the Magistrate Judge has entered the

foregoing Report and Recommendation.

Any party may obtain a review of the Report and Recommendation pursuant

to Local Rule 72.3, which provides:

> **Any party may object** to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition **within fourteen (14) days after being served** with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. **The briefing requirements set forth in Local Rule 72.2 shall apply**. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses, or recommit the matter to the magistrate judge with instructions. M.D.Pa. LR 72.3 (2010). (emphasis added).

By previous order of this court (Doc. 380) all deadlines, including the filing

of any objections to this Report and Recommendation, have been stayed until

February 5, 2015.

Signed on 12/11/2014.          *s/ William I. Arbuckle III*
                               WILLIAM I. ARBUCKLE III
                               UNITED STATES MAGISTRATE JUDGE