IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONNA DEITRICK, | : | Civil Action No. 4:06-CV-01556 |
| Plaintiff, | : | (Judge Brann) |
| v. | : | |
| MARK A. COSTA, et al., | : | (Magistrate Judge Arbuckle) |
| Defendants. | : | |

**MEMORANDUM**

April 9, 2015

## I.  BACKGROUND

Currently pending before this Court is an objection to Magistrate Judge William I. Arbuckle, III's ("Magistrate Judge Arbuckle") Report and Recommendation (R&R).  (ECF No. 403).  This R&R recommends that summary judgment be granted in favor of Defendant Jane Acri ("Acri").  (ECF No. 362).  There are no genuine issues of material fact and, for the reasons set forth below, the R&R is adopted in its entirety.

**A. Procedural History**

On August 11, 2006, plaintiff Donna Deitrick ("Deitrick") filed a complaint in this Court alleging various causes of action against numerous defendants,

1

including Acri.  (ECF No. 1).  In this complaint, Acri is named in seven counts, including counts of: intentional infliction of emotional distress (Count VI), negligent infliction of emotional distress (Count VII), negligence (Count VIII), negligence *per se* (Count IX), civil conspiracy (Count XII), conversion (Count XIII), and trespass to chattels (Count XIV).  Id.  On June 27, 2012, the case was jointly assigned to Magistrate Judge Arbuckle for resolution of discovery disputes.  (ECF No. 130).  On September 27, 2012, Acri filed a motion for summary judgment on all counts.  (ECF No. 175).

On December 4, 2012, the case was further referred to Magistrate Judge Arbuckle for report and recommendation on all dispositive motions.  (ECF. No. 227).  On October 2, 2014, Magistrate Judge Arbuckle prepared an R&R for the Court recommending that summary judgment be granted in favor of Acri in all respects.  (ECF No. 362).  On October 16, 2014, the deadline for replying to the R&R was stayed until April 2, 2015.  (ECF No. 368).  On April 2, 2015, Deitrick filed an objection to the R&R.  (ECF Nos. 402, 403).

Deitrick objects to the R&R only as it applies to Counts XII, XIII, and XIV.  Id.  Specifically, she objects to Magistrate Judge Arbuckle's conclusion that certain statements constitute inadmissible hearsay which cannot be considered on summary judgment.  Id.  She does not object to the dismissal of Counts VI, VII,

VIII, or IX. Id. Accordingly, after full and independent consideration of the R&R, because this Court agrees with Magistrate Judge Arbuckle's thorough and well-reasoned analysis, the portion of the R&R addressing Counts VI through IX will be adopted in its entirety without further comment.

As will be discussed in detail below, the Court has also reviewed all of the filings in this case related to Counts XII, XIII, and XIV. Magistrate Judge Arbuckle's recommendations to the Court governing all issues related to those Counts are wholly correct and will additionally be adopted in full.

### B. Allegations in the Complaint and Undisputed Facts

The factual background of this case is lengthy and dense, as befits a matter that has stubbornly dragged on for nearly nine years. The Court will adopt the concise statement of relevant facts provided in Magistrate Judge Arbuckle's R&R, which Deitrick likewise adopted without objection. Those facts are as follows:

> On August 13, 2004, Robert Yoncuski, Jeffrey Adams, Marianne Adams, and two other individuals removed a large safe containing money and jewelry from the residence of Yoncuski's then-wife, Plaintiff Donna Deitrick. (Doc. 176, ¶¶ 1-2). On August 15, 2004, Robert Yoncuski transferred some or all of the safe contents to Keri Balascik and buried the safe on or near the Adams property. (Doc. 196-15, pp. 61, 71; Doc. 196-7, p. 28; Doc. 196-8, pp. 39-40). At that time, attorney Jane Acri represented Yoncuski in divorce proceedings against Plaintiff. (Doc. 176, ¶ 3). On August 23 and 25 of 2004, Defendant Acri presented testimony in those proceedings where Robert Yoncuski denied involvement in the removal of the safe and

disclaimed knowledge of the whereabouts of its contents. (Id. ¶ 4). At the conclusion of the hearing on August 25, 2004, the Court of Common Pleas for Northumberland County entered an order requiring Robert Yoncuski to return the safe and identify the individuals who participated in its removal. (See Doc. 225-2, p. 92). On August 27, 2004, Robert Yoncuski was incarcerated for civil contempt for failure to comply with that order. (Id.).

