UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONNA DEITRICK | ) | Civil No.: 4:06-CV-1556 |
|     Plaintiff | ) | |
| | ) | (BRANN, D.J.) |
| v. | ) | (ARBUCKLE, M.J.) |
| | ) | |
| MARK A. COSTA, *et al.*, | ) | |
|     Defendants | ) | |

<u>MEMORANDUM</u>
Defendant T. Yoncuski's Motion for Sanctions (Doc. 453)

I.    INTRODUCTION

On August 11, 2006, Plaintiff Donna Deitrick ("Plaintiff Deitrick") initiated this action against her ex-husband, several of her ex-husband's friends and relatives, and several members of the Shamokin Police Department. In short, this is a civil rights case with related state law claims arising out of a bitter divorce. Plaintiff Deitrick was the victim of the theft of a safe from her home during the divorce. She claims the various defendants in this case conspired to commit or cover up the theft. She also claims that her civil rights were violated by members of the Shamokin Police Department.

Presently before the Court is a Motion for Sanctions filed by Defendant Thomas Yoncuski ("Defendant T. Yoncuski"). (Doc. 453). For the reasons articulated below, is ORDERED that Defendant T. Yoncuski's Motion for Sanctions (Doc. 453) be GRANTED IN PART and DENIED IN PART.

## II. BACKGROUND & PROCEDURAL HISTORY

The agonizing history of this case is well-known to the parties and documented by multiple court orders. Since I write solely for the benefit of the parties, I will dispense with a description of the details and instead will limit my discussion to matters relevant to the current Motion only.

There is no dispute that a safe was stolen from Plaintiff Deitrick's home. However, there is little agreement as to its contents, and more importantly, the *value* of its contents. At some point—either before this lawsuit was initiated or during the pendency of this action—some of the property contained in the stolen safe was returned to Plaintiff Deitrick by the State Police.

The safe held some valuables, including jewelry. There appears to be considerable dispute concerning what jewelry was in the safe when it was stolen, how much of that jewelry was returned by the State Police (and what items are still missing), and the extent of the damage to the jewelry that was returned. Further complicating matters, during the period at issue Plaintiff Deitrick was engaged in the business of buying and selling jewelry at flea markets.

On July 22, 2015, Plaintiff Deitrick was deposed. At her deposition, Plaintiff Deitrick agreed to look for certain financial records—including records of the jewelry brought and sold at flea markets—that were requested during discovery but were never produced, including the following:

o:\arbuckle\drafts\06-1556 (deitrick v. costa et al)\sanction motions\memorandum after hearing on motion of sanctions (doc. 453) (ns edits).docx

Page 2 of 18

a) "Blue chew" book (not produced);

b) Records from Asbestos Removal Control, Inc. ("ARC"), transferred at the finalization of the divorce (various records produced with June 8, 2016, email, but unknown if all such records in the control or possession of Plaintiff were produced);

c) Any other tablet/booklet records of flea markets besides the "blue chew" book; information referenced as being written in at flea market on tablet, and then transferred to the blue chew book (no responsive documents produced);

d) Any other documents utilized in connection with flea market business, either given to the tax preparer or used to supply information to the tax preparer for the flea market business (no responsive documents produced);

e) Records of assets of ARC sold or otherwise disposed of by Plaintiff with respect to the following assets:

   1) Pick-up truck (no responsive documents produced)

   2) Office trailer (no responsive documents produced)

   3) Cargo trailer (no responsive documents produced)

   4) Any other ARC assets which were scrapped, disposed of, sold, or traded by Plaintiff (no responsive documents produced);

f) Records regarding any transfers of property of ARC to Plaintiff with respect to the following:

   1) Transfers of ARC real estate to Plaintiff (Deeds and other documentation were produced)

   2) Transfers of ARC personalty/personal property to Plaintiff (no responsive documents produced);

o:\arbuckle\drafts\06-1556 (deitrick v. costa et al)\sanction motions\memorandum after hearing on motion of sanctions (doc. 453) (ns edits).docx

Page 3 of 18

g) Plaintiff was to mark her July 22, 2015, Deposition Exhibit No. 11 (54 pages of receipts) to indicate whether items referenced therein were sold for scrap or retained by her. Plaintiff was also to provide an Affidavit to verify that she accurately marked the Exhibit No. 11 pursuant to this request. (Neither an Affidavit nor a marked-up Exhibit No. 11 were produced);

h) Provide last name of "Tony" who rented flea market spaces from Plaintiff (not provided);

i) Copy of Plaintiff's 2014 tax return (Copy of Plaintiff's 2014 tax return was not produced. Plaintiff produced only a Tax Return Transcript for 2014);

j) Records regarding any jewelry scrapped or sold to Gary Smith or Adamstown (no responsive documents produced); and,

k) Records of receipts for spaces rented at flea market (Penns Cave rental spaces) (no responsive documents produced)

