IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONNA DEITRICK, | ) | Civil No.: 4:06-CV-1556 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | (Magistrate Judge Arbuckle) |
| | ) | |
| MARK A. COSTA, *et al.,* | ) | |
| Defendants | ) | |

## MEMORANDUM OPINION
*Defendants' Motion To Bifurcate Trial (Doc. 503)*

## I.    INTRODUCTION

On May 24, 2019, the remaining police Defendants –Mark Costa and William Miner ("Moving Defendants")—filed a Motion to Bifurcate in which they ask that all remaining claims against them be tried separately. (Doc. 503). Along with their Motion, Moving Defendants filed a Brief in Support. (Doc. 504).

Defendants' Jeff and Marianne Adams concurred in the Motion. (Doc. 503-1). Defendants Robert Yoncuski, Vanessa Long, and Linda Long filed no response, and are therefore deemed not to oppose this Motion. *See* L.R. 7.6 (explaining that any party who fails to file a brief in opposition "shall be deemed not to oppose such motion.").

On June 5, 2019, Defendant Thomas Yoncuski filed a brief in opposition. (Doc. 506). On June 6, 2019, Plaintiff Donna Deitrick filed a brief in opposition. (Doc. 507).

For the reasons explained herein, Defendants' Motion for a bifurcated trial will be Granted. Counts I (Excessive Force only by Costa and Miner) and Count V (Assault & Battery by Costa, Miner, R. Yoncuski and V. Long) will be severed for a separate trial in October.

## II.    DISCUSSION

The question of severance is fact intensive and left to the sound discretion of the trial court.  Severance of claims for separate trials is governed by Rule 42(b) of the Federal Rules of Civil Procedure, which states:

> For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

Every civil trial contains questions of liability and damages, and the decision whether to bifurcate the trial must be based on the particular facts of the case. *Lis v. Robert Packer Hosp.*, 579 F.2d 819, 824 (3d Cir. 1978). The decision to bifurcate is left in the trial court's discretion and must be decided on a case-by-case basis. *Idzojtic v. Pa. R.R. Co.*, 456 F.2d 1228, 1230 (3d Cir. 1972). In exercising such discretion, the court "must weigh the various considerations of convenience, prejudice to the parties, expedition and economy of resources." *Emerick v. U.S. Suzuki Motor Corp.*, 750 F.2d 19, 22 (3d Cir. 1984). The moving party bears the burden of establishing that bifurcation is appropriate. *Innovative Office Prods., Inc. v. Spaceco, Inc.*, No.

50–04037, 2006 WL 1340865 at *1 (E.D. Pa. May 15, 2006) (citing *Spectra–Physics Lasers, Inc. v. Uniphase Corp.*, 144 F.R.D. 99, 101 (N.D. Cal. 1992)).

The moving party bears the burden of showing that bifurcation is appropriate given the specific facts and issues present in a case. *Cooper v. MetLife*, 2013 WL 4010998, *2. "Specifically, the court is to consider: (1) whether the issues are significantly different from each other; (2) whether they require separate witnesses and documents; (3) whether the nonmoving party would be prejudiced by bifurcation; and (4) whether the [moving] party would be prejudiced if bifurcation is not granted." *Id.* (*citing Reading Tube Corp. v. Emp'rs Ins. of Wausau*, 944 F.Supp. 398, 404 (E.D. Pa. 1996)). *See, Griffith v. Allstate Ins. Co*., 90 F. Supp. 3d 344, 346 (M.D. Pa. 2014).

"As many decisions make clear, the court may . . . [order a separate trial of any claim] in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Wright & Miller, 9A Fed. Prac. & Proc. Civ. § 2387 (3d ed.). A separate trial order under Rule 42(b) is interlocutory and non-appealable. *See In re Lieb,* 915 F.2d 180, 185 (5th Cir.1990); *Gaffney v. Riverboat Servs. of Indiana*, 451 F.3d 424 (7th Cir. 2006), *cert denied* 594 U.S. 1111 (2007).

