IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONNA DEITRICK | ) | Civil No.: 4:06-CV-1556 |
|     Plaintiff | ) | |
| | ) | |
|     v. | ) | (Arbuckle, M.J.) |
| | ) | |
| MARK A. COSTA, *et al.* | ) | |
|     Defendants | ) | |

<u>MEMORANDUM OPINION ON MOTIONS TO AMEND JUDGMENT AND
ALTERNATIVELY FOR A NEW TRIAL</u>
(Docs. 644, 646, & 648)

CONTENTS

I.  INTRODUCTION ................................................................................2

II.  THE ALLEGATIONS OF ERROR ....................................................5

  A.  The jury charge "wrongful conduct of Defendant makes damage calculation difficult." ...........................................................................................5

  B.  Non-economic damages for humiliation and pain and suffering, where there was no evidence of physical injury or impact. ......................................8

  C.  Permitting Plaintiff to testify as to the value of the contents of the safe. ......16

  D.  Punitive Damages not supported by underlying claims and violate the 14th Amendment. .................................................................................19

  E.  Use of "security tape" call to cross exam Robert Yoncuski. .........................21

  F.  Use of "security tape" call as only basis for liability of Vanessa Yoncuski. .24

  G.  Damages for injuries incurred at the police station. .......................................25

III.  CONCLUSION ...............................................................................28

## I. INTRODUCTION

All Defendants from the trial ending with a verdict on September 25, 2019 (Doc. 602)[1] except Linda Long have filed Motions for New Trial or in the Alternative to Amend the Judgment. The Court may alter or amend a judgment pursuant to Fed. R. Civ. P. 59(e), otherwise known as a motion for reconsideration. *See Keifer v. Reinhart Foodservices, LLC.*, 563 F.App'x 112, 114 (3d Cir. 2014). "A motion under Rule 59(e) is a 'device to relitigate the original issue' decided by the district court, and used to allege legal error." *United States v. Fiorelli*, 337 F.3d 282, 288 (3d Cir. 2003) (*quoting Smith v. Evans*, 853 F.2d 155, 158-159 (3d Cir. 1988)). However, a Motion to Alter or Amend Judgment "must rely on one of three major grounds: (1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct clear error of law or prevent manifest injustice." *North River Ins. Co. v. CIGNA Reinsurance Co.,* 52 F.3d 1194, 1218(3d Cir.1995). All moving Defendants rely on the third basis, the need to correct clear error or prevent manifest injustice.

The Adams Defendants seek an amended judgment and have alleged three errors in the trial:

> A. This Honorable Court erred by giving the jury charge "wrongful conduct of Defendant makes damage calculation difficult", as the jury charge was improper and did not provide the jury with a proper understanding of the law (Doc. 644, p. 2, ¶4A);

---

[1] Clerk's judgment (Doc. 609) entered September 26, 2019.

B. This Honorable Court erred by allowing the jury to consider awarding Plaintiff noneconomic damages for humiliation and pain and suffering, where there was no evidence of physical injury or impact, the same being contrary to precedent of the Pennsylvania Supreme Court (Doc. 644, p. 2, ¶4B);

C. This Honorable Court erred by denying Defendants' Motion in Limine, and permitting Plaintiff to testify as to the value of the contents of the safe, as the same should have been barred by the doctrine of collateral estoppel (Doc. 644, p. 2, ¶4C).

In the alternative they seek a new bifurcated trial (Doc. 644, p. 3).

Defendants Robert and Vanessa Yoncuski assert the same three grounds for error as the Adams (Doc. 646, p. 7, ¶¶a-c), and in addition add the following four allegations of error:

D) The award of Punitive Damages violated the 14th Amendment to the Constitution prohibition on excessive or arbitrary punishment (Doc. 646, p. 7, ¶d);

E) This Honorable Court erred by allowing Defendant Robert Yoncuski to be cross-examined concerning an audiotape of a security call that was never disclosed, not listed as an exhibit and the Court admitted that the Plaintiff was "sandbagging" Defendant Yoncuski (Doc. 646, p. 7, ¶e);

F) Defendant Vanessa Yoncuski is entitled to a new Trial on liability and damages as the only possible basis of liability was the aforementioned improperly admitted audio recording (Doc. 646, p. 7, ¶f); and,

G) This Honorable Court erred by submitting to the jury the issue of Plaintiff's alleged wage loss and emotional damages for alleged injuries incurred at the police station. (Doc. 646, p. 7, ¶g).

In the alternative they also seek a new trial (Doc. 646, p.7).

