UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONNA DEITRICK, | ) | CIVIL ACTION NO. 4:06-CV-1556 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| MARK COSTA, *et al.,* | ) | |
| Defendants | ) | |

MEMORANDUM OPINION
*Jane Acri's Motions for Sanctions (Docs. 538, 596) and Status Report (Doc. 643)*

I.    INTRODUCTION

In 1989, 20th Century Fox released "The War of the Roses" a cautionary tale told by Hollywood divorce lawyer Gavin D'Amato (Danny Divito) to a potential young client considering divorce.  The film, based upon the 1981 novel by Warren Adler, follows a wealthy couple with a seemingly perfect marriage. When their marriage begins to fall apart, material possessions become the center of an outrageous and bitter divorce battle.  In both the novel and the film, the married couple's family name is Rose, and the title is an allusion to the battles between the Houses of York and Lancaster at the end of the Middle Ages.  Finishing his story, Gavin presents his new client with two options: either proceed with the divorce and face a horrific bloodbath in court or go home to his wife to settle their differences properly. The client chooses the latter.  In the case now before the Court the parties chose the bloodbath.

No fewer than seven different Courts and at least five judges from this court have been called upon to decide some portion of this war. From minor skirmishes to pitched battles this marriage breakup and the conduct of the parties has been examined by: the minor judiciary of Northumberland County; the Court of Common Pleas of Northumberland County (criminal, civil, and family divisions); the Middle District Bankruptcy Court; this court; the Third Circuit Court of Appeals (twice); and, now back to this court. Donna Deitrick, the former wife in this saga, seeks a measure of justice here by accusing all who have touched this case with various forms of misconduct, cast in the legal language of violation of her civil rights, infliction of emotional distress, conspiracy, trespass to chattels, conversion, and negligence. A jury found that the ex-husband and his family members conspired to steal her property and keep it from her, awarding her $3,200,530.00 in damages (Doc. 602). A separate jury found the two police officers that did not obtain summary judgment were not liable on the merits (Doc. 636).

In a much earlier Motion for Summary Judgment (Doc. 175) the Court was called upon to decide if Jane Acri, Esq., divorce lawyer for the husband, was shown to be a willing participant in the admitted misconduct of her client. Based on the evidence the Court found that she was not.[1] Nothing brought to the Court's attention

_____

[1] In February of 2014 I recommended (R&R Doc. 362) dismissal of all counts against Attorney Acri. That recommendation was adopted by Judge Brann (Doc.

since then has changed that opinion. **Attorney Acri did nothing illegal, improper, or unethical. She zealously represented a client.[2] She has been exonerated from any claim of misconduct in this case.**

Having been exonerated, Attorney Acri seeks sanctions against the Plaintiff and the lawyers that accused her in the pleadings. The case against Attorney Acri was apparently based upon the suspicion of the wife (Donna Deitrick) and a single police report. In that report (Doc. 247, pp. 34-35) Trooper Foura briefly recounted interviews with Jeff and Marianne Adams (represented by other counsel) on February 5, 2005, pursuant to a grant of immunity. They admitted their involvement in the burglary and theft of the safe. He reports that they both told him that "Acri knew that Robert took the safe and where it was buried." (Doc. 247, p. 35). The report does not indicate how they came to know that. This report was dated February 25, 2005, ten days after the Adams' interviews. This report was uncontradicted when the complaint in this case was filed by Attorney Wilson on August 10, 2006, only two days before the running of any two-year statute of limitations. However, during depositions in 2012 both Mr. & Mrs. Adams stated they did not have direct

---

414) in early 2015 and Attorney Acri was dismissed as a party to this case. She was granted Amicus status on March 30, 2018 (*see* Doc. 468 for details).

[2] A client who acted with the help of his family members, <u>but not his lawyer</u>, to commit a PFA violation, a burglary, a trespass, a theft, contempt of court, and perjury. When her client eventually confessed his misconduct to her, Attorney Acri did the right thing and arranged for him to purge himself of the contempt. She did not represent the husband in the criminal cases against him.

knowledge of what Attorney Acri knew at the time.[3]   Trooper Foura was never

deposed or called as a witness in this case.    The Adams were not questioned about

Attorney Acri or their 2005 statements during the trial.

---

[3] Deposition of Marianne Adams, July 12, 2012, Page 48, lines 15-22:

     15    Q Do you know Jane Acri
     16    A Yes.
     17    Q And how do you know Jane Acri?
     18    A She would be Bobby's lawyer.
     19    Q Do you have any information to suggest that
     20    Jane Acri had anything to do with or knew about the
     21    theft of the safe?
     22    A No.