On September 16, 2004, the Pennsylvania State Police interviewed Jeffrey and Marianne Adams regarding the theft of the safe. (Doc. 225-2, pp. 20-21). Both denied being involved in or having knowledge of the incident. (Id.). After those interviews, the Adams contacted Defendant Acri for the purpose of seeking legal advice regarding the police questioning. (Doc. 222-1, ¶ 6; Doc. 222-2, pp. 34-35; Doc. 196-8,. p. 60). Defendant Acri informed Ms. Adams that as Robert Yoncuski's attorney she could not represent the Adams and suggested that they retain other counsel. (Doc. 196-8, pp. 60, 67). Defendant Acri further advised Ms. Adams not to say anything to the police, that the police do not know where the safe is buried, and that the police cannot prove that Robert Yoncuski took the safe. (Doc. 222-1, ¶ 6; Doc. 225-2, p. 35).

On or after January 28, 2005, the Pennsylvania State Police (PSP) contacted the Adams regarding an offer of immunity. (Doc. 222-2, p. 34). At some point thereafter, Attorney Joel Wiest, one of Robert Yoncuski's attorneys, called the PSP and informed them he represented the Adams. (Id.). The PSP informed Wiest that the Adams would be offered immunity in exchange for their cooperation regarding the theft of the safe. (Id.). Wiest acknowledged that he was potentially conflicted due to his concurrent representation of Robert Yoncuski. (Id.). On February 7, 2005, Attorney Dave Noon contacted the PSP to inform them the Adams wanted to cooperate in exchange for immunity. (Id.).

On February 8, 2005, Attorney Wiest visited his client Robert Yoncuski in jail and informed him that the Adams were offered immunity and had implicated Yoncuski in the theft of the safe. (Doc. 196-15, pp. 64-65; Doc. 187, Ex. JMA-6, Wiest Aff.). Yoncuski

4

admitted his complicity in the incident. (Id.). Wiest and Yoncuski informed Defendant Acri of Yoncuski's admissions later that evening. (Id.). On February 9, 2005, Defendant Acri and Attorney Wiest informed the Court of Common Pleas for Northumberland County of Yoncuski's admissions. (Doc. 176, ¶ 6). Yoncuski then purged himself of civil contempt by acknowledging his involvement in the removal of the safe and naming other persons who were involved. (Doc. 225-2, pp. 93-97). The safe and some of its contents were subsequently recovered. (Doc. 176, ¶ 6).

On February 15, 2005, the Adams gave statements to the PSP as part of their immunity agreement. (Doc. 225-2, pp. 34-35). In the police report (dated February 25, 2005) describing Jeffrey Adam's interview, Officer Foura stated:

> [After the police came to their house in September of 2004, the Adams] contacted [Defendant Acri who] told them not to say anything to the police and that the police can not prove that Robert [Yoncuski] has the safe. [Jeffrey Adams] advised that [Defendant Acri] knew that Robert [Yoncuski] stole the safe and where it was buried.

(Id. at 34). Similarly, in the portion of the report describing Marianne Adam's interview, Officer Foura stated:

> [Marianne Adams] advised that after [Officer Foura] came to [the Adams] residence [in September], that they contacted [Defendant Acri] to ask for advice. [Defendant Acri] told them not to say anything, that the Police don't know where the safe is buried and can't prove that Robert took it. [Marianne Adams] advised that [Defendant Acri] knew that Robert [Yoncuski] took the safe and of its whereabouts.

(Id. at 35).

In deposition testimony, Marianne Adams later stated that Defendant Acri never told her that she knew prior to February 8, 2005, that

5

>Robert Yoncuski had taken the safe. (Doc. 196-8, pp. 60-61). Ms. Adams further testified that she had no information suggesting that Defendant Acri had anything to do with or knew about the theft of the safe. (Id. at 48). Interrogatory responses of Ms. Adams are to the same effect. (See Doc. 242-2). Jeffrey Adams, for his part, did not personally speak with Defendant Acri but rather overheard part of Marianne Adam's conversation. (Doc. 196-7, pp. 43-44). Defendant Acri avers that she had no information before the August 13, 2004 theft that Plaintiff's safe would be stolen. (Doc. 179, Ex. JMA-2, ¶ 4). She further asserts that she did not learn her client Robert Yoncuski was involved in the theft until February 8, 2005. (Id. ¶¶ 5-6).

(ECF No. 362, pp. 5-9) (footnotes omitted).