(Doc. 453, ¶ 7).[1]

On June 10, 2016, I held a telephone conference in this case. During that telephone conference, Plaintiff Deitrick noted that additional discovery responses had recently been provided to Defendants and agreed to promptly file an affidavit

---

[1] On June 19, 2018, Plaintiff Deitrick testified that when she sold items at flea markets and craft shows it was her practice to write down a description of the item sold and the amount of the sale on white loose-leaf paper. When she returned home, Plaintiff Deitrick would then record her sales in a blue notebook. At some point, though it is not clear when, the blue notebook containing all the records from Plaintiff Deitrick's jewelry sales at flea markets and craft shows was destroyed after Plaintiff Detrick's new puppy "Baby" chewed its pages. Thus, it is referred to herein as the "Blue Chew" notebook.

o:\arbuckle\drafts\06-1556 (deitrick v. costa et al)\sanction motions\memorandum after hearing on motion of sanctions (doc. 453) (ns edits).docx

Page 4 of 18

on ECF signed by Plaintiff Deitrick establishing the completeness and deficiencies in her responses. (Doc. 450).

In his Motion, Defendant T. Yoncuski requests that: (1) specific evidence and methods of proof be excluded due to Plaintiff Deitrick's failure to provide this evidence; (2) at trial, the jury be instructed of Plaintiff Deitrick's failure to provide this evidence; and, (3) a modest financial sanction of $750.00 to compensate him for the time and expense of submitting multiple requests to obtain the records promised. I have reproduced his specific requests below:

> 10. Moving Defendant, therefore, requests the following sanctions due to Plaintiff's failure to comply with the June 10, 2016, Order and for failing to cooperate and provide all discovery requested at her July 22, 2015, deposition:
>
>    a) Plaintiff shall be precluded from testifying or presenting evidence regarding damages or value with respect to any item which was allegedly purchased or obtained at a flea market, store, or elsewhere by Plaintiff.
>
>    b) Plaintiff shall be precluded from testifying or presenting evidence regarding any item of damages which is related to the documentation and records which she failed to produce.
>
>    c) Plaintiff shall be precluded from testifying or presenting evidence regarding the value of items based upon alleged receipts, appraisals, or any other documents which have been requested in discovery and not produced by Plaintiff.
>
>    d) The jury will be instructed that Plaintiff failed to cooperate with discovery and failed to produce the requested documentation without a satisfactory

o:\arbuckle\drafts\06-1556 (deitrick v. costa et al)\sanction motions\memorandum after hearing on motion of sanctions (doc. 453) (ns edits).docx

Page 5 of 18

> explanation and, therefore, the jury may find that this evidence would have been unfavorable to Plaintiff's claims with respect to items being stolen, items not being returned, the condition of items returned to her, and the values of items which were allegedly stolen (after being returned to her) or allegedly not returned to her.
>
> e) The jury will be instructed that Plaintiff failed to cooperate with discovery and failed to produce the requested documentation without a satisfactory explanation and, therefore, the jury may find that this evidence would have shown that Plaintiff falsified her tax returns by failing to report income earned for all tax years referenced in discovery requests for which the above referenced records were not produced.
>
> f) Plaintiff shall pay reasonable attorney fees in the amount of $750.00 to Moving Defendant's counsel for the various letters and communications, as well as the preparation of this Motion and supporting Brief, in order to obtain Plaintiff's compliance with the June 10, 2016, Order and cooperation with providing records and other documents requested in discovery.

(Doc. 453, ¶ 10).

On October 10, 2016, Plaintiff Deitrick filed a Brief in Opposition to Defendant T. Yoncuski's Motion for Sanction, in which she admits that certain items could and should be excluded from the trial. (Doc. 455). She also urged the Court to delay a decision on other items until the time of trial. *Id.* I have summarized each of her responses to each of Defendant T. Yoncuski's proposed sanctions below:

**D10a. Plaintiff shall be precluded from testifying or presenting evidence regarding damages or value with respect to any item**

o:\arbuckle\drafts\06-1556 (deitrick v. costa et al)\sanction motions\memorandum after hearing on motion of sanctions (doc. 453) (ns edits).docx

Page 6 of 18

**which was allegedly purchased or obtained at a flea market, store, or elsewhere by Plaintiff.**

**Pl Response:** With respect to the request at 10(a) Plaintiff does not object so long as "elsewhere" does not include items which were allegedly in the safe. Further, the prohibition should not prevent Plaintiff, as she has repeatedly testified during depositions, that she did not sell safe items at the flea market and, further, that such items were what she considered to be "junk."