This case arises from a series of incidents that occurred in August of 2004. Four distinct events over the weekend of August 13-16 and the aftermath spawned

over a decade of litigation in the criminal, PFA and divorce Courts of Northumberland County, the Pennsylvania Superior Court, the Federal Bankruptcy Court, this Court, and two unsuccessful appeals to the Third Circuit. From the various records in this court I discern the following facts.

Plaintiff Donna Deitrick and Defendant Richard Yoncuski were married in 1974. Thirty years later, in 2004, Plaintiff Donna Deitrick filed for Divorce (Docket of Northumberland County Common Pleas, No: CV-04-1012). Donna Deitrick also sought and received a Protection From Abuse Order against Defendant Richard Yoncuski, giving her exclusive possession of the marital residence (Docket of Northumberland County Court of Common Pleas No. CV-04-984).

On Friday, August 13, 2004, Police Officers Costa and Zelinski were dispatched to a warehouse on North Carbon Street in Shamokin (the Warehouse incident) to investigate a burglary in progress (Doc. 196-12). They found a box truck backed up to the building. Plaintiff Donna Deitrick told them that the building and the truck belonged to her and her husband. Defendant Robert Yoncuski showed up shortly after the police arrived and told Defendant Costa "in an irate manner" that the truck and the building belonged to him. He also told them that the truck had no insurance. Donna Deitrick got into the box truck and drove away.[1]

---

[1]     Police dispatch ran the plate and determined that the box truck was in fact registered to ARC Inc. (Doc. 196-16, p. 2).

Defendants Costa and Zelinski pursued her and conducted a traffic stop in the 300 block of West Spruce Street (the "traffic stop" incident). Defendant Robert Yoncuski arrived at the traffic stop. After some discussion Defendant Costa told them that because of the divorce, the question of ownership was a "civil issue" (Doc. 196-12, p. 3). According to Defendant Costa both parties agreed that the box truck would be driven by him to the police station where it would be "secured." Apparently, no citations were issued that evening.

Donna Deitrick called a friend for a ride to her home after the truck was driven away by Defendant Costa. She arrived home late that evening to find her front door broken open and a large safe missing. She reported the burglary and theft to the State Police (the "Burglary Incident").

The following Monday, August 16, 2004, Donna Deitrick and her brother, Ken Deitrick, along with a friend, went to the Shamokin Police Department to recover the truck. Waiting in the lobby was Defendant Vanessa Long. Descriptions of what occurred differ, but all agree that a fight broke out between Vanessa Long and Donna Deitrick (the "Shamokin Police Lobby Incident") (Doc. 196-19). Robert Yoncuski was in a police station interview room with Chief Nichols and Officer Costa when the disturbance broke out. They all rushed into the lobby and Robert Yoncuski and Ken Deitrick began fighting.

Once the police separated the parties Vanessa Long was advised she would receive a citation for disorderly conduct and left. (Doc. 196-19, p. 3).[2] According to the officers, Donna Deitrick refused to go into the interview room to be issued her citation and had to be physically removed from the lobby. Donna Deitrick claimed that she was injured, and EMS was called. She was taken to the hospital for a "precautionary exam" and then returned to police custody. She was taken before a Magisterial District Judge and charged with Disorderly Conduct, Harassment, and Resisting Arrest. (Doc. 196-19).

From the depositions in this case it appears that Robert Yoncuski called his sister, Defendant Marianne Adams the night of August 13, 2004 and asked for her help. They and some others went to the marital residence that had been shared by Donna Deitrick and Robert Yoncuski, broke in, and removed the safe. The safe was later buried on a farm belonging to Defendants Marianne and Jeff Adams. At some point Defendant Robert Yoncuski gave two large black garbage bags filled with jewelry to his niece, Keri Balascik. She promptly left the two bags with her Uncle, Defendant Thomas Yoncuski, Defendant Robert Yoncuski's brother.