Defendant Thomas Yoncuski asserts as error:

A. The Court's denial of the Motion in Limine and admission of testimony of the Plaintiff concerning the value of her stolen jewelry on the basis of collateral estoppel (Doc. 648, p.4, ¶11) [This assertion of error mirrors argument "C" of the other Defendants];

B. The Court's charge instructing the jury that "[t]he risk of uncertainty should be thrown upon the wrongdoer instead of upon the injured" was misplaced as the general rule of placing the burden of proof of the measure of damages on the plaintiff applies to conversion cases and the charge given to the jury did not, therefore, properly apprise the jury of the applicable law (Doc. 648, p.4, ¶13)[This argument mirrors argument A of the other Defendants]; and,

C. The Court's charge for non-economic damages and preexisting condition or injury were not appropriate since recovery for noneconomic damages and psychological injuries were not connected with a physical injury (Doc. 648, p.5, ¶14). [This assertion of error mirrors argument "B" of the other Defendants].

Like the other Defendants, Thomas Yoncuski seeks an amended judgment or new trial. All three motions have been briefed (Docs. 645, 647& 649) Plaintiff has filed a single responsive brief (Doc. 659),[2] and Thomas Yoncuski filed a timely reply brief (Doc. 660). The motions are ripe for decision. I will attempt to respond to each argument raised by the motions seriatim.

---

[2] Plaintiff filed a concurred in request to file a single responsive brief (Doc. 653) and that request was granted by Order (Doc. 654) on November 6, 2019. Plaintiff's responsive brief (Doc. 659) was filed on November 22, 2019.

## II. THE ALLEGATIONS OF ERROR[3]

### A. THE JURY CHARGE "WRONGFUL CONDUCT OF DEFENDANT MAKES DAMAGE CALCULATION DIFFICULT."

Moving Defendants argue that the Court's charge to the jury on the issue of damages, mislead the jury and caused them to misapply the burden of proof. In particular Moving Defendants claim that charging the jury on the wrongful conduct of the Defendants was error. Plaintiff's theory of the case was that Defendants conspired to steal a safe from her home and convert the contents. Defendants variously argued that either they were not involved in the theft and concealment of the safe or that all the contents were returned. Plaintiff admitted that some of the contents were returned to her but claimed much of what was returned was damaged.

The Court's challenged instructions to the jury on the issue of damages included the following language:

> A defendant whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff, is not entitled to complain that damages cannot be measured with the same exactness and precision as would otherwise be possible. It would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts. In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the

---

[3] No party has requested a transcript of the trial. Without the transcript the court is required to rely on its own notes and recollection regarding the testimony and evidence. Any quotes from the jury charge in this opinion are taken from the written jury instructions (Doc. 604) that were distributed to the parties, read to the jury, and sent to the jury room during deliberations. Without a transcript showing that the objections were preserved I will assume for this opinion that they were.

evidence shows the extent of the damages as a matter of just and reasonable inference, although the result be only approximate. The wrongdoer is not entitled to complain that damages cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise. The risk of the uncertainty should be thrown upon the wrongdoer instead of upon the injured party. The precise amount cannot be ascertained by a fixed rule but must be matter of opinion and probable estimate.

(Doc. 604, pp. 23-24)

The source for this portion of the charge was *Judge Tech. Servs., Inc. v. Clancy*, 813 A.2d 879, 885–86 (Pa. Super. 2002) (internal citation omitted). The charge on wrongful conduct is a correct statement of Pennsylvania law. Importantly, that was not the only instruction on damages. The jury was also instructed, more than once, that the burden of proving her damages by a preponderance of the evidence was on the Plaintiff.[4] In addition the jury was instructed as follows:

> While the measure of damages for conversion is the market value of the converted property at the time and place of conversion, such a value is often unascertainable. It is also well-settled that mere

---

[4] For example: "Donna Deitrick must prove these damages by a preponderance of the evidence. Your award must be based on evidence and not speculation or guesswork.(Doc. 604, p. 18); To prove a claim of conversion or trespass to chattels, Donna Deitrick must prove by a preponderance of the evidence:… (Doc. 604, p. 20; I remind you again that your verdict as to each specific claim must be by agreement of all jurors. To find in favor of Donna Deitrick, all of you must agree that Donna Deitrick has proven the elements of that claim by a preponderance of the evidence. (Doc. 604, p. 31); and, Listen carefully to what the other jurors have to say, and then decide for yourself whether the Donna Deitrick has proved her claims by a preponderance of the evidence. (Doc. 604, pp. 31-32)."

uncertainty as to the amount of damages will not bar recovery where it is clear that the damages are the result of defendant's conduct.

Please remember that damages cannot be based on mere speculation or bias. You should not award damages because you did not like a particular defendant, and you should not deny damages if you did not like the plaintiff. You must decide damages based on the evidence, not on any prejudice or bias you may have about the conduct here or the parties involved in this case. The purpose of damages involving lost or damaged property is not to make Donna Deitrick wealthy or to punish the defendants. The purpose of property loss damages is to fairly compensate the plaintiff for the property loss she suffered.