Same Deposition, Page 60, lines 5 to Page 61, line 1.

     5  **Q** Okay. Did you have any conversations with
     6  Defendant Jane Acri about the safe other than what has
     **7**  already been discussed here today?
     8  A Yes.
     9  Q When did you have that conversation with her?
     10  A In September of 2004,
     11  Q And was anybody else present when you had a
     12  conversation with her?
     13  A I don't recall.
     14  Q Okay. And what was that conversation about?
     15  A The State Police had just visited us for the
     16  first time and they -- we were scared, so we didn't know
     17  who to call. We called and asked Jane for advice.
     18  She said She couldn't advise us you know, that
     19  we should -- we should get counsel before we talk to
     20  anybody and that was our conversation.
     21  Q Okay. So at no time did she tell you that she
     22  knew prior to February 8th of 2005 that Robert Yoncuski
     23  had taken the safe correct?
     24  A No.
     25  Q That is correct?
     1  A That is correct.

Attorney Jane Acri ("Amicus Acri")[4] was originally named as a Defendant in this case in seven separate counts:

1. Count Six (Intentional Infliction of Emotional Distress);
2. Count Seven (Negligent Infliction of Emotional Distress);
3. Count Eight (Negligence);
4. Count Nine (Negligence Per Se);
5. Count Twelve (Civil Conspiracy);
6. Count Thirteen (Conversion); and,
7. Count Fourteen (Trespass to Chattels). (*See* Doc. 1).

On October 2, 2014, I issued a Report recommending that Summary Judgment be granted in Amicus Acri's favor on all counts. (Doc. 362). That Report was adopted by the District Judge on April 9, 2015. (Doc. 414).

During the life of this case, Amicus Acri filed a total of six Motions for Sanction. (Docs. 132, 267, 331, 470, 538, 596). Some of these Motions were dismissed without prejudice to renewing them after the trial. (Docs. 465, 466, 467). Rather than waiting until trial had concluded, Amicus Acri filed three of those six Motions *before* trial—which concluded on October 17, 2019.

Currently Pending before the Court are Amicus Acri's Fifth Motion for Sanctions (Doc. 538), Sixth Motion for Sanctions (Doc. 596), and Motion for Clarification (Doc. 643).

---

*See also* Deposition of Jeffrey Adams, July 12, 2012: p. 35, l. 7-11; p. 39, l. 3-7; and, p. 43, l. 3 - p. 44, l. 10. (All answers to the same effect).

[4] Attorney Acri was granted Amicus Status on March 30, 2018 (Doc. 468) after she withdrew from representing Robert Yoncuski, Vanessa Long, and Linda Long.

For the reasons that follow, the Motions for Sanctions will be denied. The denial of the motions should not be interpreted in any way as endorsing the idea that Attorney Acri committed misconduct in her representation of Robert Yoncuski. I state emphatically that she did not.

II.     BACKGROUND

Plaintiff's Complaint concerns two incidents that transpired in August 2004: (1) the alleged taking of a safe and jewelry contained within the safe (Friday, August 11, 2004); and (2) an alleged assault that took place between Plaintiff, Vanessa Yoncuski and Robert Yoncuski at a local police station (Monday, August 13, 2004).

Amicus Acri represented Plaintiff's now ex-husband, Robert Yoncuski, in the divorce. Plaintiff alleged in the original complaint (Doc. 1) that Amicus Acri had some involvement in the taking of and concealment of the safe. Specifically, she alleged:

> 119. The Defendant, Jane Acri, knew of should have known that the safe was going to be stolen before it was stolen, and the Defendant, Jane Acri, should have known its location after it was stolen. The Defendant, Jane Acri, represented the Defendant, Robert Yoncuski, in divorce proceedings opposite the Plaintiff. In that capacity, she was paid between $50,000.00 and $70,000.00 by the Defendant, Robert Yoncuski, and it is believe [sic] that some of the said proceeds from the stolen safe were used to pay the Defendant, Jane Acri, for those divorce representation services. Under the Rules of Professional Conduct governing lawyers in Pennsylvania, as well as other law, the Defendant, Jane Acri, had a duty to third persons such as the Plaintiff and was ethically obligated not to assist her client, the Defendant, Robert Yoncuski, in the perpetration of a fraud or

crime; nevertheless, during the Defendant, Jane Acri's representation of the Defendant, Robert Yoncuski, the Defendant Robert Yoncuski, lied under oath about his knowledge of the whereabouts of the safe, failed to disclose the contents, despite being legally obligated to do so. Furthermore, the Defendant, Jane Acri, could have revealed the safe's whereabouts, which would have resulted in a greater recovery of the contents and less damages to be suffered by the Plaintiff.