## II. STANDARD OF REVIEW

### A. Summary Judgment

Summary judgment is appropriate when first, there are no material facts in dispute; and second, one party is entitled to judgment as a matter of law. Int'l Union, United Mine Workers of Am. v. Racho Trucking Co., 897 F.2d 1248, 1252 (3d Cir. 1990) (citing Fed. R. Civ. Pro. 56(c)).

A district court may properly grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 248 (1986). "Material facts" are those which might affect the outcome of the suit. Id.

Regardless of who bears the burden of persuasion at trial, the party moving for summary judgment has the burden to show an absence of genuine issues of material fact. Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996) (internal citations omitted). To meet this burden when the moving party does not bear the burden of persuasion at trial, the moving party must show that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial. Jalil v. Avdel Corp., 873 F.2d 701, 706 (3d Cir. 1989) (quoting Chippolini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d. Cir. 1987)); see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). More simply put, a party moving for summary judgment who does not bear the burden of persuasion at trial is not required to negate the nonmovant's claim, but only point out a lack of evidence sufficient to support the nonmovant's claim. Country Floors, Inc. v. P'ship Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1991).

Once the moving party meets its burden of showing an absence of genuine issues of material fact, the nonmoving party must provide some evidence that a issue of material fact remains. Matushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 586 (1986).  The nonmoving party, however, cannot do so by merely offering general denials, vague allegations, or conclusory statements; rather the party must point to specific evidence in the record that creates a genuine issue as to a material fact.  Celotex, 477 U.S. at 32; Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999).

**B.  Deitrick's Objection to the Inadmissibility of Certain Statements**

Deitrick objects to Magistrate Judge Arbuckle's recommendation that Counts XII, XIII, and XVI be dismissed.  (ECF No. 403).  Although Deitrick objects to dismissing three different counts, her objection focuses on a single evidentiary finding, that being Magistrate Judge Arbuckle's conclusion that the contents of a police report detailing statements made by Jeffrey and Marianne Adams was inadmissible at trial, and therefore could not be considered in opposition to summary judgment.[1]  (ECF No. 362, pp. 32-38).  Deitrick argues that the statements contained within the police report are admissible under Federal Rule of Evidence 801(d)(1)(A).  (ECF No. 403).

In a motion for summary judgment, a statement may be relied upon only if that statement would be admissible at trial.  Smith v. City of Allentown, 589 F.3d

---

[1] Magistrate Judge Arbuckle correctly concluded that the police report itself was admissible as a public records exception under Federal Rule of Evidence 803(8); only the contents were inadmissible.  (ECF No. 362, pp. 35-36) (citing United States v. Sallins, 993 F.2d 344, 347 (3d Cir. 1993)).

684, 693 (3d Cir. 2009).  If a party challenges the admissibility of certain evidence, the proponent of that evidence bears the burden of demonstrating that it would be admissible at trial.  See, David by Berkeley v. Pueblo Supermarket of St. Thomas, 740 F.2d 230, 235 (3d Cir. 1984); Bender v. Norfolk S. Corp., 994 F.Supp.2d 593, 399 (M.D. Pa. 2014).  If an objection is proffered, the proponent must demonstrate that "there is more than a 'mere possibility that the evidence will be admissible at trial.'"  Bender, 994 F.Supp.2d at 600.

Hearsay is generally defined as an out of court statement that is offered to prove the truth of the matter asserted in the statement.  See, Fed.R.Evid. 801(a)-(c).  However, an out of court statement is not considered hearsay where a declarant is available to testify and is subject to cross-examination about the prior statement, and the statement: (1) is inconsistent with other statements, (2) was given under penalty of perjury, and (3) was given "at a trial, hearing, or other proceeding or in a deposition[.]"  Fed.R.Evid. 801(d)(1)(A).

In the R&R, Magistrate Judge Arbuckle concluded that "[e]ven assuming [Mr. and Ms. Adams] gave the statements under penalty of perjury, an interview with a police officer pursuant to an immunity agreement does not constitute a 'proceeding' within the meaning of Rule 801(d)(1)(A)."  (ECF No. 362, p. 38).  In reaching this conclusion, the magistrate judge relied on United States v Dietrich,

9

854 F.2d 1056 (7th Cir. 1988), and United States v. Livingston, 661 F.2d 239 (D.C. Cir. 1981). (ECF no. 362, p. 38).

Deitrick argues that the use of this persuasive authority was inappropriate due to the existence of binding authority, specifically United States v. Mornan, 413 F.3d 372 (3d Cir. 2005). (ECF No. 403). Deitrick contends that in Mornan the United States Court of Appeals for the Third Circuit concluded that "a statement, given to a prosecutor and a United States Postal Inspector, was admissible as a prior inconsistent statement." Id. While this general statement may be true, a more thorough reading of Mornan reveals that it is inapposite to this case. In Mornan, the contested statement quite clearly qualified as non-hearsay under Rule 801(d)(1)(A) because it "was given under oath at a prior deposition [at which the declarant] was subject to cross-examination[.]" 413 F.3d at 378 (emphasis added). Because the statement was given at a deposition, there was no dispute as to whether the statement was given at a "proceeding" as contemplated by the Rules of Evidence.