**D10b. Plaintiff shall be precluded from testifying or presenting evidence regarding any item of damages which is related to the documentation and records which she failed to produce.**

**Pl Response:** With respect to 10(b), Plaintiff's case for damages relates to two areas. The first is the damage to or loss of items from the safe. The second area revolves around the alleged police brutality claims. Plaintiff is not making a claim that the Defendants interfered with the flea market business or ARC. Those two areas appear to be the focus of the deficient discovery. So long as the proposed restriction does not apply to items from the safe or damages related to the police brutality claims, Plaintiff has no objection.

**10c. Plaintiff shall be precluded from testifying or presenting evidence regarding the value of items based upon alleged receipts, appraisals, or any other documents which have been requested in discovery and not produced by Plaintiff.**

**Plaintiff's response:** 10(c) is not problematic to the Plaintiff as previous motion practice in this matter has settled that Plaintiff is entitled to provide her own, independent opinion of value concerning the jewelry in the safe.

**10d. The jury will be instructed that Plaintiff failed to cooperate with discovery and failed to produce the requested documentation without a satisfactory explanation and, therefore, the jury may find that this evidence would have been unfavorable to Plaintiff's claims with respect to items being stolen, items not being returned, the condition of items returned to her, and the values of items which**

o:\arbuckle\drafts\06-1556 (deitrick v. costa et al)\sanction motions\memorandum after hearing on motion of sanctions (doc. 453) (ns edits).docx

Page 7 of 18

**were allegedly stolen (after being returned to her) or allegedly not returned to her.**

**Plaintiff's response:** Plaintiff would suggest that a decision on items 10(d) and 10(e) should be deferred until the parties finalize all jury instructions for the case. In advance, though, Plaintiff would oppose 10(d) as there does not appear to be a connection between the discovery items, which relate to ARC and flea market business records, and items stolen from the safe, not returned, their condition or value. Plaintiff's testimony is that she handled the safe jewelry differently than the flea market jewelry. No doubt defense counsel may have areas of cross-examination and impeachment they will wish to pursue, but it is Plaintiff's position that the requested jury instruction is not merited.

**10e. The jury will be instructed that Plaintiff failed to cooperate with discovery and failed to produce the requested documentation without a satisfactory explanation and, therefore, the jury may find that this evidence would have shown that Plaintiff falsified her tax returns by failing to report income earned for all tax years referenced in discovery requests for which the above referenced records were not produced.**

**Plaintiff's response:** On 10(e), Plaintiff would suggest that this will largely depend on the nature of cross- examination by counsel.

**10f. Plaintiff shall pay reasonable attorney fees in the amount of $750.00 to Moving Defendant's counsel for the various letters and communications, as well as the preparation of this Motion and supporting Brief, in order to obtain Plaintiff's compliance with the June 10, 2016, Order and cooperation with providing records and other documents requested in discovery.**

**Plaintiff's response:** Plaintiff would suggest that this be deferred for post-verdict consideration along with the other sanctions motions.

(Doc. 455, pp. 3-5). Along with her response, Plaintiff Deitrick filed an affidavit in which she admitted that she was not in possession of any records related to the information requested by Defendant T. Yoncuski in his Motion. (Doc. 455-1).

On March 30, 2018, I issued an Order in which I construed Defendant T. Yoncuski's Motion as a motion *in limine* and denied the Motion. (Doc. 467). I also urged Defendant T. Yoncuski and Plaintiff Deitrick to attempt to resolve the outstanding dispute and scheduled a hearing to resolve any remaining disputes, in the event agreement could not be reached. *Id.* In the Order setting the hearing, I instructed Plaintiff to be prepared to and provide an accurate and truthful accounting of the property at issue in this case as outlined in the motion. (Doc. 467).

The parties were unable to reach an agreement as to how Plaintiff Deitrick's failure to turn over the promised documents should be treated at trial.

On June 19, 2018, I held a hearing to assist in resolving this matter. Plaintiff Deitrick was the only witness. During the June 2018 hearing, Plaintiff Deitrick testified about her efforts to locate specific items requested in discovery.