---

[2]     Nothing in the record in this case suggests Defendant Long (identified as Vanessa Kleman in the police report) ever received a citation. Similarly, a search of the Pennsylvania Magisterial District Court and Common Pleas Court dockets does not suggest that Defendant Long was ever charged. *See* Unified Judicial System of Pennsylvania Web Portal, https://ujsportal.pacourts.us.

According to Pennsylvania Court records[3], on October 5, 2004, Plaintiff

Donna Deitrick pleaded guilty to Disorderly Conduct and Harassment.

*See Commonwealth v. Deitrick,* MJ-08303-CR-0000287-2004 (M.D.J.Ct.

Northumberland Cty.). The Resisting Arrest charge was dismissed. *Id.*

On January 28, 2005, Defendant Robert Yoncuski was charged with Burglary,

Theft, and related offenses for the August 13 theft of the safe. *Commonwealth v.*

*Yoncuski,* MJ-08303-CR-0000042-2005 (Magis. Ct. Northumberland Cty.). On

---

[3]     The court may take judicial notice of adjudicative facts that are not subject
to reasonable dispute because they are "generally known within the trial court's
territorial jurisdiction," Fed. R. Evid. 201(b)(1), or because they "can be
accurately and readily determined from sources whose accuracy cannot
reasonably be questioned." Fed. R. Evid. 201(b)(2).

     A state court docket by its very nature can be accurately and readily
determined, and the accuracy and authenticity of the docket cannot reasonably be
questioned. Courts in the Third Circuit have held that a court may take judicial notice
of dockets or other court opinions at the motion to dismiss stage. *In re Congoleum
Corp.*, 426 F.3d 675, 679 (3d Cir. 2005) ("We take judicial notice of the state court
proceedings insofar as they are relevant."); *see, e.g.*, *In re Trichilo,* 540 B.R. 547,
549 (Bankr. M.D. Pa. 2015) (taking judicial notice of the docket in an underlying
case); *Mollett v. Leith*, No. CIV.A. 09-1192, 2011 WL 5407359, at *2 (W.D. Pa.
Nov. 8, 2011) *aff'd sub nom. Mollett v. Leicth*, 511 Fed. Appx. 172 (3d Cir. 2013)
("A court may also take judicial notice of the docket in Plaintiff's underlying
criminal trial."); *Carroll v. Prothonotary*, No. 08-1683, 2008 WL 5429622, at *2
(W.D. Pa. Dec.31, 2008) (taking judicial notice of court records and dockets of the
Federal District Courts). *Hadesty v. Rush Twp. Police Dep't*, No. CV 3:14-2319,
2016 WL 1039063, at *5 (M.D. Pa. Mar. 15, 2016).

     The docket and documents in Deitrick and Yoncuski's criminal cases are
public records of which we can take judicial notice. *See Hadesty v. Rush Twp.
Police Dep't.*, No. 3:14-2319, 2016 WL 1039063, at *5 (M.D. Pa. Mar. 15, 2016).

March 5, 2005, the State Police returned some jewelry in black plastic bags to Plaintiff Deitrick. On May 12, 2005, Defendant Robert Yoncuski was charged with Perjury for denying, under oath in the divorce case, his role in taking the safe. *Commonwealth v. Yoncuski,* CP-49-CR-0000621-2005 (C.P. Northumberland Cty.). On September 21, 2007, Defendant Robert Yoncuski was sentenced for one count of perjury. *Id.* On August 10, 2010, he pleaded guilty to Criminal Trespass and Receiving Stolen Property relating to the theft of the safe and its contents. *Commonwealth v. Yoncuski,* CP-49-CR-0000325-2005 (C.P. Northumberland Cty.).

At trial in this case the four incidents (warehouse, traffic stop, burglary, and police lobby) will be relevant to all defendants.[4] The extent of Plaintiff Deitrick's physical injuries, the person or persons who inflicted those injuries, and the necessary follow-up medical care will be relevant only to the Moving Defendants plus Defendants Robert Yoncuski, and Vanessa Long (now Vanessa Yoncuski). Follow up mental health treatment will have to be apportioned between the police station injuries (if any) and the actions of the other defendants in the burglary and theft of the safe contents.