(Doc. 604, p. 24-25)

The jury was also given this specific instruction on the burden of proof:

This is a civil case. Donna Deitrick is the party who brought this lawsuit. Jeff Adams, Marianne Adams, Thomas Yoncuski, Robert Yoncuski, Vanessa Yoncuski, and Linda Long are the parties against whom the lawsuit was filed. Donna Deitrick has the burden of proving her case by what is called the preponderance of the evidence. That means Donna Deitrick has to prove to you, in light of all the evidence, that what she claims is more likely so than not so. To say it differently: if you were to put the evidence favorable to Donna Deitrick on one side of a scale, and the evidence favorable to each Defendant as to the particular claim alleged on the opposite side of the scale, Donna Deitrick would have to make the scales tip somewhat on her side for each claim alleged and as to each Defendant. If Donna Deitrick fails to meet this burden as to any claim, the verdict on that claim must be for the Defendant. If you find after considering all the evidence that a claim or fact is more likely so than not so, then the claim or fact has been proved by a preponderance of the evidence.

In determining whether any fact has been proved by a preponderance of evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

Again, as I mentioned in your preliminary instructions, while you may have heard of the phrase "proof beyond a reasonable doubt," that

is a stricter standard of proof and it applies only to criminal cases. It does not apply in civil cases such as this. So you should put it out of your mind and only apply the preponderance of the evidence standard that I have just described to you.

(Doc. 604, p. 6)

And finally, each of the fourteen questions on the special verdict form begins with "Did Donna Deitrick prove by a preponderance of the evidence…" or contains similar language. (Doc. 602). There is simply no basis to assume that the jury was confused or misled by these clear instructions on the burden of proof.

When the basis for an alleged error of the court is in jury instructions, a district court must first determine whether an error was made, considering "whether, taken as a whole, the instruction properly apprised the jury of the issues and the applicable law." *Donlin v. Phillips Lighting N. America Corp.*, 581 F.3d 73, 78 (3d Cir. 2009). When a motion for a new trial is based on the court's jury instruction, a new trial is warranted only if the instruction, taken as a whole, "fails to fairly and adequately present the issues in the case without confusing or misleading the jury." *Donlin,* 581 F.3d at 79. The requests for an amended verdict or new trial based on the jury instructions will be denied.

B.   NON-ECONOMIC DAMAGES FOR HUMILIATION AND PAIN AND SUFFERING, WHERE THERE WAS NO EVIDENCE OF PHYSICAL INJURY OR IMPACT.

The verdict slip in this case had the following question:

**QUESTION 13:** Did Donna Deitrick prove by a preponderance of the evidence that any of these Defendants caused Donna Deitrick to experience embarrassment, humiliation, and/or loss of the ability to enjoy life? If the answer is yes as to any Defendant, please indicate a dollar amount to compensate Donna Deitrick for the embarrassment, humiliation, and/or loss of ability to enjoy life caused by that Defendant.

Robert Yoncuski: Yes \_\_\_\_\_ No \_\_\_\_\_ $ _____

Vanessa Long: Yes \_\_\_\_\_ No \_\_\_\_\_ $ _____

Linda Long: Yes \_\_\_\_\_ No \_\_\_\_\_ $ _____

Jeff Adams: Yes \_\_\_\_\_ No \_\_\_\_\_ $ _____

Marianne Adams: Yes \_\_\_\_\_ No \_\_\_\_\_ $ _____

Thomas Yoncuski: Yes \_\_\_\_\_ No \_\_\_\_\_ $ _____

Each of these six defendants was accused of participation in a conspiracy to steal a safe from Plaintiff's residence and keep the valuable contents.[5] They kept the contents from her for over six months, and then only returned a portion of the contents, much of which was damaged. The contents of the safe represented a lifetime of jewelry collection by the Plaintiff and her Mother. Plaintiff testified and the jury apparently believed that the items had tremendous emotional, as well as pecuniary value, to her.

The Adams Defendants argue that it was error to allow the jury to consider non-economic damages in this case. Their brief provides the following rationale:

---

[5] Only Linda Long was found not responsible for involvement with the conspiracy as indicated by the verdict on this question and verdict questions 7, 8 and 9.

The measure of damages for conversion is the value of the property at the time and place of the conversion. *Berry* v. *Heinel Motors, Inc.,* 56 A.2d 374 (Pa. Super. Ct. 1948) (citing *Campbell* v. *Clark* & *Melia, Inc.,* 29 A.2d 350 (Pa. Super. Ct. 1942)). It is well settled that the Pennsylvania Supreme Court has concluded that "[t]here can be no recovery for humiliation, disappointment, anxiety, or mental suffering, or emotional distress when unconnected with physical injury or physical impact." *Gefter* v. *Rosenthal,* 119 A.2d 250, 251 (Pa. 1956).

(Doc. 645, p. 9).