. . . .

121. The Defendants, Costa, Miner, Nichols, Zelinski, Jeff Adams, Marianne Adams, Thomas Yoncuski, Balascik, Robert Yoncuski, Vanessa Long, Linda Long, Brown, Searls, Moore and Acri, all of them, or in combination, conspired to steal the safe and its contents, provide a distraction so that others could do so, cover up the theft, and conceal the whereabouts of the safe and its contents.

(Doc. 1, ¶¶ 119, 121). The Complaint was signed by Attorney Richard A. Wilson ("Attorney Wilson") and filed on August 11, 2006, two (2) days before the running of any two-year statute of limitations. Attorney Wilson represented Plaintiff in this court from August 2006 through November 2006. (*See* Docs. 1, 30, 46).

III.    DETAILED PROCEDURAL HISTORY

On October 26, 2006, Amicus Acri—who was representing herself at that time—filed a Motion to Dismiss. (Doc. 12). The Motion, however, was deemed withdrawn by Judge Muir because no brief in support was filed. (Doc. 33).

Attorney Peter Loftus ("Attorney Loftus") entered his appearance in on November 15, 2006. (Doc. 22).   Attorney Wilson and his association Richard

Jennings moved to withdraw as Plaintiff's Counsel on November 27, 2006 (Doc. 30).

On February 22, 2007, Amicus Acri filed an Answer. (Doc. 62). Six days later, Amicus filed an Amended Answer. (Doc. 65).

On February 26, 2007, this case was stayed pending the disposition of criminal charges brought against Defendant Robert Yoncuski. (Doc. 64). After the resolution of the criminal charges in August 2010, new case management deadlines were set. (Docs. 76, 87).

On May 5, 2011, Defendants Jeff and Marianne Adams filed a Notice informing the Court that Plaintiff had filed for bankruptcy in January 2011. (Doc. 103). In light of this information, the case was stayed for a second time. (Doc. 108). On June 6, 2012, the stay was lifted. (Doc. 127).

On September 27, 2012, Amicus Acri filed a Motion for Summary Judgment. (Doc. 175). Along with her Motion, Amicus Acri filed a Statement of Facts (Doc. 176), a series of exhibits (Docs. 177-188), and a Brief in Support (Doc. 189).

On December 2, 2012, Plaintiff filed a Brief in Opposition to Amicus Acri's Motion for Summary Judgment (Doc. 222), and a response to Amicus Acri's Statement of Facts (Doc. 222-1).

On December 14, 2012, Amicus Acri filed a Reply (Doc. 242) and a Supplemental Statement of Facts (Doc. 243).

On October 2, 2014, I issued a Report recommending that Amicus Acri's Motion for Summary Judgment be granted. (Doc. 362). On October 16, 2014, however, I issued an Order staying the response deadline to this Report upon notification that Plaintiff's counsel, Attorney Loftus, was listed by the disciplinary board as "retired" and attempts to contact him had been unsuccessful. (Doc. 368). On October 20, 2014, Attorney Loftus filed a letter advising the Court that Plaintiff was seeking new counsel and that he had given her all of her files. (Doc. 371). He reported that he was physically unable to continue in his representation due to significant health issues. *Id.* After a hearing, during which Plaintiff proceeded *pro se*, the Court set new deadlines for filing objections to the Report. (Doc. 380).

On January 9, 2015, Attorneys Timothy Bowers and Kymberley Best entered their appearance on Plaintiff's behalf. (Doc. 388). After being granted additional time to do so, Plaintiff's attorneys filed objections to the Report recommending that Amicus Acri's Motion for Summary Judgment be granted. (Docs. 402, 403). Amicus Acri did not respond to Plaintiff's objections. On April 9, 2015, U.S. District Judge Matthew W. Brann addressed Plaintiff's objections, and issued an Order granting Amicus Acri's Motion for Summary Judgment. (Docs. 413, 414). Judgment was issued in Amicus Acri's favor. (Doc. 415).

On May 6, 2015, Plaintiff, through Attorneys Bowers and Best, filed a Notice appealing the Memorandum and Order granting Amicus Acri's Motion for Summary Judgment. (Doc. 429).