A rigorous search reveals no binding Third Circuit opinions that are on point in this instance.[2] As such, the magistrate judge properly looked to non-

---

[2] Two unpublished opinions indicate that statements such as those at issue here would not be admissible for substantive purposes. See, United States v. Sodano, 592 F.App'x 114, 116-17 (3d Cir. 2014) (finding that a statement made to detectives during an interview at a hospital was not given at a "at a formal proceeding"); United States v. Booker, 375 F.App'x 225, 231 n. 7 (3d

binding cases for guidance. As the court in Livingston noted, Rule 801(d)(1)(A) "seems to contemplate situations in which an official verbatim record is routinely kept, whether stenographically or by electronic means, under legal authority." 661 F.2d at 242 (internal quotations and citations omitted). There, the court observed that, where an interview was conducted by a postal inspector, notes were taken, a written statement was produced, and the declarant read and signed the statement produced, swearing to its accuracy, such formalities provided less assurance that the statement was actually made than the Rules deemed necessary. Id. Thus, in such circumstances, the statement made to an investigating official could not be admitted for substantive purposes. Id. at 242-43.

Similarly, in Dietrich the court concluded that typical police station interviews or interrogations do not contain the necessary procedural protections to qualify as a "proceeding" within the meaning of Rule 801(d)(1)(A). 854 F.2d at 1062. There, an interview conducted by investigating authorities (two Secret Service agents) without any contemporaneous recording or indicia of legal formality did not constitute a proceeding and therefore was inadmissible for substantive purposes. Id. at 1063.

---

Cir. 2010) (statement made by a detective while interrogating individuals at the scene of the crime did not occur "at a formal proceeding"). These cases indicate that some indicia of legal formality is required to create an "other proceeding" within the meaning of Rule 801(d)(1)(A).

11

Here too, Mr. and Ms. Adams were interview in the police station by an investigating officer. There is no indication that the interview was recorded. Rather, the investigating officer took notes of the conversation and recorded them into a police report. Although an attorney was present at the interview, there is no indication of the presence of any required legal formalities. In those respects, the interview differed very little from a typical police station interrogation, and therefore does not qualify as a "proceeding" under the Rules. Consequently, the statements are inadmissible for substantive purposes and cannot be considered on summary judgment.

More importantly though, Deitrick has failed to sustain her burden of demonstrating that the statements were given under oath. There is nothing in the police records themselves that give any indication whatsoever that the interviews were conducted under penalty of perjury. See ECF No. 225-2, pp. 34-35. Furthermore, Deitrick does not contend, in either her brief in opposition to summary judgment or her objections to the R&R, that the statements were given under oath. See ECF No. 222, 403. Given the lack of an affirmative proof that the statements were given under penalty of perjury, the statements simply are not admissible under Rule 801(d)(1)(A). See, United States v. Day, 789 F.2d 1217, 1223 (6th Cir. 1986) (noting that under Rule 801(d)(1)(A) "the complete absence

of affirmative proof that [a statement] was given under an oath that invoked the penalty of perjury" constitutes a "fatal infirmity").

Magistrate Judge Arbuckle concluded that, absent the hearsay statements, there is no admissible proof to sustain Counts XII, XIII, and XIV. (ECF No. 362, pp. 40-43). Given that Magistrate Judge Arbuckle correctly held that the statements were inadmissible, the remainder of his conclusions are both legally and factually sound, and this Court will not rehash that reasoning. Therefore, the R&R is likewise adopted with respect to Counts XII, XIII, and XIV.

### III.  CONCLUSION

In light of the foregoing, the report and recommendation of Magistrate Judge Arbuckle will be adopted in its entirety. Acri's motion for summary judgment will

be granted, Deitrick's claims against her dismissed, and final judgment entered in favor of Acri and against Deitrick on these claims.  Accordingly, Acri will be dismissed as a defendant in this case.

    An appropriate Order will follow.

BY THE COURT:

s/ Matthew W. Brann
Matthew W. Brann
United States District Judge