Plaintiff Deitrick's testimony at the June 19, 2018 hearing did little to lessen the confusion around her discovery responses. The first time she was asked to look at a document during her testimony she announced that she forgot her glasses and could not read well without them. She testified frequently that she "did not know" and "could not remember" when asked about specific items of discovery. Her answers about the steps she took to search for missing items after her July 22, 2015 deposition were either vague or confusing, or both. She did say at least three times

o:\arbuckle\drafts\06-1556 (deitrick v. costa et al)\sanction motions\memorandum after hearing on motion of sanctions (doc. 453) (ns edits).docx

Page 9 of 18

that she has a bad memory, and in fairness this case has gone on a long time, and in a lot of different courts. Ultimately her credibility in this case will be determined by the jury.

III. LEGAL STANDARD

Rule 37(b)(2) of the Federal Rules of Civil Procedure authorizes the imposition of sanctions against a party who fails to comply with a discovery order. *DiGregorio v. First Rediscount Corp.*, 506 F.2d 781, 788 (3d Cir. 1974). "The choice of an appropriate sanction generally is committed to the sound discretion of the district court." *DiGregorio v. First Rediscount Corp.*, 506 F.2d at 788 (citation omitted). "Sanctions for violation of Rule 37(b)(2)(A) include orders by the court ranging from designating that certain facts be admitted, to prohibiting the disobedient party from supporting or opposing designated claims or defenses, to monetary damages or even the dismissal of all or part of the action." *Craig v. Kelchner*, No. 3:07-CV-1157, 2010 WL 528331 (M.D. Pa. Feb. 11, 2010) (citing Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii)). In addition, Fed. R. Civ. P. 37(b)(2)(C) provides for the sanction of reasonable expenses including attorney fees against a party failing to comply with an Order.

Moreover, Rule 37(c)(l) provides that sanctions may be imposed for a failure to disclose or supplement discovery responses. "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not

o:\arbuckle\drafts\06-1556 (deitrick v. costa et al)\sanction motions\memorandum after hearing on motion of sanctions (doc. 453) (ns edits).docx
Page 10 of 18

allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(l). "In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." F. R. Civ. P. 37(c)(1)(A-C).

In imposing sanctions, the sanction must be specifically related to the particular claim or claims at issue in the Order to provide discovery violated by the offending party. Furthermore, the Court must "assess the culpability of the offending party and the prejudice to the party seeking sanctions" in determining the appropriate sanction. *Craig v. Kelchner,* Civil No. 3:07-CV-1157, 2010 WL 528331 (M.D. Pa. 2010) (citation omitted).

IV. DISCUSSION

The type of sanctions requested by Defendant T. Yoncuski involve three categories of relief. First, Defendant T. Yoncuski's requests in Paragraphs 10(a), 10(b), and 10(c) of this Motion relate to restrictions on the scope of Plaintiff Deitrick's testimony during trial. Second, Defendant T. Yoncuski's requests in Paragraphs 10(d) and 10(e) of his motion relate to curative jury instructions. Third,

o:\arbuckle\drafts\06-1556 (deitrick v. costa et al)\sanction motions\memorandum after hearing on motion of sanctions (doc. 453) (ns edits).docx

Page 11 of 18

in paragraph 10(f) of his Motion, Defendant Yoncuski requests monetary sanctions in the amount of $750.00 for the expenses outlaid in his attempt to get information from Plaintiff Deitrick about materials that she agreed to look for—and produce, if available. I will address the matter of whether sanctions are appropriate, as well as each category of Defendant T. Yoncuski's proposed sanctions below.

    A.    WHETHER DISCOVERY SANCTIONS ARE WARRANTED IN THIS CASE

Defendant T. Yoncuski argues that sanctions are warranted in this case for several reasons.

First, he argues that Plaintiff Deitrick exhibited bad faith by failing to produce—or provide any information regarding the existence of—the documents she promised to look for during her deposition in July 2015. (Doc. 454, p. 7). Defendant T. Yoncuski sent at least (3) letters to follow up on the representations made by Plaintiff Deitrick regarding the information requested. *Id.* These letters are dated October 22, 2015, January 8, 2016, and May 12, 2016. *Id.*

Second, he argues that Plaintiff demonstrated bad faith because she failed to promptly comply with this Court's Order dated June 10, 2010. (Doc. 454, p. 9) (citing Doc. 450). This Order—which was written to memorialize agreements made during a telephonic conference to address outstanding disputes—states:

> Counsel for the Plaintiff has indicated that he does not intend to seek any additional discovery. Plaintiff's Counsel provided additional discovery responses to all Defendants via Dropbox on June 8, 2016. Plaintiff's counsel promised to promptly provide an affidavit from the

o:\arbuckle\drafts\06-1556 (deitrick v. costa et al)\sanction motions\memorandum after hearing on motion of sanctions (doc. 453) (ns edits).docx

Page 12 of 18

> Plaintiff establishing the completeness or deficiencies in her discovery responses. That affidavit should be filed via ECF and served on all parties.