---

[4] Moving Defendants argue that their subjective intent is not relevant to the lobby incident and any injuries. While I believe that is correct as to the section 1983 claim (the use of force must be objectively excessive and unreasonable under the circumstances), the intent of the officers may be relevant to the state law battery claim. *See, Justice v. Lombardo,* ___ A.3d ___, 2019 WL 2324277 (Pa., decided May 31, 2019).

By far the more financially significant claim in this case is the loss of jewelry, cash, and other valuables Donna Deitrick claims were stored in the safe and not returned. She has provided a comprehensive list of the items she claims were in the safe when it was taken (Doc. 172). She claims there was $537,000 in cash in the safe, none was returned. She claims there were at least $34,000 in rare coins and bills in the safe that were not returned. In addition, she has asserted in her list that over 800 items of jewelry were in the safe. I have not been able to find in this record which or how many of those jewelry items were returned to her. The value and number of the items taken and not returned is <u>not</u> relevant to the case against the Police Defendants.[5] However, each of the remaining civilian defendants are charged with either directly or indirectly participating in the theft. Some have filed cross claims against each other for any responsibility in the theft. It is conceivable that each civilian defendant will want to cross-examine Plaintiff Donna Deitrick about the existence and value of each of the 848 total items she claims were in the safe.[6]

A significant amount of trial time will be consumed by proof of the theft, recovery of some of the property, and the existence and value of the unreturned

---

[5] Earlier in this case summary judgement was granted in favor of the police defendants for any claim that they participated in a conspiracy to help steal the safe or where otherwise involved in the theft (Docs. 333, 353).

[6] I ruled earlier that Ms. Deitrick, as the owner of the jewelry and other property, was competent to give her opinion of the value of those items (Doc. 367, pp 45-46).

property. Testimony about the four "events" will be admissible at both trials, if two trials are held. Testimony about physical injury and treatment to Plaintiff Donna Deitrick will be admissible against the Police Defendants and Defendants Robert Yoncuski and Vanessa Long (Yoncuski) only. Testimony about any psychological injury and treatment will be admissible against all defendants.

Requiring overlapping witnesses to appear in two trials will present an additional burden to the witnesses. Plaintiff Donna Deitrick will have to provide proof of injury and at least her psychologically related medical expenses in both trials if severance is granted. Two trials will require the court to hear some evidence twice.

The Moving Defendants make two strong arguments for separate trials. First, they should not endure the expense of having to sit through testimony about the theft and value of the damaged and unreturned property. Second, any ill will created by the theft may be transferred to them by the jury.

My review of the complaint (Doc. 1) indicates that the following relevant facts have been alleged as it relates to the August 16, 2004 incident at the Shamokin police station.

**Introductory Facts**

*Description of Vanessa Long (Yoncuski) and Robert Yoncuski use of force:*

95. The Defendant Robert Yoncuski and the Defendant Vanessa Long were at the police station at that date and time (August 16, 2004).

96. The Defendant Robert Yoncuski was talking to the Defendants Nichols, Miner and Costa.

97. The Defendant Vanessa Long physically attacked the Plaintiff without provocation.

98. The Plaintiff was knocked backward, hitting her head on a window and then against a water cooler, before being knocked to the floor due to the unprovoked contact by the Defendant Vanessa Long.

99. Ken Deitrick attempted to separate the Plaintiff and the Defendant Vanessa Long.

100. The Defendant Robert Yoncuski grabbed Ken Deitrick from behind and threw him to the ground.

101. The Defendant Nichols then grabbed the Plaintiff by putting his arm around her throat, strangling her, and cutting off her air and ability to breathe.

102. The Defendant Robert Yoncuski and the Defendant Vanessa Long then were allowed to leave the police station by the Defendants Nichols, Costa and Miner.

*Description of Station Excessive Force by Police*

108. The Defendants Costa and Miner complied, grabbing the Plaintiff's arms and dragging her to a cell despite her assertions that she was able to walk on her own at that point.