The *Gefter* case is distinguishable from this case because the damages there were based on a factual situation without either physical harm <u>or</u> pecuniary loss. "In absence of claim of pecuniary loss or physical injuries, plaintiff, who allegedly had contracted with caterers at anniversary dinner to check guests' coats without charge to guests, could not recover for alleged humiliation and mental suffering resulting from caterers' charging guests tips." *Gefter v. Rosenthal*, 119 A.2d 250, 251 (Pa. 1956). In his concurring and dissenting opinion Justice Musmanno notes that Gefter is simply a breach of contract case. He goes on to cite an earlier Pennsylvania Supreme Court case noting: "In *Linn v. Duquesne Borough*, 204 Pa. 551, 553, 54 A. 341, this Court said: "Mental suffering has not generally been recognized as an element of damages for which compensation can be allowed, unless it is directly connected with a physical injury, ***or is the direct and natural result of a wanton and intentional wrong** (emphasis in original)*" *Gefter v. Rosenthal*, 384 Pa. 123, 127, 119 A.2d 250, 252 (1956).

The initial brief of Thomas Yoncuski fleshes out the argument that the measure of damages for conversion is only the value of the property converted plus interest. (Doc. 649, pp. 26-28). However none of the cases cited dealt with property that clearly had both sentimental as well as financial value. Nor do any of the cases cited include a claim of conspiracy, theft, conversion, IIED, and burglary (trespass). All of the cases cited lack the clearly intentional and wanton motive present in this case.

Defendant cites *Potere v. City of Philadelphia*, 112 A.2d 100, 103 (Pa. 1955) In that case the plaintiff's truck fell into a hole, and the issue was the negligence of the City and a water main contractor in allowing the hole to develop. The plaintiff was only slightly injured but suffered from a severe neurosis following the accident. The Court upheld the award of considerable damages for his mental distress. Justice Musmanno filed a concurring opinion in which he said:

> However, I wish to state that it can happen that a person would suffer a severe traumatic emotional shock without physical injury or physical impact. To the extent that the majority seems to infer that there could *never* be a situation where damages are recoverable in the absence of physical injury or physical impact, I disagree.

*Potere v. City of Philadelphia*, 380 Pa. 581, 590, 112 A.2d 100, 103 (1955).

Justice Musmanno correctly points out that the argument of the majority about cases involving no physical injury is dicta since the plaintiff Potere did have injuries.

Moving Defendants also cite *Paves v. Corson,* 801 A.2d 546 (Pa. 2002). In that case a single issue was before the Supreme Court. "We granted allocatur to consider a single issue, namely whether the Superior Court erred in remanding the matter for reassessment of compensatory damages on the conversion and breach of duty claims." *Paves v. Corson*, 173, 801 A.2d 546, 547 (2002). The Court found error and reinstated the compensatory damage claims for conversion and breach of duty. The case does not stand for the proposition, as argued by the Defendants, that emotional distress claims must be accompanied by physical injury. The decision of the Superior Court[6], to the extent it was not reversed, also does not support the Defendant's argument.

Defendants also cite *Option One Mortg. Corp. v. Fitzgerald*, 687 F.Supp.2d 520, 529 (M.D. Pa. 2009). In that case a homeowner collected a fire insurance claim check and deposited the funds without the signature or permission of the mortgage holder as required by the face of the check and the mortgage agreement. The mortgage holder sued the homeowners for conversion. Summary judgment was granted. There was not a claim that the bank suffered emotional distress. Any language on

---

[6] *Paves v. Corson*, 765 A.2d 1128 (Pa. Super. 2000), reversed in part by *Paves v. Corson*, 801 A.2d 546 (Pa. 2002). That opinion deals with the elements of battery and intentional infliction of emotional distress, not whether emotional distress can be an element of damages in a conspiracy and conversion case.

the measure of damages in that case is limited to the facts of that case and is not relevant in this case.

The final case relied upon by Defendants is *Keystone Truck Equipment Co. v. Russell Chevrolet Motors, Inc.,* NO. 94-CV-4620, 1996 WL 283677 (E.D. Pa, May 29, 1996).  *Keystone Truck* involved a breach of contract, conversion, and fraud claim that arose when a company accepted drawings and calculations from the plaintiff for inclusion in a bid and then used the documents with another company to obtain the bid.  Keystone Truck sued for lost profits and the value of the work they submitted.  There was no claim for emotional damages in this commercial case and the language describing the extent of damages in that case is not directly relevant here.

In response to these arguments Plaintiff asserts the following:

> They (the Defendants) rely, primarily, upon a line of cases from the 1950s which peg damages for emotional distress to physical injury. It is relatively evident that the law in Pennsylvania has moved away from this position in the past 60 years.
>
> In their arguments, the defendants focus on the conversion and trespass to chattels claims while ignoring the civil conspiracy claim. Unlike either of the other two claims, civil conspiracy involves an element of malice. See *Baker v. Rangos*, 324 A.2d 498, 506 (Pa. Super 1974).  The element of malice was, in this case, shown by the actions of the defendants in breaking into Donna's home despite a PFA, taking items not only of immense financial value but also of tremendous psychic value due to associations with time spent with Donna's mother, and concealing the same for a period of six months despite enquiries by the courts and law enforcement.
>
> Assuming arguendo that non-economic damages are unavailable in garden variety claims for conversion and trespass against chattels,

being subjected to a malicious conspiracy to deprive one of property,
coupled with home invasion, and deliberate concealment in the face of
court orders, opens the door to emotional distress claims.