On June 25, 2015, Plaintiff, through Attorneys Bowers and Best, filed a Motion requesting certification of final judgment pursuant to Fed. R. Civ. P. 54(b) in order to appeal the Order granting Amicus Acri's Motion for Summary Judgment. (Doc. 436). Along with her Motion, Plaintiff filed a Brief in Support. (Doc. 437). On July 16, 2015, Amicus Acri filed a Brief in Opposition. (Doc. 438).

On August 18, 2015, Judge Brann filed a Memorandum and Order denying Plaintiff's Motion. (Docs. 441, 442).

A.    ATTORNEY ACRI'S FIRST MOTION FOR SANCTIONS (DOC. 132)

On July 6, 2012, Amicus Acri filed her First Motion for Sanctions. (Doc. 132). Along with her Motion, Amicus Acri filed a Brief in Support. (Doc. 133). Five months later, on December 2, 2012, Plaintiff, represented by Attorney Loftus, filed a Brief in Opposition. (Doc. 221). On December 12, 2012, Amicus Acri filed a Reply. (Doc. 240). In the First Motion for Sanctions, Amicus Acri argued that Attorneys Wilson and Loftus should be sanctioned for violating Fed. R. Civ. P. 11(b)(2) and/or (3) for alleging and advocating the following inaccuracies:

(1)    Amicus Acri should have known that the safe was going to be stolen;

(2)    Amicus Acri should have known the location of the safe after it was stolen; and

(3)     Amicus Acri assisted her client—Robert Yoncuski—in perpetrating a fraud or crime.

On March 4, 2013, the Court issued an Order denying Amicus Acri's First Motion for Sanctions without prejudice to renewing the motion once her pending motion for summary judgment had been resolved. (Doc. 272).

B.     AMICUS ACRI'S SECOND MOTION FOR SANCTIONS (DOC. 267)

On February 22, 2013, Amicus Acri filed a Second Motion for Sanctions. (Doc. 267). Along with her Motion, Amicus Acri filed a Brief in Support. (Doc. 268). In her Second Motion for Sanctions, Amicus Acri sought sanctions under Fed. R. Civ. P. 37 because: (1) Plaintiff did not file her personal verification of her answers to Defendant Thomas Yoncuski's second set of interrogatories after being ordered to do so three times; (2) Plaintiff unreasonably delayed her response to requests for production made by the Shamokin Defendants; and (3) Plaintiff unreasonably delayed her response to Amicus Acri's subpoena for Plaintiff's divorce attorney's records, and made misrepresentations to the Court concerning the divorce attorney's unwillingness to make all files available. (Doc. 268). Amicus Acri argued that she found it necessary to "to take various steps in order to attempt to compel the compliance of Plaintiff" and should be reimbursed for those expenses, which she contends amounted to approximately $15,739.00. (Doc. 268, pp. 5-6); (Doc. 267-6, p. 10).

On May 13, 2013, Plaintiff, represented by Attorney Loftus, filed a Brief in Opposition comprised of numbered paragraphs where the allegations in Amicus Acri's Motion were either admitted or denied. (Doc. 309). On May 20, 2013, Plaintiff filed a Second Brief in Opposition containing narrative legal arguments in opposition to those raised in Amicus Acri's Brief. (Doc. 313).

On June 1, 2013, Amicus Acri filed a Reply. (Doc. 323).[5]

In January of 2015, Plaintiff retained new counsel—Attorney Tim Bowers ("Attorney Bowers") and Attorney Kymberly Best ("Attorney Best")—who filed a second response to the Third Motion for Sanctions on April 2, 2015. (Doc. 405).

---

[5] On June 5, 2013, a document entitled "Response to Plaintiff's Answer to Defendant Jane M. Acri's Second Motion for Rule 11 Sanctions" was filed by Plaintiff. (Doc. 328). The response is docketed as if in response to Amicus Acri's Second Motion for Sanctions—which requested discovery sanctions under Rule 37. However, the body of the response references Rule 11 sanctions based on the accusation that Amicus Acri stole $9,047.60 from Plaintiff. *Id.* Plaintiff's Third Motion for Sanctions—filed in July—is the first sanction motion to address the $9,000.00 allegation. (Doc. 331). It appears that Plaintiff's counsel, Mr. Loftus, may have prematurely filed a response on the docket to the Third Motion for Sanctions— which was served upon him but not yet entered on the docket. *See* Fed. R. Civ. P. 11(c)(2) ("A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."). The Court cannot confirm whether that is what occurred, since Plaintiff's attorney at that time, Peter Loftus, died on June 8, 2019. (https://www.legacy.com/obituaries/name/peter-loftus-obituary?pid=193101494b, last accessed 12/11/19).