(Doc. 450, ¶ 2). As of the date Defendant T. Yoncuski filed his Motion, on September 9, 2016, no affidavit had been filed via ECF or served on all the parties. Plaintiff Deitrick did, however, attach the requested affidavit to her response to Defendant T. Yoncuski's Motion for Sanctions. (*See* Doc. 455-1). Plaintiff Deitrick admits that affidavit was not timely filed, and explains that it was not filed due to lack of diligence by Plaintiff Deitrick, but rather by oversight of counsel. (Doc. 455, p. 1).

Third, he argues that the record in this case shows that Plaintiff Deitrick has a history of failing to cooperate with discovery requests, has provided evasive or incomplete discovery responses, and has violated court orders directing her to provide discovery. (Doc. 454, p. 10).

He concludes that Plaintiff Deitrick's conduct has resulted in prejudice to him, and to the other remaining Defendants, as Plaintiff Deitrick's failure to provide this relevant information has interfered with their ability to prepare a defense. *Id.*

In response, Plaintiff Deitrick argues that Defendant T. Yoncuski's Motion for Sanctions should be adjudicated, at least in part, as a motion in limine with

o:\arbuckle\drafts\06-1556 (deitrick v. costa et al)\sanction motions\memorandum after hearing on motion of sanctions (doc. 453) (ns edits).docx

Page 13 of 18

respect to the documents sought in discovery, and concedes that Defendants are entitled to relief in that form. (Doc. 455, p. 3).

In *Craig v. Kelchner*, the case relied upon by Defendant T. Yoncuski, United States District Judge James M. Munley found that the discovery offender was counsel, and not the party.

> There is no question that counsel for defendants is the offending party in this instance. Counsel has significantly taxed judicial resources and is solely responsible for failing to comply with orders of court and completely disrupting the orderly flow of the litigation. In addition, counsel has continuously ignored plaintiff's discovery requests and motions, thereby causing him to incur additional expenses and great inconvenience.

*Craig v. Kelchner*, No. CIV. 3:07-CV-1157, 2010 WL 528331, at *2 (M.D. Pa. Feb. 11, 2010).

I cannot make such a definitive finding in this case. Defendant T. Yoncuski attaches a series of three letters following the deposition of Plaintiff Deitrick, attempting to get the requested information. (Doc. 453, Ex. B). He also notes that Plaintiff Deitrick herself was at the deposition and both heard and agreed to the requests for follow-up information. At the hearing on this matter, and in their responsive brief (Doc. 455, at p. 3) Plaintiff Deitrick's counsel conceded that much of the requested information was not produced.

Plaintiff Deitrick's testimony before me on June 19, 2018. explaining that failure was a series of "I don't know" and "I don't remember" excuses. For

o:\arbuckle\drafts\06-1556 (deitrick v. costa et al)\sanction motions\memorandum after hearing on motion of sanctions (doc. 453) (ns edits).docx

Page 14 of 18

example, regarding the "blue chew book" it appeared from the testimony at the hearing before me that Plaintiff Deitrick sold items at flea markets and craft shows over the years. It was her practice to write down what she sold and the prices on sheets of paper while in the field. When she returned home she would enter the information into a blue notebook. That notebook was provided to her tax preparer and returned to her. How she determined her profit by only recording the sale price is not clear to me from her testimony. It also was not clear if she collected or recorded sales tax on these sales. At some point (it was not clear to me during her testimony if it was before or after her deposition) her new puppy, named "Baby" chewed the blue vinyl notebook, rendering it unreadable. She threw it (the book, not the dog) away, but does not remember when, and apparently did not promptly advise Defendants of that fact. She could not find any records showing the dates she attended shows or made sales and could not remember who exactly she spoke to or when in her attempts to reconstruct her flea market career. These vague, undocumented responses from her deposition, affidavit, and hearing testimony make it impossible for her to be meaningfully cross-examined at trial regarding these sales. That information is relevant on two fronts: 1) her knowledge of values as it relates to the contents of her stolen safe; and, 2) the ability of the Defendants to inquire if any items supposedly in the safe were in fact sold by her. She insists

o:\arbuckle\drafts\06-1556 (deitrick v. costa et al)\sanction motions\memorandum after hearing on motion of sanctions (doc. 453) (ns edits).docx

Page 15 of 18

under oath that items from the safe were not sold at flea markets, but her inability to provide basic information precludes meaningful testing of that assertion.