109. The Defendants Costa and Miner threw the Plaintiff in a cell on a concrete floor.

111. The Plaintiff was not faking, but instead had suffered injuries to, but not necessarily limited to, her throat, neck, arm and shoulders; the Plaintiff's voice had become raspy and she was unable to clear her throat. The Plaintiff had to undergo physical therapy for her injuries and eventually had to have a rotator cuff repaired as it had been torn in the front. These injuries are a direct and proximate result of the efforts of the Defendants Nichols, Costa and Miner in detaining and/or assaulting the Plaintiff as set forth above.

With those alleged facts in mind we turn to the specific allegations contained

in Counts I and V of the complaint.

**Count I (Costa & Miner Excessive Force on August 16, only part of claim left)**

125. The Defendants Costa, Miner, and Nichols are "police officers" as Pennsylvania law defines that term. As such, they acted under color of law in detaining and/or injuring the Plaintiff as set forth herein.

126. At no time did the Defendants Costa, Miner, and Nichols, and Searls, alone or in combination, believe that the Plaintiff had committed a crime that justified her arrest.

127. At no time did the Defendants Costa, Miner, and Nichols, alone or in combination, believe that the Plaintiff had committed a crime that justified the use of force as set forth above.

128. At no time did the Defendants Costa, Miner, and Nichols, alone or in combination, believe that the Plaintiff was the only person fighting who had committed a crime.

129. The Plaintiff has a right not to be detained in a fashion this intrusive in nature absent probable cause.

130. The detention of the Plaintiff was an unnecessary, unreasonable, and unlawful arrest in violation of, inter alia, the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. It was without probable cause or other legally sufficient justification and the Defendants to whom this Count pertains had no reasonable suspicion that the Plaintiff's arrest required this use of force, and it was without due process.

131. The detention of the Plaintiff on March 13, 2004 was illegal; at no time did the Defendants Costa, Miner, Zelinski, Nichols, and Searls, alone or in combination, believed that they had any justification to detain her. Rather, they detained her to distract her so that the Defendant Robert Yoncuski and other defendants could fulfil the plan of stealing the safe.

132. A less intrusive arrest or detention could have been used that would have yielded the same results absent injury to the Plaintiff.

133. All of the Defendants to whom this Count pertains knew or should have known that their conduct violated the Constitutional rights of the Plaintiff.

134. None of the Defendants to whom this Count pertains restrained, detained, or arrested the Defendant, Vanessa Long, or the Defendant Robert Yoncuski.

135. As a proximate result, the Plaintiff suffered injuries and will continue to do so in the future and seeks compensatory damages for same.

136. The Plaintiff further seeks punitive damages under this claim for relief.

**Count V Assault & Battery (Costa, Miner, Robert Yoncuski & Vanessa Long)**
(Battery only by Costa & Miner; Assault &Battery against R Yoncuski & V Long)

153. As set forth herein, the Defendants to whom this count pertains, in their official and/or individual capacities, and without legal justification, took actions toward the Plaintiff that constituted an unwanted and offensive contact, or reasonably placed the Plaintiff in the immediate apprehension thereof, and did in fact make such an unwanted and offensive contact with the Plaintiff, or place her in the immediate apprehension thereof. Such conduct constitutes the torts of assault and battery.

154. As a proximate result of this assault and battery, the Plaintiff suffered extreme injury to mind and body and will continue to do so in the future. The Plaintiff further seeks punitive damages under this claim for relief.

These are the only claims that allege physical injury to the Plaintiff's person.

They can be severed from the main trial of this case and proceed as a separate trial

without undue hardship to the parties or the orderly presentation of the case.

III. CONCLUSION

For the reasons explained herein, Defendant Costa and Miner's Motion to

Bifurcate is GRANTED. An appropriate order will follow.

Date: July 3, 2019                    BY THE COURT

                                      *s/William I. Arbuckle*
                                      William I. Arbuckle
                                      U.S. Magistrate Judge