(Doc. 659, pp. 16-17).

Thomas Yoncuski argues in his supplemental brief that civil conspiracy is not itself a tort but must allege an underlying tort (Doc. 660, p. 7) (citing cases). In this case the Plaintiff proved that she was the victim of a conspiracy where the participants committed the torts of burglary (i.e. trespass), theft, conversion, both intentional and negligent infliction of emotional distress, and trespass to chattels, among others. The conspiracy argument is based on *Commonwealth v. Musser Forests*, 146 A.2d 714, 719 (Pa. 1958). However, that case involved a breach of contract matter that the government chose to prosecute as a civil conspiracy and turned on the applicable statute of limitations and a penalty clause under the Forest Tree Seedling Act. *Com. v. Musser Forests, Inc.,* 146 A.2d 714, 716 (Pa. Super. 1958). While damages rely on the underlying tort, the conspiracy is actionable once an overt act in furtherance of the conspiracy occurs.

A civil conspiracy becomes actionable when some overt act is done in
pursuance of the common purpose or design held by the conspirators,
and actual legal damage results. *Baker v. Rangos*, 229 Pa.Super. 333,
324 A.2d 498, 506 (1974). It is the damage, and not the agreement
itself, that is the gravamen of a civil conspiracy suit, and permits a
recovery. *Daly v. Bright*, 345 F. Supp. 11, 14 (E.D.Pa.1972).

*Cohen v. Pelagatti*, 364 Pa. Super. 573, 576, 528 A.2d 657, 658 (1987)

Thomas Yoncuski also argues in his Responsive Brief for the first time that:

The intentional infliction of emotional distress and negligent infliction of emotional distress claims against Defendant Thomas Yoncuski were dismissed years ago. (See Doc. 367 at 14-21). This Court stated that "Defendant [Thomas] Yoncuski's conduct fails to rise to the level of extreme and outrageous behavior that would permit recovery[,]" and that "Plaintiff has failed to provide competent medical evidence proving her emotional distress." (Doc. 367 at p.17).

(Doc. 660, p. 10).

Thomas Yoncuski asserts that this grant of summary judgment based on his own conduct absolves him from any liability under a conspiracy theory. That is not the case. He may not have personally acted with "extreme and outrageous" behavior, but those with whom he conspired did. He is responsible for the acts of his co-conspirators. This leaves the final question, can emotional and sentimental damages be recovered under a conversion theory.

It is this court's opinion that a claim for conversion, when the property involved has unmistakable emotional and sentimental value in addition to its pecuniary value will support a damage award for that emotional and sentimental value. To hold otherwise would mean, for example, that a thief could steal the purple heart and bronze star awarded to a veteran, not return them, and then be liable only for the replacement value of similar medals on eBay. References to commercial cases of conversion are not entirely helpful and should not limit the available damages in this case.

The requests for an amended verdict or new trial based on the lack of physical injury causing emotional damages will be denied.

C.   PERMITTING PLAINTIFF TO TESTIFY AS TO THE VALUE OF THE CONTENTS OF THE SAFE.

The case in this court began in August of 2006.  The underlying events took place between 2003 and 2005.  Parts of these facts from this case have been in no less than six different courts.  Most parties have had at least one change of counsel, just in this court, over the last thirteen (13) years.  On the eve of trial, the moving Defendants discovered what they perceived as a potential defense: "this case was decided ten years ago."  Their joint Motion In Limine urged the application of res judicata and collateral estoppel to the issues in this federal court civil conspiracy and conversion case from the state court divorce case.  Those motions were denied pre-trial.  During the trial timely objections were made to the Plaintiff offering her opinion on the value of the stolen property.  These objections included allowing her to offer an opinion as a "non-expert" and allowing her to prove damages that are barred based upon res judicata, issue preclusion or collateral estoppel.

The first objection is easily met.  The Adams Defendants argue that Plaintiff "provided very little evidence as to the existence of any of the non-returned jewelry. She did not provide any sales receipts, photographs, appraisals, or insurance policies." (Doc. 645, p. 7).  The testimony about the existence of the jewelry was limited to that of the plaintiff and her lifelong friend, Carol Bielski. While that

evidence is admittedly not robust, if believed by the jury it was enough to prove the existence of an extensive jewelry collection. In Pennsylvania owners are permitted to testify regarding the value of their property. As the owner of the allegedly stolen property, Plaintiff is certainly competent to give lay opinion testimony as to its value. *E.g., Asplundh Mfg. Div., a Div. of Asplundh Tree Expert Co. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1197-98 (3d Cir. 1995); *United States v. Laughlin*, 804 F.2d 1336, 1339-41 (5th Cir. 1986); *accord* Fed. R. Evid. 701, Advisory Committee Notes (2000 Amendments). The Plaintiff's opinion was based on over twenty-five years of buying and selling jewelry on an almost weekly basis. Her testimony was carefully limited by the court to prevent her from using outside expert sources or the internet in formulating her opinion. The jury was charged on this issue as follows:

> You have heard testimony containing an opinion on the value of her jewelry from Donna Deitrick. In weighing this opinion testimony, you may consider her qualifications, the reasons for her opinions, and the reliability of the information supporting those opinions, as well as the factors I have previously mentioned for weighing the testimony of any other witness. The opinion of Ms. Deitrick should receive whatever weight and credit, if any, you think appropriate, given all the other evidence in the case.