On May 2, 2015, Amicus Acri filed a second Reply. (Doc. 424).

On March 30, 2018, the Court issued an Order denying the Second Motion for Sanctions without prejudice to the right to renew the Motion after trial. (Doc. 465).

### C.  AMICUS ACRI'S THIRD & FOURTH MOTIONS FOR SANCTIONS (DOCS. 331 & 470)

On July 15, 2013, Amicus Acri filed a Third Motion for Sanctions. (Doc. 331). In that Motion, Amicus Acri alleged that Attorney Loftus violated Fed. R. Civ. P. 11(b)(3) by accusing Amicus Acri of stealing money from Plaintiff's pension in a Brief in Opposition to a pending Motion to Dismiss for Lack of Prosecution (Doc. 308). The statement at issue in the Brief has been reproduced on the next page:

> It is also interesting to note that the Defendant Acri admitted to taking Nine Thousand Dollars ($9,000.00) out of Plaintiff's pension. Acri claims it is a lie, however, Acri's attorney admitted at a discovery conference that Acri had the pension monies in her possession and took Nine Thousand Dollars ($9,000.00) out of the pension claiming that one of the Plaintiff's prior attorneys authorized her to do so. This still has not been proven and Acri continues to hold the pension.

(Doc. 308, pp. 5-6).

As noted above, it appears that Attorney Loftus filed a Brief in Opposition to this Motion before the expiration of Rule 11's safe harbor, and before Amicus Acri's Third Motion for Sanctions was filed on the docket. (*See* Doc. 328). Then, in January of 2015, Plaintiff retained new counsel—Attorney Tim Bowers ("Attorney

Bowers") and Attorney Kymberly Best ("Attorney Best")—who filed a second response to the Third Motion for Sanctions on April 2, 2015. (Doc. 404).

On April 13, 2015, Amicus Acri filed a Reply to new counsel's Brief in Opposition. (Doc. 418).

On March 30, 2018, the Court issued an Order recognizing that Attorney Loftus had committed sanctionable conduct, but that the appropriate sanctions could not be determined at that time. Amicus Acri was given leave to supplement or renew her Motion after trial. (Doc. 466).

On April 6, 2018, Amicus Acri filed a Fourth Motion for Sanctions/Motion to Clarify. (Doc. 470). Amicus Acri did not filed a Brief in Support. No Brief in Opposition was filed by Plaintiff. In that Motion, Amicus Acri requested clarification on the Court's Order addressing the Third Motion for Sanctions (Doc. 331).

On February 5, 2019, I issued a Memorandum and Order (Doc. 480) clarifying my earlier Order (Doc. 331). On March 4, 3019, Amicus Acri appealed the clarified Order. (Doc. 482). On April 12, 2019, Judge Brann directed that further clarification be provided. During the oral argument held on December 11, 2019, the parties discussed Amicus Acri's pending Motion for Clarification. Amicus Acri agreed that further clarification of the Court's ruling on Amicus Acri's Third Motion for Sanctions (Doc. 331) was no longer necessary.

### D. AMICUS ACRI'S FIFTH MOTION FOR SANCTIONS (DOC. 538)

On August 19, 2019, Amicus Acri filed a Fifth Motion for Sanctions. In that Motion, Amicus Acri argues that the Court should sanction Plaintiff for bringing claims against Amicus Acri in bad faith under its inherent authority to sanction. (Doc. 538); *See also Chambers v. NASCO, Inc.*, 111 S. Ct. 2123 (1991) (holding that a federal district court has an inherent power to assess attorney fees as a sanction for bad faith conduct). Along with her Motion, Amicus Acri filed a Brief in Support. (Doc. 539). Specifically, Amicus Acri alleges that, at the time the Complaint was filed and after, Plaintiff had no basis to suspect that Amicus Acri had any involvement in the theft of the safe.

On September 3, 2019, Plaintiff filed a Brief in Opposition. (Doc. 564). On September 13, 2019, Amicus Acri filed a Reply. Amicus Acri's Fifth Motion for Sanctions is ripe for decision.