Without having to reach a conclusion on the truthfulness of those responses, a finding that they are inadequate is clear. Plaintiff Deitrick has failed in her duty to cooperate in accordance with the spirit of Rule 26 of the Federal Rules of Civil Procedure. Federal discovery is premised upon good faith cooperation among the lawyers <u>and</u> the parties. In this case, the rancor that accompanies an unusually bitter divorce has been magnified by criminal charges and counter charges, as well as multiple appeals. Given Plaintiff Deitrick's failure to follow the spirit of Rule 26 throughout the discovery process in this case, I find that some sanction is warranted, but I decline to grant all of the sanctions proposed by Defendant T. Yoncuski.

### B. DEFENDANT T. YONCUSKI'S REQUESTS TO LIMIT PLAINTIFF DEITRICK'S TESTIMONY AS A DISCOVERY SANCTION

Request 10(a) in Defendant T. Yoncuski's Motion is problematic because of the vagary of the final phrase in the request, "… or elsewhere by Plaintiff." The request and Plaintiff Deitrick's response read as follows:

> **10a. Plaintiff shall be precluded from testifying or presenting evidence regarding damages or value with respect to any item which was allegedly purchased or obtained at a flea market, store, or elsewhere by Plaintiff.**
>
> **Pl Response:** With respect to the request at 10(a) Plaintiff does not object so long as "elsewhere" does not include items which were

o:\arbuckle\drafts\06-1556 (deitrick v. costa et al)\sanction motions\memorandum after hearing on motion of sanctions (doc. 453) (ns edits).docx

Page 16 of 18

allegedly in the safe. Further, the prohibition should not prevent Plaintiff, as she has repeatedly testified during depositions, that she did not sell safe items at the flea market and, further, that such items were what she considered to be "junk."

It appears that Plaintiff Deitrick is arguing that the jewelry items in the safe stolen from her home where not like the items that she bought and sold at flea markets or shows. The Motion, response, and testimony at the hearing do not provide a clue as to the source of the jewelry in the stolen safe. Presumably, the parties are aware of a different explanation for those items, but the court is not. Choices that come to mind are gifts, inheritance, or she manufactured them herself. However, I am unwilling to speculate as to the meaning of Defendant T. Yoncuski's "…or elsewhere" request. As such, Defendant T. Yoncuski's proposed sanction 10(a) must be denied.

Requests 10(b) and (c) are similar and appear to be aimed at Plaintiff Deitrick's "hobby" of buying and selling costume or "junk" jewelry. I agree that Plaintiff Deitrick should be precluded from testifying or presenting evidence regarding the value of items based upon alleged receipts, appraisals, or any other documents which have been requested in discovery and not produced by her. As such, I will impose Defendant T. Yoncuski's proposed sanctions 10(b) and 10(c).

### C. DEFENDANT T. YONCUSKI'S REQUEST FOR CURATIVE JURY INSTRUCTIONS AS A DISCOVERY SANCTION

Issues regarding jury instructions are best left until the final pre-trial conference or the actual trial. If I am the trial judge, I will request any proposed

o:\arbuckle\drafts\06-1556 (deitrick v. costa et al)\sanction motions\memorandum after hearing on motion of sanctions (doc. 453) (ns edits).docx

Page 17 of 18

non-standard jury instructions be submitted at least one week before the final pre-trial conference and will resolve as many as possible at the final pretrial conference.

### D. DEFENDANT T. YONCUSKI'S REQUEST FOR FINANCIAL SANCTIONS

The issue of financial sanctions is best left until after the trial. It is clear that Plaintiff Deitrick has been less than forthcoming with discovery and that some sanction is in order for the unnecessary delay. Who is responsible for those delays is not so clear. Defendant Yoncuski may renew his request for financial sanctions regarding this discovery motion (Doc. 453) after the trial. Fed. R. Civ. P. 37(a)(5) will apply.

An appropriate Order will follow.

Date: February 5, 2019    BY THE COURT

*s/William I. Arbuckle*
William I. Arbuckle
U.S. Magistrate Judge