(Doc. 604, p. 23)

There was no error in allowing Plaintiff to testify about the value of the jewelry that was stolen from her.

The second part of this objection, the collateral estoppel issue, is more nuanced. However, this issue was fully briefed and decided (Memorandum Opinion,

Doc. 536). Motions to Reconsider were filed and decided (Memorandum Opinion, Doc. 576). The rationale of those two decisions is incorporated into this Memorandum by reference. There is no need to reprint those eleven pages here. The post-trial motions raise no new case law or factual basis for a different result.

Thomas Yoncuski, in his Reply Brief (Doc. 660, pp. 2-4) argues that the divorce court was required to find a value for the property in the safe to decide alimony. Since the Court found that Donna Deitrick did not provide enough proof to establish a value in the divorce, he argues that she has already been compensated for that value via the alimony portion of the equitable distribution award. I respectfully disagree. The value of separate property is only one of many factors in awarding alimony. In this case the divorce judge found that there was not enough proof of the value. It cannot be said that there was not proof of value, but that she was awarded that value. After re-reading the Divorce Court's opinion (Doc. 660, Exhibit A) and the arguments of Thomas Yoncuski, I am still of the opinion that the value of the items in the safe were simply found to be non-marital property. While Plaintiff wife Deitrick did not offer proof of the value to satisfy the Divorce Court Judge, she was not required to do so and is not estopped from proving that value in this case. Thomas Yoncuski also argues that the Plaintiff here is estopped from arguing the value based on language in her appellate brief in the divorce case (Doc. 660, Exhibit D, pp. 16-41). I believe he misinterprets the thrust of the argument in

that portion of the brief. The argument there was about the cash in the safe, not the jewelry. (*see* Doc. 660, p. 51).

Plaintiff also argues that the issue was procedurally waived by not being properly asserted as an affirmative defense (Doc. 659, pp. 3-4) citing *Arizona v. California*, 530 U.S. 392, 410 (2000) and other cases. I agree. The divorce case decision does not preclude this action, and even if it did, the issue was waived.[7]

The requests for an amended verdict or new trial based on collateral estoppel objections or allowing the Plaintiff to testify about the value will be denied.

    D.     PUNITIVE DAMAGES NOT SUPPORTED BY UNDERLYING CLAIMS AND VIOLATE THE 14TH AMENDMENT.

Robert and Vanessa Yoncuski argued in their motion that the punitive damages were a constitutional violation. "The award of Punitive Damages violated the 14th Amendment to the Constitution prohibition on excessive or arbitrary punishment (Doc. 646, p. 7)." However, in their brief they defer to the argument of

---

[7] Thomas Yoncuski points out in his Reply Brief (Doc. 660) that he filed an amended answer in 2009 after the divorce was final. Thomas Yoncuski did file a document entitled "Amended Answer" in 2011 (Doc. 98, Order granting Motion for Permission to file an Amended Answer, Doc. 96) that lists all the affirmative defenses (paragraphs 221-228). He also pled the "Doctrine of Wages" as a defense (¶ 226). Simply listing the "magic words" as defenses, without any explanation, is not enough to preserve them. Original Counsel for Thomas Yoncuski first entered an appearance in 2006 (Doc. 18) and filed an answer (Doc. 39) which lists some of the affirmative defenses, including estoppel (¶ 221-226) also without explanation. Current counsel for Thomas Yoncuski entered his appearance in 2007 (Doc. 59).

Thomas Yoncuski on the issue of punitive damages and incorporate his argument by reference.[8] Thomas Yoncuski does not raise the constitutional question, instead relying on the argument that the punitive damages were based in part on claims that should have been precluded in this case. Because the constitutional issue was not briefed, it is waived. See L.R. 7.5. I would note that Constitutional challenges to conduct are generally limited to actions "under color of state law" done by state actors. The punitive award here does not meet that standard. I will consider the merits of the objection by Robert and Vanessa Yoncuski on punitive damages under the same argument raised by Thomas Yoncuski.