### E. AMICUS ACRI'S SIXTH MOTION FOR SANCTIONS (DOC. 596)

On September 23, 2019, Amicus Acri filed a Sixth Motion for Sanctions (Doc. 596). Along with her Motion, Amicus Acri filed a Brief in Support. (Doc. 597). Amicus Acri frames her Sixth Motion for Sanction as the "successor motion" to her First Motion for Sanctions (Doc. 132). Like her First Motion for Sanctions, in this Motion Amicus Acri argues that Attorneys Wilson and Loftus violated Fed. R. Civ. P. 11(b)(3). Specifically, Amicus Acri alleges that: (1) Attorney Wilson violated

Fed. R. Civ. P. 11(b)(3) for failing to perform a reasonable inquiry as to whether evidentiary support existed before making the allegations contained in paragraph 119 of Plaintiff's Complaint, (Doc. 596, pp. 3-5); and (2) Attorney Loftus improperly advocated paragraph 119 of Plaintiff's Complaint without making a reasonable inquiry as to whether the factual contentions contained therein had evidentiary support (Doc. 596, pp. 6-24).

Amicus Acri requests that Attorney Wilson pay $1000.00 in attorneys fees for this violation of Rule 11 and be reprimanded. Amicus Acri waives any request for financial sanctions against Attorney Loftus in light of his retirement, but requests that the now deceased attorney by publicly censured.

Amicus Acri's Sixth Motion for Sanctions also alleges new claims against Plaintiff's other attorneys, Attorneys Bowers and Best. Attorneys Bowers and Best entered their appearance on January 9, 2015—after briefing had closed on Amicus Acri's Motion for Summary Judgment. They did, however, both sign an objection to the Report recommending that Amicus Acri's Motion for Summary Judgment be granted. (Doc. 596, pp. 24-25). Amicus Acri contends that, by signing this objection, Attorneys Bowers and Best violated Fed. R. Civ. P. 11(b)(3) by advocating paragraph 119 of Plaintiff's Complaint without making a reasonable inquiry as to whether the factual contentions contained therein had evidentiary support (Doc. 597,

pp. 18-19). Amicus Acri requests that Attorneys Bowers and Best each pay $3000.00 in attorneys fees for this violation of Rule 11 and be publicly censured.

On September 26, 2019, Attorney Wilson filed a response to Amicus Acri's Sixth Motion for Sanctions. (Doc. 608). On October 17, 2019, Attorneys Bowers and Best filed a response to Amicus Acri's Sixth Motion for Sanctions. (Doc. 629). Attorney Loftus, who passed away in June of this year, did not file a response.

On October 9, 2019, Amicus Acri filed a Reply to Attorney Wilson's response. (Doc. 631). Then, on October 10, 2019, without seeking leave of Court to file additional briefing, filed a supplement to her original Reply. (Doc. 632); *See* L.R. 7.7 (After the Reply is filed, "[n]o further briefs may be filed without leave of court."). On October 21, 2019, Amicus Acri filed a Reply to Attorneys Bowers and Best's response. (Doc. 642).

Amicus Acri's Sixth Motion for Sanctions has been fully briefed and is ripe for decision.

IV.   LEGAL STANDARDS

   A.   STANDARD FOR SANCTIONS UNDER RULE 11

Rule 11 of the Federal Rules of Civil Procedure provides that:

By presenting to the court a pleading, written motion, or other paper-- whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
. . . .

(3) the factual contentions have evidentiary support or, if specifically, so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery;

Fed. R. Civ. P. 11(b). It also provides that, "[i]f, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.

As explained in *Keister v. PPL Corporation,*

"It is now clear that the central purpose of Rule 11 is to deter baseless filings in district court and thus, consistent with the Rules Enabling Act's grant of authority, streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). "Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and not interposed for any improper purpose." *Id.* (internal quotations omitted). "[T]he intended goal of Rule 11 is accountability." *Mary Ann Pensiero, Inc. v. Lingle,* 847 F.2d 90, 94 (3d Cir. 1988) (Weis, J.). "The standard for testing conduct under Rule 11 is reasonableness under the circumstances." *Teamsters Local Union No. 430 v. Cement Exp., Inc.,* 841 F.2d 66, 68 (3d Cir.1988) (Mansmann, J.). "The rule imposes on counsel a duty to look before leaping and may be seen as a litigation version of the familiar railroad crossing admonition to 'stop, look, and listen.' " *Lieb v. Topstone Indus., Inc.,* 788 F.2d 151, 157 (3d Cir. 1986) (Weis, J.). "To comply with these requirements, counsel must conduct 'a reasonable investigation of the facts and a normally competent level of legal research to support the presentation.' " *Mary Ann Pensiero, Inc.,* 847 F.2d 90, 94 (3d Cir. 1988) (quoting *Lieb,* 788 F.2d at 157).