These Defendants' argument against punitive damages is based on their contention that the value of the jewelry was fully litigated in the divorce. Plaintiff should not have been allowed to offer any proof of the loss of the jewelry and then, they argue, the corresponding claim for punitive damages must fail. (Doc. 649, p. 21). If their assumption about the effect of the divorce case was correct, I might agree. However, since I believe the divorce case equitable distribution decision did not require a determination of the value of the jewelry, it is not a bar to litigating the theft of the jewelry and its value in this court. Therefore, the punitive damages should stand.

---

[8] "Finally, Defendants Robert Yoncuski and Vanessa Long Yoncuski would adopt and join in Section B of the Thomas Yoncuski Brief regarding Punitive Damages." (Doc. 656, p.2).

E.    USE OF "SECURITY TAPE" CALL TO CROSS EXAM ROBERT YONCUSKI.

During the testimony of Plaintiff's ex-husband Robert Yoncuski, he was asked if his then girlfriend (now wife) Vanessa Long Yoncuski was present when the safe was taken from Plaintiff's residence.  He said she was not.  He was then asked about a phone call that came from ADT Security while the burglary was in progress.  A portion of the ADT recording was played for the jury identifying the caller from ADT and then stopped.  At this point there was an objection to the recording and a sidebar discussion where Mr. Orso said "First off, it's hearsay. Secondly, talk about sandbagging.  This was never produced, never on a -- never on an exhibit list.  Clearly, he was waiting until this moment, the last moment of the trial, to produce it.  And there was clear -- there was discovery requests out for this type of information."  Later during that sidebar, I believe I said, "I don't think there's any question you're sandbagged, but the question is, is it proper.  I have not seen it on any exhibit list, but it is impeachment."  After the sidebar the jury was sent to lunch and the tape was played in its entirety.   On the tape Robert Yoncuski answered the phone and was asked for the alarm code. Initially Robert Yoncuski had testified that he said "Let me ask my wife."  He was then asked if he was sure he did not say "Let me ask my girlfriend."  He denied it.   When Plaintiff was allowed to confront Robert with the tape out of the presence of the jury, Robert clearly says "Let me ask my girlfriend" and admitted as much after hearing the tape.  After lunch, the jury

was brought back in, and Robert was asked if listening to the tape refreshed his recollection on what he told the ADT operator. He responded that his recollection was refreshed and that he said "Let me ask my girlfriend." The tape was not admitted into evidence and was not sent out with the jury.

According to Defendants Robert and Vanessa Yoncuski: "The audiotape was not identified in Rule 26 Disclosures. The audiotape was not specifically identified in Response to Discovery. The audiotape was not listed as a Pre-Trial Exhibit." (Doc. 656, p.4). Plaintiff argued during the trial that the CD of the audio tape was present in a group of boxes that were made available to defense counsel during discovery. Defendants' in their brief acknowledge this argument but indicate that they cannot confirm that the CD was in the boxes during the discovery conference. (Doc. 656, p. 4, f.n.1).

Defendants do not argue that the tape was not genuine. They argue that it was not used for impeachment. I disagree. The tape was used to refresh the recollection of a hostile witness. This could be considered an impeachment. Defendants' reliance on *Burdyn v. Old Forge Borough*, 330 F.R.D. 399, 404 (M.D. Pa. 2019) is misplaced. In *Burdyn* the court found that the use of a photograph for impeachment purposes was not a violation of Rule 26. In that case the photograph was taken by the witness being impeached. In the instant case the phone call participant was the person being

impeached. There is no argument that the tape is genuine, only that it constituted prejudicial unfair surprise.

Pursuant to Federal Rule of Civil Procedure 26, "a party must, without awaiting a discovery request, provide to the other parties . . . a copy - or a description by category and location - of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(ii). In addition, Rule 26 requires a party to provide "an identification of each document or other exhibit . . . the party expects to offer [at trial] and those it may offer if the need arises," except if that information will be used "solely for impeachment." Fed. R. Civ. P. 26(a)(3)(A)(iii). If a party fails to timely provide the information as required in Rule 26(a), "the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Robert Yoncuski argues that his case was prejudiced by the use of the tape. In my view it was properly used, and if it was not, it was harmless error. Robert admitted that they broke into Plaintiff's residence and took her safe. He admitted that he cut a hole in the safe and took the contents out and hid them. He also admitted during his testimony that he denied taking the safe during the divorce proceedings

and was later convicted of perjury for that denial. His truthfulness was called into question in this case when it came to what was in the safe and if he returned all of the contents. Plaintiff argued to the jury that Robert sat in jail for six month on a contempt charge, refusing to purge himself of the contempt, because he hoped to keep the contents of the safe. Proving that he was also untruthful about what he said to the ADT operator, or even that by implication his girlfriend and co-defendant was in fact present at the house during the burglary was fair game for Plaintiff's counsel. It was not error to allow the use of the tape in the manner it was during the trial.

We now turn to the second part of the Defendant's argument about that tape, that it was used to prove that Vanessa was present during the burglary and that this is the only evidence of her involvement in this conspiracy.