253 F.Supp.3d 760 (M.D. Pa. 2015).

As explained by the Third Circuit in *Mary Ann Pensiero, Inc. v. Lingle*:

> In gauging the reasonableness of an attorney's pre-filing inquiry, the
> Advisory Committee Notes to Rule 11 suggest consideration of four
> factors: the amount of time available to the signer for conducting the
> factual and legal investigation; the necessity for reliance on a client for
> the underlying factual information; the plausibility of the legal position
> advocated; and whether the case was referred to the signer by another
> member of the Bar. Fed. R. Civ. P. 11 advisory committee note. One
> court has proposed a fifth factor: the complexity of the legal and factual
> issues implicated. *Thomas v. Capital Security Servs., Inc.,* 836 F.2d
> 866, 875 (5th Cir. 1988) (en banc). In light of these factors, we are
> persuaded that the complaint filed here, while unsuccessful, was not
> sanctionable.

847 F.2d 90, 95 (1988). Although these factors may aid the Court in its analysis, the

Court need not "work mechanically through" each factor before deciding whether to

impose a sanction under Rule 11. *In re Taylor*, 655 F.3d 274, 284 (3d Cir. 2011).

"[T]he applicable standard is one of reasonableness under the circumstances." *Id.*

(quoting *Bus, Guides, Inc.*, *v. Chromatic Commc'ns Ents., Inc.,* 498 U.S. 533, 551

(1991).

### B.   THE COURT'S INHERENT AUTHORITY TO ASSESS ATTORNEY FEES AS A SANCTION FOR BAD FAITH CONDUCT

The Court possesses certain inherent powers to address the matters before it,

including the conduct of parties and attorneys. In *Chambers v. NASCO, Inc.*, the

Supreme Court addressed the nature and scope of a District Court's inherent power

to control the conduct of those who appear before them. 501 U.S. 32 (1991).

"Because of their very potency," however, the federal courts must be careful to

exercise their inherent powers "with restraint and discretion." *Chambers,* 501 U.S. at 44.

In *Chambers,* an action which began as a simple action for specific performance of a contract, the sanctionable conduct of the defendant fell into three categories:

> (1) attempted to deprive the court of jurisdiction by acts of fraud, nearly all of which were performed outside the confines of the court, (2) filed false and frivolous pleadings, and (3) "attempted, by other tactics of delay, oppression, harassment and massive expense to reduce [NASCO] to exhausted compliance."

*Id.* at 32. "[A] trial court should consider invoking its inherent sanctioning powers only where no sanction established by the Federal Rules or a pertinent statute is 'up to the task' of remedying the damage done by a litigant's malfeasance, and only then when the sanction is 'tailored to address the harm identified.'" *Klein v. Shahl GMBH & Co. Maschinefabrik*, 185 F.3d 98, 108 (quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32, 50 (1991); *Republic of the Philippines v. Westinghouse Elec. Corp.,* 43 F.3d 65, 73 (3d Cir. 1994)). For example, in *Chambers*, the District Court sanctioned a defendant for bad faith conduct using its inherent power to do so where categories one and three (listed above) "could not be reached by Rule 11, which governs only papers filed with the Court," and because the falsity of the pleadings and papers (category two) was impossible to assess at the time the papers were filed. 501 U.S. at 42. Although noting that the District Court could have employed Rule 11 sanctions

to category two (the frivolous pleadings and papers), the conduct sanctionable under the Rules was intertwined with conduct that could only be sanctioned under the Court's inherent power that requiring a district court to rely on the Rules before invoking its inherent power "would serve only to foster extensive and needless satellite litigation." *Id.* at 50-51. Courts have interpreted this as meaning that, "the Rules are not 'up to the task' when they would not provide a district court with the authority to sanction all of the conduct deserving sanction," but that when the all the conduct deserving sanction can be sanctioned under the rules, they should be used. *Klein*, 185 F.3d at 110.

V.     ANALYSIS

A.     Jane Acri's Fourth Motion for Sanctions/Motion to Clarify (Doc. 470)

This motion was decided by Order (Doc. 480) and any need for clarification is now moot in light of the decisions that follow on Docs. 538, and 596. Attorney Loftus was sanctioned twice by me during this litigation, each time for dilatory tactics. While his failing health may have contributed to his failures as counsel, they still impacted Attorney Acri and the other parties in this case by causing unnecessary delay and expense. I find that both he and Attorney Wilson originally had a slim but good faith basis for alleging that Attorney Acri knew and approved of the plans to

steal the safe based on the Foura report[6], but that good faith evaporated in 2012 when the Adams directly contradicted those hearsay statements and expressed clearly that they had no information that could attribute knowledge to Attorney Acri.