F.    USE OF "SECURITY TAPE" CALL AS ONLY BASIS FOR LIABILITY OF
       VANESSA YONCUSKI.

Vanessa Yoncuski argues that the only basis to find her liable is the "admission" of the security tape call from the burglary. In that tape Robert Yoncuski is heard to say "Let me ask my girlfriend" in response to a question by the security company operator. However, the taped call was never "admitted" into evidence and it did not go out with the jury. It was used to cross-examine Robert and refresh his recollection when he testified that he told the operator he said: "Let me ask my wife." When confronted with the tape Robert admitted that he said "girlfriend" and not "wife."

Plaintiff argues that the testimony of Donna Deitrick that she saw Vanessa Yoncuski wearing stolen jewelry and the testimony of Thomas Yoncuski that he took the bags of jewelry that he "found" in his yard to Vanessa Yoncuski to turn over to "the authorities" are additional basis for the jury to find Vanessa involved in the conspiracy. Those facts, without her being present at the scene of the burglary, if believed by the jury, are enough for her to incur liability as a participant in the conspiracy to steal and conceal the contents of the safe. The request by Vanessa Yoncuski for an amended verdict or new trial based on the use of the audio tape will be denied.

G.   DAMAGES FOR INJURIES INCURRED AT THE POLICE STATION.

Robert and Vanessa Yoncuski argue that the jury was improperly allowed to award damages for wage loss and pain and suffering resulting from the fight at the police station.

> At the Trial of this matter, the Court, over objection, submitted to the Jury Plaintiff's claim for wage loss and emotional distress for the events that occurred at the Police Station. These issues should not have been submitted to the Jury and the Jury should not have been allowed to make an award for these items.

(Doc. 656, p. 5)

Plaintiff first responds that wage loss was not alleged by the plaintiff, charged by the Court to the jury, or found by the jury. (Doc. 659, p. 17). The Court has searched the jury instructions and verdict slip and the words "wage" or "wage loss"

do not appear. I cannot find that the jury made an award to the Plaintiff for wage loss as a result of the incident at the police station as these Defendants argue.

Regarding the emotional distress claim Defendants make this argument:

> Plaintiff's only testimony was the testimony of her counselor. The counselor did not begin treating the Plaintiff until years after the incident at the Police Station. The counselor admitted that he was treating the Plaintiff for multiple stress indicators and it was not possible to differentiate the increase in stress due to the incident at the Police Station. Due to the lack of evidence as to increased stress, the Jury was left to speculate as to whether the incident at the Police Station in fact caused emotional distress to the Plaintiff. This speculation and lack of evidence requires that a new Trial be granted as to the claim for damages that occurred at the Police Station.

(Doc. 656, p. 5).

Plaintiff responds only briefly to this argument as follows:

> Moving, to the emotional distress component, Robert and Vanessa make arguments with respect to the weight of evidence. The subject of the admissibility of Dr. Jacobson's testimony has been briefed previously and Donna relies on the arguments previously raised.

(Doc. 659, p. 17).

During the trial the Court allowed Plaintiff's psychologist, Dr. Jacobson, to testify as a treating physician. Plaintiff is correct that this argument goes to weight, not admissibility. On this issue the jury was charged that they could award damages only if they find that the conduct of Robert and Vanessa actually caused her either past of future harm. The Court gave this instruction:

> Damages should be awarded for all psychological injuries caused by the taking of the safe and its contents, and the events at the Shamokin

Police Department even if a preexisting psychological condition was only aggravated by the taking of the safe and its contents, or the events at the Shamokin Police Department. If you find that Donna Deitrick did have a preexisting emotional condition that was aggravated by any of the Defendants' actions, then those Defendants are responsible for any aggravation caused by the taking of the safe and its contents, or the events at the Shamokin Police Department. I remind you that the Defendants can be held responsible only for those injuries or the aggravation of an existing condition that you find was factually caused by the taking of the safe and its contents, or the events at the Shamokin Police Department.

(Doc. 604, p. 17).

Questions four and five on the verdict slip addressed the damages for the actions of Robert and Vanessa at the police station. (Doc. 602, p. 3). The jury found that Robert was responsible for 30% and Vanessa 70% for past medical bills of $12,030 and future medical bills of $13,500. The only medical bills submitted were for Dr. Jacobson. While Defendants are correct that his treatment did not begin for several years after the incident, Dr. Jacobson did attribute some of Plaintiff's distress to the incident at the police station. It was for the jury to decide how much to award for that treatment, if it was related to the actions of Robert and Vanessa at the police station, and they did. The requests for an amended verdict or new trial based on the award of damages for emotional distress and medical bills relating to the incident at the police station will be denied.

III.    CONCLUSION

Because no error occurred during the trial, the motions to modify the judgment or in the alternative requests for a new trial must be denied.  An appropriate Order will follow.

Date: December 5, 2019                    BY THE COURT

                                          *s/William I. Arbuckle*
                                          William I. Arbuckle
                                          U.S. Magistrate Judge