B.    JANE ACRI'S FIFTH MOTION FOR SANCTIONS (DOC. 538)

This motion seeks sanctions against Donna Deitrick for bringing the action against her in bad faith.  In her deposition Deitrick speculated that Attorney Acri received her fees from the proceeds of the stolen safe.  She based this speculation on the fact that her husband "had no money."[7]  She also admitted that other than the Foura police report she had no direct knowledge of any information possessed by Attorney Acri.  Parties to a divorce frequently harbor animosity against counsel for their spouse. This vitriol is just as frequently misplaced, and it clearly was in this case.  The Plaintiff's explanation for why she believed Attorney Acri was involved meets the minimum requirements for good faith.  Decisions then made by her lawyers after that are theirs and not attributable to the client.

C.    JANE ACRI'S SIXTH MOTION FOR SANCTIONS (DOC. 596)

In this motion Attorney Acri seeks sanctions against Attorneys Wilson and Loftus for the allegation against her in paragraph 119 of the original complaint.  She argues that Attorney Wilson failed to perform a reasonable inquiry into the

---

[6] Doc. 247, pp. 34-35.
[7] Deposition of Donna Deitrick dated July 13, 2012 (Doc. 196-1) at pp. 237-244.

evidentiary basis for claims against her.  As noted earlier, this complaint was filed only two days before the two-year statute of limitations would have run.  Being in a hurry is not a complete defense, but it is a factor that must be considered.  Attorney Wilson only remained in the case for a few months after the filing of the complaint in 2006 and then withdrew.  After withdrawing he had no ability to correct the pleadings, even if he thought they should be.  As indicated earlier, it was not until 2012 with the depositions of Mr. & Mrs. Adams that the case against Attorney Acri collapsed.

The case for sanctions against Attorney Loftus is more nuanced.  He attended the depositions in 2012 and learned first hand that Mr. & Mrs. Adams repudiated their statements in the Foura report.  There is no evidence in this record that he consulted with his client about dismissing Attorney Acri from the case, and indeed it appears he doubled down with the "$9,000 pension" allegations contained in his Brief in Opposition (Doc. 308).  His death forecloses any opportunity for reprimand. I must however state unequivocally that even if zealous advocacy would allow for arguing the continuation of the case against Attorney Acri, it is crystal clear to the Court that she did not participate in this conspiracy and that summary judgement was properly granted in her favor.

Attorneys Bowers and Best respond to the allegation that they improperly endorsed the allegations against Attorney Acri by noting that when they entered their

appearance in January of 2015 (Doc. 388) the Motion for Summary Judgment (Doc. 175) was fully briefed.  In their objections (Doc. 403) to my R&R recommending summary judgement for Acri (Doc. 362), they limited their advocacy to the admissibility of the Foura report, essentially conceding that without it the case against Attorney Acri fails.  This is also true of their request to allow an interim appeal (Doc. 436).  Judge Brann determined that the Foura report was not enough and correctly granted Summary Judgment for Attorney Acri (Doc. 414) and denied the request for an interim appeal (Docs. 441, 442).  Attorneys Best and Bowers took no further action against Attorney Acri and continued their advocacy against the remaining defendants, resulting in a significant verdict.

I also note that none of these lawyers filed a complaint against Attorney Acri with the Disciplinary Board, an obligation every attorney has when they "know that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects…" RPC. 8.2.  The allegations against Attorney Acri were confined to advocacy in this case, advocacy that was defeated by the granting of the Motion for Summary Judgement (Docs 414, 415).

D.    JANE ACRI'S REQUEST FOR CLARIFICATION (DOC. 643)

The Request for Clarification will be denied as moot in light of the other decisions in this memorandum.

## VI.    CONCLUSION

While the Motions for Sanctions must be denied I state again that there is no evidence in this case that Attorney Jane Acri was involved in any illegal, immoral, or unethical activity.  Her conduct in this case, in the face of scandalous allegations against her, was to stand firm and represent her client zealously.  While the authority of the Court in this case is limited to granting the Motion for Summary Judgment in her favor I fervently hope that the analysis in this opinion makes it clear to the parties, the lawyers, and the public that it is the Court's view that Attorney Jane Acri did not commit misconduct in her representation of Robert Yoncuski.  She did not participate in his illegal actions and did not benefit from them.

An appropriate Order will follow.

Date: December 30, 2019                        BY THE COURT

*s/William I. Arbuckle*
William I. Arbuckle
U.S. Magistrate Judge